# IN THE COURT OF APPEALS FOR THE STATE OF TEXAS FOURTH JUDICIAL DISTRICT CADENA-REEVES JUSTICE CENTER

IN THE MATTER OF THE MARRIAGE OF
ANGELA ROSE MENDIVES AND
ROBERTO CARLOS MENDIVES SR.
AND THE IN THE INTEREST OF ROBERTO
CARLOS MENDIVES II, MARKUS ANGELO
MENDIVES, GABRIEL LAZARO
MENDIVES AND EZEQUIEL
FREDERICK MENDIVES,   CHILDREN.

Court of Appeal Number 04-16-00123-CV
Trial Court Number 2015CI0087

Roberto Carlos Mendives Sr. Sui Juris
Appellant-Father
8802 Cinnamon Creek Dr. #609
San Antonio, Texas 78240

Velia J. Meza (Bar Card # 2403270)
Attorney for Angela Rose Mendives (Mother)
4819 San Pedro Ave, San Antonio, TX 78212

Anthony Daniel 'Tony Bancroft' Bancroft
Attorney for Angela Rose Mendives (Mother)
310 S. St Mary's, 24th Floor, San Antonio, TX 78205



APPELLANT –FATHER

ORAL ARGUMENT REQUESTED
Roberto Carlos Mendives Sr., Sui Juris
8802 Cinnamon Creek Drive # 609
San Antonio, Texas 78240
210-767-0277
robertomendives@rocketmail.com

Dated: 09th, 2016

1

## TABLE OF CONTENTS

Index of Authorities ....................................................................3

Index of Authorities Case ...........................................................4

Statement of Jurisdiction ............................................................7

Introduction .............................................................................13

Equal Protection Clause ............................................................ 23

Statement of Question Presented..................................................23

The U.S. Constitution and The U.S. Supreme Court Upholding Parental Rights as Fundamental ....................................................................................24

First Amendment Free Association Rights .....................................36

Statement of Material Proceeding and Facts ..................................55

Due Process .............................................................................59

In the Child Best Interest and The Due Process...............................60

All Evidence Under the Freedom of Information Act ........................73

Fourteenth Amendment...............................................................77

Citizens of the United States of America........................................77

Privileges and Immunities ..........................................................79

False Statements and Due Process of Law.......................................81

Declaratory Judgment, Immediate Relief and Disclosures..................90

Demand for Parental Adjudication.................................................90

Declaratory Judgment  Introduction...............................................97

Declaratory Judgment Argument ..................................................102

Protection from State Action .......................................................109

Requirement of State to Hear Constitutional Questions.....................110

Scrutiny Under Equal Protection ..................................................119

Elements of Strict Scrutiny..........................................................119

Best Interest Not Compelling ......................................................121

Rights to Evidentiary Hearing........................................................126

Rights to a Balancing Test ...........................................................129

Child Support Facially Unconstitutional .............................................135

Quasi-Criminal Over-notes ..........................................................136

States Impermissibly Shifts Burden..................................................140

Best Interest a protected constitutional choice.......................................142

Right to Stability .....................................................................143

Fundamental Rights children do not have.............................................145

Penalty for Exercise of Rights........................................................147

State may not violate Child's Rights..................................................148

Termination or Infringement..........................................................150

Custody and possession scheme Unconstitutional ....................................151

Troxel Standard......................................................................158

Legitimate Interest ..................................................................159

Declaratory Judgment Conclusion ...................................................160

Declaratory Judgment Prayer .......................................................162


Appellant Brief Conclusion .........................................................163

Certificate of Services ..............................................................169

Arguments-

I. THE TRIAL COURT VIOLATED THE APPELLANT'S SUBSTANTIVE DUE PROCESS RIGHTS WHEN IT REMOVED HIS FUNDAMENTAL RIGHTS, LIBERTY INTEREST AND FREEDOM RIGHTS TO DIRECT THE CARE, CUSTODY, AND CONTROL OF HIS CHILDREN WITHOUT ADJUDICATING HIS PARENTAL UNFITNESS

II. THE TRIAL COURT VIOLATED THE APPELLANT'S EQUAL PROTECTION RIGHTS OF THE FIRST AMENDMENT AND FOURTEENTH AMENDMENT BY ARBITRARILY ASSUMING AWAY HIS FUNDAMENTAL RIGHTS, LIBERTY INTEREST, PROPERTY DENYING HIM A STATE-BASED PROCEDURAL RIGHT AVAILABLE TO SIMILARLY-SITUATED PARENTS

III. THE TRIAL COURT VIOLATED AND FAILED TO PROTECT THE APPELLANT'S SEPARATE PROPERTY HOMESTEAD UNDER THE PROTECTIONS OF FAMILY RIGHTS.

V. THE TRIAL COURT DOES NOT HAVE ANY EVIDENCES CRIMES ALLEGATIONS STATED BY ANGELA MENDIVES ON HER SWORN AFFIDAVIT ALL FACTS IN ORDER TO MAKE DECISION ON THIS CASE THERE IS MUTUAL DEBT INCURRED FROM TRAVERLING BACK TO TEXAS THAT MUST BE MUTUALLY PAID
VI. THE TRIAL COURT ARBITRARILY ASSUMED PROCEDURES

INDEX OF AUTHORITIES

CONSTITUTIONS

- U.S. Constitution, First Amendment, Fourteenth Amendment

- Constitution 1876, Article 1. Bill of Rights

**STATUTES**

- 25 USC 1903(4)

- 25USC 1912(e)

- 25USC 1912(f)

**STATE STATUTES**

- Texas Penal Code § 25.03 - Interference with Child Custody
- Texas Fam. Code § 71.004
- Tex. Fam. Code § 107.051
- Tex. Fam. Code § 153.001
- Tex. Fam. Code § 153.002
- Tex. Fam. Code § 153.072
- Tex. Fam. Code § 153.131
- Tex. Fam. Code § 154.001
- Tex. Fam. Code § 156.001
- Tex. Fam. Code § 156.101
- Tex. Fam. Code § 6.406
- Tex. Fam. Code Title 5

**Federal**

- Burke v County of Alameda, 586 F3d 725 (9th Cir 2009)

- Lindsey v Normet, 405 US 56; 92 S Ct 862; 31 L Ed 2d 36 (1972)

- Michael H v Gerald D, 491 US 110; 109 S Ct 2333; 105 L Ed 2d 91 (1989)

- MLB v SLJ, 519 US 102; 117 S Ct 555; 136 L Ed 2d 473 (1996)

- Parham v JR, 442 US 584; 99 S Ct 2493, 61 L Ed 2d 101 (1979)

- Rinaldi v Yeager, 384 US 305; 86 S Ct 1497; 16 L Ed 2d 577 (1966)

- Smith v Organization of Foster Families for Equality and Reform, 431 US 816; 97 S Ct 2094; 53 L Ed 2d 14 (1977)

- Stanley v Illinois, 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972)

- Troxel v Granville, 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000)

**INDEX OF AUTHORITIES CASES**

1. "A parent's right to the custody of his or her children is an element of "liberty" guaranteed by the 5th amendment and the 14th Amendment of the United States Constitution." **Metter of Gentery 369 NW 2d 889, MI App Div (1983)**

5

2. "The parent child relationship is a liberty interest protected by the Due Process Clause of the 14th Amendment." **Bell V City of Milwaukee, 746 f2d 1205, 1242-45; US Ct Ap 7th Cir WI (1985)**

3. "The US Court of Appeals for the 9th Circuit held that the parent—child relationship is a constitutionally protected liberty interest. (See — Declaration of Independence · life, liberty and the pursuit of happiness and the 14th Amendment of the United States Constitution - No state can deprive any person of life, liberty or property without due process of law nor deny any person the equal protection of the laws)" **Kelson v Springfield, 767 F2d651;US Ct App 9th Cir, (1985)**

4. "State Judges, as well as federal, have the responsibility to respect and protect persons from violations of federal constitutional rights." **Gross V State of Illinois, 312 F 2d 257, (1963)**

5. The Constitution also protects "the individual interest in avoiding disclosure of personal matters." Federal Courts (and State Courts) under Griswold can protect, under the "life, liberty and pursuit of happiness" phrase of the Declaration of Independence, the right of a man to enjoy the mutual care, company, love and affection of his children, and this cannot be taken away from him without due process of law. There is a family right to privacy which the state cannot invade or it becomes actionable for civil rights damages. **Griswold v Connecticut, 381 US 479, (1965)**

6. "The rights of parents to the care, custody and nurture of their children is of such character that it cannot be denied without violating those fundaments\al principles of liberty and justice which lie at the base of all our civil and political institutions, and such right is a fundamental right protected by this amendment **(First) and Amendments 5,9, and 14." Doe V Irwin, 441 F Supp 1247; U.S. DC of Michigan (1985)**

7. "The several states has no greater power to restrain individual freedoms protected by the First Amendment than does the Congress of the United States." **Wallace v J affree, 105 S Ct 22479, 472 US**

8. "Loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Though First Amendment rights are not absolute, they may be curtailed only by interests of vital importance, the burden of proving which rests on their government." , **Elrod v Burns, 96 S Ct 2673, 427 US 347 (1976)**

9. "Law and court procedures that are "fair on their faces" but administered "with an evil eye or a heavy hand" was discriminatory and violates the equal protection clause of the **Fourteenth Amendment" Yick Wo v Hopkins, 118 US 356 (1886)**

6

10. "Even when blood relationships are strained, parents retain vital interest in preventing irretrievable destruction of their family life; if anything, persons faced with forced dissolution of their parental rights have more critical need for procedural protections than do those resisting state intervention into ongoing family affairs; **Santosky v Kramer, 102 S Ct 1388, 455 USs 745, (2982)**

11. "Parents have a fundamental constitutionally protected interest in continuity of legal bond with their children." **Matter of Delaney, 617 P 2d 886, Oklahoma (1980)**

12. "The liberty interest of the family encompasses an interest in retaining custody of one's children and , thus, a state may not interfere with a parents custodial rights absent due process promise` **Langton v Maloney, 527, F Supp 538, DC Conn (1981)**

13. "Parents right to custody of child is a right encompassed within protection of this amendment which may not be interfered with under guise of protecting public in interest by legislative action which is arbitrary or without reasonable relation to some purpose within competency of state to effect." **Reynold V Baby Fold, Inc, 369 NE 2d 858; 8 Ill 2d 419, appeal dismissed 98 S Ct 1598, 435 US 963, IL (1977)**

14. "Parents interest in custody of her children is a liberty interest which has received considerable constitutional protection, a parent who is deprived of custody of his or her child, even though temporarily, suffers thereby grievous loss and such loss deserves extensive due process protection." In the interest of **Cooper, 621 P 2d 437; 5 Kansas App Div 2d 584 (1980)**

15. "The Due Process Clause of the Fourteenth Amendment requires that severance in the parent-child relationship caused by the state occur only with rigorous protections for individual liberty interests at stake." **Bell V City of Milwaukee, 746 F 2d 1205; US Ct App 7th Cir WI (1984)**

16. "Father enjoys the right to associate with his children which is guaranteed by this amendment (First) as incorporated in Amendment 14, or which is embodied in the concept of "liberty" as that word is used in the **Due Process Clause of the 14th Amendment and Equal Protection Clause of the 14th Amendment," Mabra v Schmidt, 356 R Supp 620; DC WI(1973)**

17. "The United State Supreme Court noted that a parent's right to the companionship, care, custody and management of his or her children is an interest "far more precious" than any property right." **May V Anderson, 345 US 528, 533; 73 S Ct 840, 843, (1952)**

7

18. "A parent's right to care and companionship of his or her children are so fundamental, as to be guaranteed protection under the First, Ninth, and Fourteenth Amendments of the United States Constitution" **In re; JS and C, 324 A 2d 90, supra 129 NJ Super, at 489**

19. "The Court stressed, "The parent child relationship is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection." A parent's interest in the companionship, care, custody and management of his or her children rises to a constitutionally secured right, given the centrality of family life as the focus for personal meaning and responsibility **Stanley V Illinois 405 Us 645, 651; 92S or 1208, (1972)**

20. "Parents rights have been recognized as being "essential to the orderly pursuit of happiness by free man" **Meyer V Nebraska, 262 or 426 US 390 <check cite> 43 S Ct 625, (1923)**

21. "No bond is more precious and none should be more zealously protected by the law as the common bond between parent and child" **Carson V Elrod, 411 F Supp 6445, 549 DC E>D> VA (1976)**

22. "Reality of private biases and possible injury they might inflict were impermissible considerations under the Equal Protection Clause of the 14th Amendment." **Palmore V Sidoti, 104 S Ct 1879; 466 US 429**

23. "Judges must maintain a high standard of judicial performance with particular emphasis upon conducting litigation with scrupulous fairness and impartiality" **28USCA - 24411; Plizer V Lord, 456 F 2d 532; cert denied 92 S Ct 2411; US Ct App MN (1972)**

24. "The right of a parent not to be deprived of parental rights without a showing of fitness, abandonment or substantial neglect is so fundamental and basic as to rank among the rights contained in this Amendment (Ninth) and Utah's Constitution, **Article 1, Sec 1" in re U>P>648 P 2d 1364; Utah, (1982)**

25. "Santosky held that a "clear and convincing" proof standard is constitutionally required in parental termination proceedings. **455 USs, at 769-770.....** "Few forms of state action are both so severe and irreversible" (**Santosky v Kramer**)

26. "The Constitution of these United States is the supreme law of the land, any law that is repugnant to the constitution is null and void of law." **Marbury V Madison, 5 US 137**

27. "No state shall convert a liberty into a privilege, license it, and attach a fee to it." **Murdockv Penn, 319 US 105** "If the state converts a liberty into a privilege the citizen can engage in the right with impunity" **Shuttlesworth v Birmingham , 373 USs 262**

28. "Officers of the court have no immunity, when violating a constitutional right, from liability. For they are deemed to know the Law." " **Owen V Independence, 100 S Ct 1398**

29. The court is to protect against any encroachment of constitutionally secured liberty. **Boyd V US, 116 US 616**

30. "Where rights secured by the constitution are involved, there can be no rule making or legislation which would abrogate them." **Miranda v Arizona, 384 US 436**

31. "An unconstitutional act is not law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never passed." **Norton v Shelby County, 118 US 425**

## STATEMENT OF JURISDICTION

This appeal is from an order dated April 13th, 2016 by Justice Patricia O. Alvarez of the Fourth Court of Appeals in Bexar County, San Antonio, Texas to be due on May 09th of 2016.

Roberto Carlos Mendives Sr., is before the court sui juris, a free man, an innocent person, father of four children and this briefs is written in a manner that "any reasonable person could understand. Roberto Carlos Mendives Sr., is not attorney and do not attempt to bring in case law to narrow the specifics of this case but for general purpose and "conclusion of legal theories" and expect this court to know the Law and uphold the Law.

The Appellant, Roberto Carlos Mendives Sr., sui juris, demands and expect this court to secure, preserve and protect his and his four children' U.S. Constitutional guarantees, demanding to be upheld and that his Equal Fundamental Parental Rights, Liberty Interests and Property is immediately restored, thus, stopping all deprivation of his Equal Parental Fundamental Rights, Liberty Interests and property. That this Appeal Court DISMISS ANY APPELLEE'S MOTION FOR EXTENSION OF TIME, **"NOTICE TO RESET"** AND **SUBPOENA DUCES TECUM**

FOR ACUSATIONS OF DOMESTIC VIOLENCES AND THE AFFIDAVITS ENTERED TO THE COURT ON JANUARY 20TH OF 2015 AND NOVEMBER 06TH OF 2015.

Furthermore, The Appellant demands for this court to have **ZERO tolerance from the opposing party for false accusations and false testimonies**, thus, this court is able to PROCEED ADEQUATELY WITH THE ADMINISTRATIVES PROCESS TO RENDER THE DIVORCE FAIRLY AND JUST FOR ALL PARTIES.

**The Appeal SHALL not be dismissed for lack of form or failure of process.-**

"And be it further enacted. That no summons, writ, declaration, return, process, judgment, or other proceedings in civil cases in any of the courts or the United States, shall be abated, arrested, quashed or reversed, for any defect or want of form, but the said courts respectively shall proceed and give judgment according as the right of the cause and matter in law shall appear unto them, without regarding any imperfections, defects or want of form in such writ, declaration, or other pleading, returns process, judgment, or course of proceeding whatsoever, except those only in cases of demurrer, which the party demurring shall specially sit down and express together with his demurrer as the cause thereof And the said courts respectively shall and may, by virtue of this act, from time to time, amend all and every such imperfections, defects and wants of form, other than those only which the party demurring shall express as aforesaid, and may at any, time, permit either of the parties to amend any defect in the process of pleadings upon such conditions as the said courts respectively shall in their discretion, and by their rules prescribe (a)" **Judiciary Act of September 24, l789, Section 342, FIRST CONGRESS, Sess. l, ch. 20, 1789**

**Due Process** provides that the "rights of sui juris litigants are to be construed liberally and held to less stringent standard than formal pleadings drafted by lawyers; if court can reasonably read pleadings to state valid claim on which litigant could prevail, it should do so despite failure to

10

cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigants unfamiliarity with pleading requirements" (**Spencer v Doe, 1998; Green. v Branson 1997; Boag V McDougall, 19982; Haines V Kerner, 1972**

"Right to precede pro se (sui juris) is fundamental statutory right that is afforded highest degree of protection" (**DEVINE V INDIAN RIVER COUNTY SCHOOL BD., 11TH CIR. 19** )

**JUDGES SWORN TO OBEY.** "Since the constitution is intended for the observance of the judiciary as well as other departments of government and the judges are sworn to support its provisions, the courts are not at liberty to overlook or disregard its commands or counteract evasions thereof, it is their duty in authorized proceedings to give full effect to the existing constitution and to obey all constitutional provisions irrespective of their opinion as to the wisdom or the desirability of such provisions and irrespective of the consequences, thus it is said that the courts should be in our alert to enforce the provisions of the United States Constitution and guard against their infringement by legislative fiat or otherwise in accordance with these basic principles, the rule is fixed that the duty in the proper case to declare a law unconstitutional cannot be declined and must be performed in accordance with the delivered judgment of the tribunal before which the validity of the enactment it is directly drawn into question.

If the Constitution prescribes one rule and the statute another in a different rule, it is the duty of the courts to declare that the Constitution and not the statute governs in cases before them for judgment." (**16Am Jur 2d., Sec. 155:**)

"…Thus, the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, **that a law repugnant to the constitution is void,** and that courts, as well as other departments, are bound

11

by that instrument." After more than 200 years this decision still stands. See- **Marbury v. Madison U.S. 137, 1803**

**Texas Constitution - Bills of Rights- Section 10. Rights of Accused Persons in Criminal Cases.** - In all criminal prosecutions the accused shall have a speedy public trial **by an impartial jury.** He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself and shall have the right of being heard by himself or counsel, or both; shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of State and the offense charged is a violation of any of the antitrust laws of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment , otherwise than in the penitentiary; in cases of impeachment and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger. **"If any statement, within any law, which is passed, is unconstitutional, the whole law is unconstitutional."** - See- **Marbury v. Madison: 5 US 137, 1803**

"Therefore no legislation…that statutes which would deprive a citizen of the rights of person or property **without a regular trial**, according to the course and usage of common law, would not be the law of the land." See- **Hoke vs. Henderson, 15, N.C.15,25 AM Dec 677**

"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." See - **Miranda v. Arizona, 384 U.S. 436, 491**

12

**INTERPRETATION.** Any constitutional provision intended to confer a benefit should be liberally construed in favor in the clearly intended and expressly designated beneficiary.

"Then a constitution should receive a literal interpretation in favor of the Citizen, is especially true, with respect to those provisions which were designed to safeguard the liberty and security of the Citizen in regard to person and property." (**16Am Jur 2d: 16Am Jur 2d., Sec. 97; Bary v. United States - 273 US 128** )

"Various facts of circumstances extrinsic to the constitution are often resorted to, by the courts, to aid them and determining its meaning, as previously noted however, such extrinsic aids may not be resorted to where the provision in the question is clear and unambiguous in such a case the courts must apply the terms of the constitution as written and they are not at liberty to search for meanings beyond the instrument." (**16Am Jur 2d., Sec. 117**)

**CONFLICTS**. "In all instances, where the court exercises its power to invalidate legislation on constitutional grounds, the conflict of the statute, with the constitution must be irreconcilable. Thus a statute is not to be declared unconstitutional unless so inconsistent with the constitution that it cannot be enforced without a violation thereof. A clear incompatibility between law and the constitution must exist before the judiciary is justified holding the law unconstitutional. This principle is of course in line with the rule that doubts as the constitutionality should be resolved in favor of the constitutionality and the beneficiary." (**16Am Jur 2d., Sec. 255**)

**"Persons"** Defined.—Notwithstanding the historical controversy that has been waged concerning whether the framers of the Fourteenth Amendment intended the word "person" to mean only natural persons, or whether the word was substituted for the word "citizen" with a view to protecting corporations from oppressive state legislation, the Supreme Court, as early as the Granger Cases, decided in 1877, upheld on the merits various state laws without raising any

13

question as to the status of railway corporation plaintiffs to advance due process contentions. There is no doubt that a corporation may not be deprived of its property without due process of law, and although prior decisions had held that the ''liberty'' guaranteed by the Fourteenth Amendment is the liberty of natural, not artificial, persons, nevertheless a newspaper corporation was sustained, in 1936, in its objection that a state law deprived it of liberty of press. As to the natural persons **protected by the due process clause**, these include **all human beings regardless of race, color, or citizenship.**

Ordinarily, the mere interest of an official as such, in contrast to an actual injury sustained by a natural or artificial person through invasion of personal or property rights, has not been deemed adequate to enable him to invoke the protection of the Fourteenth Amendment against state action. Similarly, municipal corporations are viewed as having no standing ''to invoke the provisions of the Fourteenth Amendment in opposition to the will of their creator,'' the State. However, state officers are acknowledged to have an interest, despite their not having sustained any ''private damage,'' in resisting an ''endeavor to prevent the enforcement of laws in relation to which they have official duties,'' and, accordingly, may apply to federal courts for the ''review of decisions of state courts declaring state statutes which [they] seek to enforce to be repugnant to the'' **Fourteenth Amendment.''**

**''Liberty''.**—The ''liberty'' guaranteed by the due process clause has been variously defined by the Court, as will be seen hereinafter. In general, in the early years, it meant almost exclusively ''liberty of contract,'' but with the demise of liberty of contract came a general broadening of ''liberty'' to include personal, political and social rights and privileges. Nonetheless, the Court is generally chary of expanding the concept absent statutorily recognized rights.

**Statutes of Limitation.**—A statute of limitations does not deprive one of property without due process of law, unless, in its application to an existing right of action, it unreasonably limits the

opportunity to enforce the right by suit. By the same token, a State may shorten an existing period of limitation, provided a reasonable time is allowed for bringing an action after the passage of the statute and before the bar takes effect. **What is a reasonable period, however, is dependent on the nature of the right and particular circumstances.**

This Court of Appeals has Jurisdiction pursuant to The United States Constitution, and the Texas Constitution Art. 1 - Bill of Rights to review by appeal this case.

This appeal is intended for an immediate consideration to repair and restore  U.S. Constitution First Amendment rights, Protections of the Fourteenth Amendment equal protection clause  to the rights to free association of Mr. Mendives and his four sons. To restore the violation of Angela Mendives in using false accusation to corruptibly remove Mr. Mendives from his homestead on January 20th of 2015.  No court should ignore this!   Demanding the Protection from Deprivation of U.S. Constitutional Rights and Liberty Interest Violations; Demanding Injunction of Temporary Orders due to extortion, coercion under Stress and Duress since no American deserve the two police officers to knock on the door with order to removal on false allegations.

The appellant, Mr. Mendives demands written Opinion and Oral Hearing for this case; Demanding an Adjudication and Fair Due Process of the Law; Demanding a Declaratory Judgment, Relief and Disclosures; Demanding Judicial Accountability to Uphold the Sworn Oath of Office; Demand for Finding of the Facts and ALL EVIDENCES for the CRIME of Domestic Violence under the **Freedom of Information Act ((FIOA))** and Proof of Alleged Domestic Violence; Demanding  A Written Opinion and Oral Hearing for all Allegations; Demanding Redress of Grievances for Defamation (Slander and Libel) and answers to why a years plus later in this case and Angela Mendives has not supported yet her allegations with evidences.

Mr. Mendives demands reparation for Intentional Infliction of Emotional Distress, Negligence from Angela Mendives and, the trial court for not asking for evidences to corroborate allegations,

15

for infliction of Emotional Distress, Fraudulent Misrepresentation (Deceit); Demand a Jury Trial; Demand Protection From Deprivation of Constitutional Liberties Violation by the State of Texas Agencies; Demand Accountability over the Lower Courts and Enforcement of Judicial Oversight. Also to Demand to rectify the "No Evidences" Protective Orders and expunge them from my record immediately since it is an aggravation to my business occupation and it damages my business relationships.

## INTRODUCTION

Appellant, Roberto Carlos Mendives Sr., sui juris, appeals the trial court's entire case due to neglectful proceedings where Angela Mendives in her sworn affidavit brings to the court heinous crimes accusations of rape and domestic violence. The trial court failed and ignored to pursue the 14th Amendment, equal protection clause with the objectives of "finding of the facts" of such allegations and instead "without" evidence of such HEINOUS ACTS the trial court has engaged in terminating, negotiate, delay, and obstruct justice for Roberto Carlos Mendives Sr., Sui Juris' rights as natural parent of his four (4) children. The Due Process Clause of the Fourteenth Amendment demands more. Before a State may "sever "completely and irrevocably the rights of parents in their natural child, due process require that the State **support its allegations** by at least clear and convincing evidence. See- **Santosky v. Kramer, 455 U.S. 745 (1982).**

The trial court erred by NOT setting up an adjudication hearing for any custodial arrangement for the children of this marriage assuming away Mr. Mendives and his four children's fundamental rights and liberty interests, and property. In doing so, no trial occurred and the confabulated and coerced Mr. Mendives into agreeing with Temporary Agreement that was signed in a moment of vulnerability, stress, and under duress. This was a violation of Mr. Mendives Sixth Amendment which guarantees an accused the right to proper counsel. The

attorney Mr. Mendives had did not represented him properly, not telling him what empowers him constitutionally, instead the attorney said to Mr. Mendives (quoting) "if you ask for equal time the judge may think that you are trying to get away with child support…."

Later, in this case, Mr. Mendives requested several motions for Adjudication Hearings which per the request of the opposing party Angela Mendives and hers attorneys Velia J. Meza and Antony Daniel 'Tony Bancroft' Bancroft asked the court several times for **"Notice to Reset the Adjudication Hearings."** The request for **"Notice to Reset"** the Adjudication Hearings is obstructing justice. Several times?

Mr. Mendives is a presumptively fit, un-adjudicated parent against all NO EVIDENCE allegations of domestic violence brought up to the court by Angela Mendives. False Allegations that has been completely denied in court from the inception of this case and the court has ignored to pursue the finding of the facts in protection of Mr. Mendives fundamental paretal rights, liberty interests, property and all others civil rights.

The trial court - applying Texas "In the child best Interest" 1 - denied Mr. Mendives his right to an **adjudication trial**, and instead obtained jurisdiction over the children solely through false allegations of domestic violence entered into by the children's mother. It then used its authority to place the children into the sole custody of the mother Angela Mendives' care, in doing so, under no authority the trial court restricts Mr. Mendives' to equal custody parental rights then on November 06th, 2015. Moreover, with ZERO evidences the trial court, restricted Mr. Mendives parenting time to supervised visits, and requiring Mr. Mendives to complete an extensive court-ordered service plan. The trial court's intrusion into Mr. Mendives and his four sons' unalienable and inherited rights along with the **First Amendment** protections to direct the care, custody and control of his four children without making unfitness findings facts

17

adjudication hearing is a ruthless and pervasive violation of Mr. Mendives substantive due process and equal protection rights under the **U.S. Constitution.**

Mr. Mendives is requesting that this Court to do what is rights and fair, to reverse the trial court's orders and hold that absent adjudication findings of unfitness against a parent, a trial court and juvenile court lacks the constitutional authority to issue any custodial or dispositional orders that infringe upon the **un-adjudicated parent's rights.** Mr. Mendives request that due to No Adjudication Hearing and of course NO Evidences presented to the court that the protective order is removed and expunged for lack of findings. Anyone can make an allegations or accusations, that do not make the acts true. Evidences apply in this case. Accusations but no evidence is inflammatory, is the imperative for Angela Mendives and her attorneys to produce the evidences to corroborate the allegations. It is true or false that in this country, one is innocent until proven guilty?

Furthermore, the trial court does not know Mr. Mendives from no where. Mr. Mendives is completely clean of any criminal records with a very proud business occupation that highlights his character, thus, if based on any reasonable suspicion, then the trial court is acting maliciously, vaguely and without authority.

Reasonable suspicion is a low standard of proof to determine whether a brief investigative stop or search by a police officer or any government agent is warranted. It is important to note that this stop or search must be brief; its thoroughness is proportional to, and limited by, the low standard of evidence. The Supreme Court ruled that reasonable suspicion requires specific, articulable, and individualized suspicion that crime is afoot. See- **Terry v. Ohio, 392 U.S. 1 (1968).**

18

The U.S. Supreme Court has rejected the argument and held that the Constitution requires, as a matter of due process, that the father have a **"hearing on his fitness as a parent before his children are taken away from him in any custodial arrangements."** See – **In re Sanders, (2014)**

The Court found that the State's interest in presuming the unfitness of all unmarried fathers and efficiently disposing of their rights did not outweigh the constitutional interests of the father. The Court stated:

Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand. Id. at 656-657.

The Court made clear that **infringing upon a parent's right to custody of his children is strictly forbidden** under the Constitution absent a judicial determination of **parental unfitness.** This constitutional burden cannot be satisfied by making unfitness findings against the other parent. In **Parham v JR, supra, the Supreme Court** noted that "[t]he statist notion that governmental power should supersede parental authority in all cases because some parents abuse and neglect children is repugnant to American tradition." **Id. at 603.** Other federal decisions have made similar findings. The government may not, consistent with the Constitution, interpose itself between a fit parent and his children simply because of the allegations.

But this is precisely what the "in the child best interest" allows. It permits trial courts to infringe upon the constitutional rights of both parents based solely on vaguely and false allegations against one parent. It then allows the court to place the burden on the un-adjudicated parent to

demonstrate his fitness by complying with a service plan, temporary orders while his children remain in sole custody of Angela Mendives (the mother). It also authorizes a trial court to terminate the un-adjudicated parent's rights based on his failure to comply with the service plan. The "In the Child best Interest" conflicts with the constitutional precedent of this Court and the United States Supreme Court and must be overruled."

No evidence and unproven allegations causing a **false restraint order and a false protective order** of heinous crimes have been the cause to depriving Mr. Mendives and his four children of fundamental rights, liberty interest and property. The trial court should have set for an evidentiary hearing to prove Angela Mendives allegations against Mr. Mendives.

**DUTY OF COURTS.** "It is the duty of the courts to be watchful for the Constitutional Rights of the citizen and against any stealthy encroachments thereon." See- **Boyd v. United States, 116 U.S. 616, 635**

Any judgments or orders of the trial court without proven allegations is a violation of Mr. Mendives' 4th and 14th Amendment to the due process. The rules of evidence apply to this case, thus, the State and Angela Mendives and her attorneys bear the burden of proving such heinous crimes, by a preponderance of evidence. See- **Santosky v. Kramer, 455 U.S. 745 (1982).** When such allegations are proved by a plea or at the trial, the adjudicated parent is determined to be unfit, " then" determine what measures the court will take with respect to a child properly within its jurisdiction and, when applicable, against any adult.

Ultimately, ends with a permanency planning hearing, which results in either the dismissal of the original petition and family reunification or the court's ordering the child protective services to file a petition for the termination of parental rights.

20

The trail court has avoid and ignored the raised up of Angela Mendives' rape and domestic violence allegations. The punishment of rape can range from a fine to life imprisonment, and all domestic violence are serious crimes, thus, the trial court abused its discretion in making any judgments or orders by minimizing the magnitude and effect of these allegations.

Furthermore, if the State and Angela Mendives and her attorneys fail to meet this burden, the such allegations that caused the removal of my homestead, as well restraining and protective orders should be dismissed immediately; thus, I Roberto Mendives Sr. should be returned immediately to his homestead which is separate property and my fundamental parental rights, liberty interest, property and freedom should be restored immediately.

The procedures governing adjudication trials protect parents from the risk that their fundamental interest in raising their children will be wrongly taken away from them, thus, why the trial court , whom has learned in the law officers do what is right?

Mr. Mendives has been denied and ignored of his constant requests to address motions for deprivation of fundamental parental rights, and several adjudication hearings, thus, denying his request that the court immediately return his children to his equal parental custody. Under no evidences of domestic violence Mr. Mendives should be returned to his homestead immediately; all with no due process of the law. The trial court erred in denying the motion because Mr. Mendives is a presumptively fit, un-adjudicated parent against whom allegations of unfitness were "never" been proven at an adjudication trial because there has not been an adjudication hearing.

The trial court - applying Texas' "In the Child best Interest"  which Justice Scalia in **Troxel v. Granville, (2000),** Dissenting, (quoting) in my view, a right of parents to direct the

21

upbringing of their children is among the "Unalienable Rights" in the Declaration of Independence.

Moreover, Justice Scalia stated that in **Reno v Flores**, the best interest of the Child can be and rightfully are subordinate to other issues: Similarly, The "best interest of the Child" **IS NOT** a Legal Standard that govern parent's or guardian's exercise of their custody: so long as certain minimum requirements of child care are met, the interest of the child may be subordinated to the interest of other children, or indeed even to the interests of the parents or guardians themselves.

The trial court clearly - 1 - denied Mr. Mendives of his right to an adjudication trial, and instead obtained jurisdiction or any decision over the children based on Mr. Angela Rose Mendives' Domestic Violence Allegations, whom has avoid bringing to court the evidence to corroborate the allegations on her "sworn affidavits."

Furthermore, the trial court has failed to ask for evidence in order to protect the accused Mr. Mendives, even though, any and all allegations of domestic violence has been denied.

The **Burden of Proof: In "every case"** one party or another has the onus of demonstrating the truth of some fact or another. The party who must so demonstrate is said to have the **burden of proof**. In addition to who carries the burden, the burden can be of different loads. Simply, in alleged "Domestic Violence" case the accuser carries the burden of proof and must prove every element of the alleged "Domestic Violence" - **"beyond a reasonable doubt."**

The merely allegations of Domestic Violence does not make an act true (as I, Mr. Mendives stated to Honorable Judge Karen Crouch). The state must certainly prove the allegations and by the preponderance of evidence. Anyone can come to this trial court and make baseless horrified statements of heinous crimes against a father or a mother and the court will take the "sworn" statement as a proven burden without proving it, worse over- without any evidences. The State must certainly overcome the presumption of parental fitness, by "proving

22

Angela Mendives allegations." If such crimes allegations are proven then it is very clear that the court has jurisdiction over adults . . . and may make orders affecting adults as in the opinion of the court are necessary for the physical, mental, or moral well-being of a particular juvenile or juveniles under its jurisdiction." "Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the supreme law of the land. The judge is engaged in acts of treason." See- **Cooper v. Aaron, 358 U.S. 1, 78 S. Ct. 1401; 1958;** also See- When the state moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures - **Santosky v. Kramer, 455 US 745, 753 (1982); See -Ex parte Yarbrough, 110 U.S. 651 (1884);** See- **Townsend v. Burke** the Court overturned a sentence imposed on an un-counseled defendant by a judge who in reciting defendant's record from the bench made several errors and facetious comments.

"If" a child is being abused or neglected, it is **imperative** that a court have the power to immediately intervene and to intervene effectively. "A juvenile court must be afforded the flexibility to assume jurisdiction over a child based on findings of maltreatment against one parent. This authority is essential to ensuring that the court has the ability to issue orders to remedy the abuse or neglect by the offending parent." **Sankaran, Parens Patriae Run Amuck: The Child Welfare System's Disregard for the Constitutional Rights of Nonoffending Parents, 82 Temp L Rev 55, 84 (2009).**

Once the family court acquires jurisdiction over the children, then it could be authorized to hold a dispositional hearing "to determine what measures the court will take . . . against any adult . . . ." then allows the family court to "order compliance with all or part of the case service plan and may enter such orders as it considers necessary in the interest of the child."

Consequently, after the family court found that the children involved in this case came within its jurisdiction on the basis of [the adjudicated parent's] no-contest.

23

The trial court "impermissibly" interfered with Mr. Mendives 'equal parental constitutional rights to direct the care and custody of his children," as a parent's constitutional rights with respect to his four children. See - **Stanley v Illinois, 405 US 645, 652; 92 S Ct 1208; 31 L Ed 2d 551 (1972)** ("Neglectful parents may be separated from their children.").

The trial court can only enter an order that infringes on a parent's "rights" unless that parent has been determined to be unfit. Thus, adjudicating a parent unfit "only" allows the court to enter orders that infringe on an unfit parent's "rights," the Legislature manifestly did not grant courts any "**unfettered authority**" to "**impermissibly interfere with a parent's constitutional rights.**

Neither evidences nor adjudication hearings have been made by the trial court, therefore, Mr. Mendives has not been found guilty of any allegations brought to the court by Angela Mendives and her attorneys. Moreover, the Due Process Clause of the Fourteenth Amendment demands more than what this trial court has done to deprive Mr. Mendives and his sons of his fundamental rights, liberty interest and property. Before a State may sever completely and irrevocably the rights of parents in their natural child, due process require that the State support its allegations by at least clear and convincing evidence. See- **Santosky v. Kramer, (1982).**

At the fact-finding hearing is the "Adjudication Hearing", the State must establish, among other things, that for more than a year after the child entered state custody, the agency "made diligent efforts to encourage and strengthen the parental relationship." **Fam. Ct. Act §§ 614.1.(c), 611.** The State must further prove that during that same period, the child's natural parents failed "substantially and continuously or repeatedly to maintain contact with or plan for the future of the child although physically and financially able to do so." § 614.1.(d). Should the State support its allegations by "a fair preponderance of the evidence," § 622, the child may be declared permanently neglected. § 611. That declaration empowers the Family Court judge to terminate

24

permanently the natural parents' rights in the child. §§ 631(c), 634. Termination denies the natural parents physical custody, as well as the rights ever to visit, communicate with, or regain custody of the child.*fn1

The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

It then that any judgment or dispositional authority regarding the custody of the children of this case requires that the trial court should "immediately" enter orders consistent with a ruling to avoid any **erroneous deprivation of equal parental rights** by either upon motion of a party or sua sponte. That being said, not just this case but in all cases in which a dispositional order infringing upon the un-adjudicated parent's right to "direct the care, custody, and control of his [or her] children" has been entered by this court.

**In re Sanders (2014)** – Court observed that "the trial is the only fact-finding phase regarding parental fitness, and the procedures afforded respondent parents are tied to the allegations of unfitness contained in the petition." This point raises three issues: 1) what type of petition against the previously un-adjudicated parent is necessary, 2) what must the nature of the allegations be, and 3) at what point in the proceedings must a hearing on this petition occur?

25

The trial court found Mr. Mendives guilty on ex-party hearing on Judge Karen Crouch's court room restricting Mr. Mendives' parenting time to supervised visits, and require him to complete an extensive court-ordered service plan. The trial court's intrusion into Mr. Mendives' constitutional right to direct the care, custody and control of his children without making unfitness findings, lack of an Adjudication Hearing trial violated his substantive due process and equal protection rights under the U.S. Constitution and the Texas Constitution. "If any statement, within any law, which is passed, is unconstitutional, the whole law is unconstitutional." See- **Marbury v. Madison: 5 US 137, 1803.**

**EQUAL PROTECTION CLAUSE**

The Fourteenth Amendment "is one of a series of constitutional provisions having a common purpose; namely, securing to a race recently emancipated, a race that through many generations had been held in slavery, all the civil rights that the superior race enjoy. The true spirit and meaning of the amendments . . . cannot be understood without keeping in view the history of the times when they were adopted, and the general objects they plainly sought to accomplish. At the time when they were incorporated into the Constitution, it required little knowledge of human nature to anticipate that those who had long been regarded as an inferior and subject race would, when suddenly raised to the rank of citizenship, be looked upon with jealousy and positive dislike, and that State laws might be enacted or enforced to perpetuate the distinctions that had before existed. . . . **The Fourteenth Amendment** was designed to assure to the colored race the enjoyment of all the civil rights that under the law are enjoyed by white persons, and to give to that race the protection of the general government in that enjoyment, whenever it should be denied by the States. It not only gave citizenship and the privileges of citizenship to persons of color, but it denied to any State the power to withhold from them the equal protection of the laws, and authorized Congress to enforce its provision by appropriate legislation." Thus, a state law which on its face worked a discrimination against African

26

Americans was void. In addition, "though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution."

## STATEMENT OF QUESTIONS PRESENTED

**I.** The Substantive Due Process Clause of the Fourteenth Amendment requires the State to prove that a parent is unfit prior to infringing upon that parent's right to direct the care of his children. See- **Stanley v Illinois, 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972).** In Texas, a parent's fitness is determined at an adjudication trial, which can be before a jury or a judge. The "In the Child Best Interest," however, allows a trial court to deny a parent his right to an adjudication trial simply if CRIMES "allegations" are made against the other parent. If someone makes allegations against another party does that make the accused party guilty "automatically"?

It then allows the court to make custodial arrangements, or place children in the care of one parent as sole custodian restricting the un-adjudicated parent's contact with his children and order him to comply with services.

Does the "In the Child Best Interest" violate the substantive due process rights of un-adjudicated parents by permitting trial courts to place their children in Custodial care of trial court's choice and to condition their rights on complying with a service plan without adjudicating their parental unfitness even though not found guilty of absolutely anything?

**II.** The Equal Protection Clause of the Fourteenth Amendment prohibits states from making distinctions that impinges on parental rights unless the distinctions are narrowly tailored to serve a compelling state interest. The "Child Best Interest" permits trial courts to deny some parents the right to an adjudication trial while granting that right to others. Thus, the state policy creates a distinction that gives co-respondent parents, like Mr. Mendives in this case, fewer procedural rights than sole-respondent parents, who have an unconditional right to an adjudication trial. Does the "Child Best Interest" - which authorizes trial courts to deprive certain parents of their right to an adjudication trial - violate the Equal Protection Clause?

## THE UNITED STATES CONSTITUTION AND THE UNITED STATES SUPREME COURT UPHOLDING PARENTAL RIGHTS AS "FUNDAMENTAL"

The Supreme Court of the United States has traditionally and continuously upheld the principle that parents have the fundamental right to direct upbringing of their children in all matters. A review of cases taking up the issue shows that the Supreme Court has unwaveringly given parental rights **the highest respect and protection possible.**

It is clear that the U.S. Constitutional Rights of a parent to direct the upbringing of his child in all matters is firmly entrenched in the U.S. Supreme Court case history. Furthermore, a higher standard of review applies to fundamental rights such as parental liberty than to any other rights. When confronted with a conflict between parents' rights and state regulation, the court **MUST** apply the "compelling interest test." Under this test, the state must prove that its infringement on the parents' liberty is essential to fulfill a compelling interest and **it is  the least restrictive means** of fulfilling this state interest. Simply proving the regulation is reasonable is not sufficient. What follows are some of the examples of the Court's past protection of parental rights. Over a thirty United States Supreme Court cases where, primarily in dicta, the Court has

28

declared parental rights to be fundamental rights which require a higher standard of review (i.e. the **"compelling interest test"**)

**In Meyer v. Nebraska the Court** ...the Supreme Court recognized that the right of the parents was protected within **the liberty of the Fourteenth Amendment.** The Fourteenth Amendment guarantees the right of the individual ... to establish a home and bring up children, and to worship God according to his own conscience.

In 1925, the Supreme Court decided the **Pierce v. Society of Sisters...** thereby supporting Meyer's recognition of the parents' right to direct the upbringing of their children. Pierce also asserts the parents' fundamental right to keep their children free from government standardization.

The Supreme Court uses strong language in asserting that children are not "the mere creature of the State. "The child is not the mere creature of the state; those who nurture him and direct his destiny have the right and the high duty, to recognize and prepare him for additional obligations.

1. **In Paris Adult Theater v. Slaton, 413 US 49, 65 (1973)** - In this case, the Court includes the right of parents to rear children among rights "deemed fundamental." Our prior decisions recognizing a right to privacy guaranteed by the 14th Amendment included only personal rights that can be deemed fundamental or implicit in the concept of ordered liberty . . . This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing

2. **Carey v. Population Services International, 431 US 678, 684-686 (1977)-** Once again, the Court includes the right of parents in the area of "child rearing and education" to be a liberty

interest protected by the Fourteenth Amendment, requiring an application of the **"compelling interest test."**

Although the Constitution does not explicitly mention any right of privacy, the Court has recognized that one aspect of the liberty protected by the Due Process Clause of the 14th Amendment is a "right of personal privacy or a guarantee of certain areas or zones of privacy . . . This right of personal privacy includes the interest and independence in making certain kinds of important decisions . . . While the outer limits of this aspect of privacy have not been marked by the Court, it is clear that among the decisions that an individual may make without unjustified government interference are personal decisions relating to marriage . . . family relationships, **Prince v. Massachusetts, 321 US 158 (1944);** and child rearing and …, **Pierce v. Society of Sisters, 268 US 510 (1925); Meyer v. Nebraska, 262 US 390 (1923).'** [emphasis supplied]

3. **Maher v. Roe, 432 US 464, 476-479 (1977)** - We conclude that the Connecticut regulation does not impinge on the fundamental right recognized in Roe ... There is a basic difference between direct state interference with a protected activity and state encouragement of an alternative activity consonant with legislative policy ... This distinction is implicit in two cases cited in Roe in support of the pregnant woman's right under the **14th Amendment. In Meyer v. Nebraska**. . . the Court held that the teacher's right thus to teach and the right of parents to engage in so to instruct their children were within the liberty of the 14th Amendment . . . In **Pierce v. Society of Sisters** . . . the Court relied on Meyer . . . reasoning that the 14th Amendment's concept of liberty excludes any general power of the state to standardize its children by forcing them to accept instruction from public teachers only. The Court held that the law unreasonably interfered with the liberty of parents and guardians to direct the upbringing and education of the children under their control…
Both cases invalidated substantial restrictions of constitutionally protected liberty interests: the Maher decision unquestionably recognizes parents' rights as fundamental rights.

30

4. **Parham v. J.R., 442 US 584, 602-606 (1979)-**   This case involves parent's rights to make medical decisions regarding their children's mental health. The lower Court had ruled that Georgia's statutory scheme of allowing children to be subject to treatment in the state's mental health facilities violated the Constitution because it did not adequately protect children's due process rights. The Supreme Court reversed this decision upholding the legal presumption that parents act in their children's best interest. The Court ruled:

Our jurisprudence historically has reflected Western civilization concepts of the family as a **unit with broad parental authority over minor children**. Our cases have consistently followed that course; our constitutional system long ago rejected any notion that a child is "the mere creature of the State" and, on the contrary, asserted that parents generally "have the right, coupled with the high duty, to recognize and prepare their children for additional obligations." **Pierce v. Society of Sisters, 268 U.S. 510, 535 (1925)** ... [other citations omitted] . . . The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has been recognized that natural bonds of affection lead parents to act in the best interests of their children. 1 W. Blackstone, Commentaries 447; 2 J. Kent, Commentaries on American Law 190.

As with so many other legal presumptions, experience and reality may rebut what the law accepts as a starting point; the incidence of child neglect and abuse cases attests to this. That some parents "may at times be acting against the interests of their children" ... creates a basis for caution, but it is hardly a reason to discard wholesale those pages of human experience that teach that parents generally do act in the child's best interest ... The statist notion that governmental power should supersede parental authority in all cases because some parents abuse and neglect children is repugnant to American tradition." [emphasis supplied]

31

Parental rights are clearly upheld in this decision recognizing the rights of parents to make health decisions for their children. The Court continues by explaining the balancing that must take place:

Nonetheless, we have recognized that a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized (See **Wisconsin v. Yoder; Prince v. Massachusetts).** Moreover, the Court recently declared unconstitutional a state statute that granted parents an absolute veto over a minor child's decisions to have an abortion, **Planned Parenthood of Central Missouri v. Danforth, 428 US 52 (1976),** Appellees urged that these precedents limiting the traditional rights of parents, if viewed in the context of a liberty interest of the child and the likelihood of parental abuse, require us to hold that parent's decision to have a child admitted to a mental hospital must be subjected to an exacting constitutional scrutiny, including a formal, adversary, pre-admission hearing.

Appellees' argument, however, sweeps too broadly. Simply because the decision of a parent is not agreeable to a child, or because it involves risks does not automatically transfer power to make that decision from the parents to some agency or officer of the state. The same characterizations can be made for a tonsillectomy, appendectomy, or other medical procedure. Most children, even in adolescence, simply are not able to make sound judgements concerning many decisions, including their need for medical care or treatment. Parents can and must make those judgements ... we cannot assume that the result in **Meyer v. Nebraska, supra, and Pierce v. Society of Sisters, supra,** would have been different if the children there had announced a preference to learn only English or preference to go to a public, rather than a church school. The fact that a child may balk at hospitalization or complain about a parental refusal to provide cosmetic surgery does not diminish the parent's authority to decide what is best for the child (See generally **Goldstein, Medical Case for the Child at Risk: on State Supervention of Parental Autonomy, 86 Yale LJ 645, 664-668 (1977); Bennett, Allocation of Child Medical Care**

**Decision — Making Authority: A Suggested Interest Analyses, 62 Va LR ev 285, 308 (1976).** Neither state officials nor federal Courts are equipped to review such parental decisions. [emphasis supplied]

Therefore, it is clear that the Court is recognizing parents as having the right to make judgments concerning their children who are not able to make sound decisions, including their need for medical care. A parent's authority to decide what is best for the child in the areas of medical treatment cannot be diminished simply because a child disagrees. A parent's right must be protected and not simply transferred to some state agency.

5. **Santosky v. Kramer, 455 US 745, 753 (1982)-** This case involved the Appellate Division of the New York Supreme Court affirming the application of the preponderance of the evidence standard as proper and constitutional in ruling that the parent's rights are permanently terminated. The U.S. Supreme Court, however, vacated the lower Court decision, holding that due process as required under the 14th Amendment in this case required proof by clear and convincing evidence rather than merely a preponderance of the evidence.

The Court, in reaching their decision, made it clear that parents' rights as outlined in Pierce and Meyer are fundamental and specially protected under the Fourteenth Amendment. The Court began by quoting another Supreme Court case:

In Lassiter [**Lassiter v. Department of Social Services, 452 US 18, 37 (1981)**]**,** it was "not disputed that state intervention to terminate the relationship between a parent and a child must be accomplished by procedures meeting the requisites of the Due Process Clause". . . The absence of dispute reflected this Court's historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the **14th Amendment ... Pierce v. Society of Sisters ... Meyer v. Nebraska.**

The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the state ... When the state moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures. [Emphasis supplied]

6. **City of Akron v. Akron Center for Reproductive Health Inc., 462 US 416, 461 (1983)-** This case includes, in a long list of protected liberties and fundamental rights, the parental rights guaranteed under Pierce and Meyer. The Court indicated a compelling interest test must be applied.

Central among these protected liberties is an individual's freedom of personal choice in matters of marriage and family life ... **Roe ... Griswold ... Pierce v. Society of Sisters ... Meyer v. Nebraska ...** But restrictive state regulation of the right to choose abortion as with other fundamental rights subject to searching judicial examination, must be supported by a compelling state interest. [emphasis supplied]

7. **Lehr v. Robertson, 463 US 248, 257-258 (1983)-** In this case, the U.S. Supreme Court upheld a decision against a natural father's rights under the Due Process and Equal Protection Clauses since he did not have any significant custodial, personal, or financial relationship with the child. The natural father was challenging an adoption. The Supreme Court stated:
In some cases, however, this Court has held that the federal constitution supersedes state law and provides even greater protection for certain formal family relationships. In those cases ... the Court has emphasized the paramount interest in the welfare of children and has noted that the rights of the parents are a counterpart of the responsibilities they (both parents equally) have assumed. Thus, the liberty of parents to control the education of their children that was vindicated in **Meyer v. Nebraska ... and Pierce v. Society of Sisters** ... was described as a "right coupled with the high duty to recognize and prepare the child for additional obligations" ... The

34

linkage between parental duty and parental right was stressed again in Prince v. Massachusetts ... The Court declared it a cardinal principle "that the custody, care and nurture of the child reside first in the parents whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." In these cases, the Court has found that the relationship of love and duty in a recognized family unit is an interest in liberty entitled to Constitutional protection ... "State intervention to terminate such a relationship ... must be accomplished by procedures meeting the requisites of the Due Process Clause" Santosky v. Kramer ... [emphasis supplied]

It is clear by the above case that parental rights are to be treated as fundamental and cannot be taken away without meeting the constitutional requirement of due process.

8. **Thornburgh v. American College of Obstetricians and Gynecologists, 476 US 747 (1986)-** The U.S. Supreme Court declared, "Our cases long have recognized that the Constitution embodies a promise that a certain private sphere of "individual (not attached to the marriage) " liberty will be kept largely beyond the reach of government ... **Griswold v. Connecticut ... Pierce v. Society of Sisters ... Meyer v. Nebraska."** By citing Pierce, the Court included parental liberty in that protected sphere

9. **Board of Directors of Rotary International v. Rotary Club of Duarte, 481 US 537 (1987) -** In this case, a Californian civil rights statute was held not to violate the First Amendment by requiring an all-male non-profit club to admit women to membership. The Court concluded that parents' rights in child rearing and education are included as fundamental elements of liberty protected by the Bill of Rights.
The Court has recognized that the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights ... the intimate relationships to which we have accorded Constitutional protection include marriage ... the

begetting and bearing of children, child rearing and education. **Pierce v. Society of Sisters ...** [emphasis supplied]

10. **Michael H. v. Gerald, 491 U.S. 110 (1989)** -In a paternity suit, the U.S. Supreme Court ruled: It is an established part of our constitution jurisprudence that the term liberty in the Due Process Clause extends beyond freedom from physical restraint. See, e.g. Pierce v. Society of Sisters ... Meyer v. Nebraska ... In an attempt to limit and guide interpretation of the Clause, we have insisted not merely that the interest denominated as a "liberty" be "fundamental" (a concept that, in isolation, is hard to objectify), but also that it be an interest traditionally protected by our society. As we have put it, the Due Process Clause affords only those protections "so rooted in the traditions and conscience of our people as to be ranked as fundamental" **Snyder v. Massachusetts, 291 US 97, 105 (1934).** [emphasis supplied]

The Court explicitly included the parental rights under Pierce and Meyer as "fundamental" and "interests "traditionally protected by our society."

11. **Employment Division of Oregon v. Smith, 494 U.S. 872 (1990)** - One of the more recent decisions which upholds the right of parents is *Employment Division of Oregon v. Smith*, which involved two Indians who were fired from a private drug rehabilitation organization because they ingested "peyote," a hallucinogenic drug as part of their religious beliefs. When they sought unemployment compensation, they were denied because they were discharged for "misconduct."

The Indians appealed to the Oregon Court of Appeals who reversed on the grounds that they had the right to freely exercise their religious beliefs by taking drugs. Of course, as expected, the U.S. Supreme Court reversed the case and found that the First Amendment did not protect drug use. So what does the case have to do with parental rights?

36

After the Court ruled against the Indians, it then analyzed the application of the Free Exercise Clause generally. The Court wrongly decided to throw out the Free Exercise Clause as a defense to any "neutral" law that might violate an individual's religious convictions. In the process of destroying religious freedom, the Court went out of its way to say that the parents' rights to control the education of their children is still a fundamental right. The Court declared that the "compelling interest test" is still applicable, not to the Free Exercise Clause alone:

But the Free Exercise Clause in conjunction with other constitutional protections such as ... the right of parents, acknowledged in Pierce v. Society of Sisters, 268 U.S. 510 (1925), to direct the education of their children, see Wisconsin v. Yoder, 406 U.S.205 (1972) invalidating compulsory-attendance laws as applied to Amish parents who refused on religious grounds to send their children to school. [emphasis supplied]

In other words, under this precedent, parents' rights to control the education of their children is considered a "constitutionally protected right" which requires the application of the compelling interest test. The Court in Smith quoted its previous case of **Wisconsin v. Yoder**:
Yoder said that "The Court's holding in Pierce stands as a charter for the rights of parents to direct the religious upbringing of their children. And when the interests of parenthood are combined with a free exercise claim ... more than merely a reasonable relationship to some purpose within the competency of the State is required to sustain the validity of the State's requirement under the **First Amendment." 406 U.S., at 233**.[emphasis supplied]

Instead of merely showing that a regulation conflicting with parents' rights is reasonable, the state must, therefore, reach the higher standard of the "compelling interest test," which requires the state to prove its regulation to be the least restrictive means.

12. **Hodgson v. Minnesota, 497 U.S. 417 (1990)** - In Hodgson the Court found that parental rights not only are protected under the First and Fourteenth Amendments as fundamental as and more important than property rights, but that they are "deemed essential."

The family has a privacy interest in the upbringing and education of children and the intimacies of the marital relationship which is protected by the Constitution against undue state interference. See **Wisconsin v Yoder, 7 406 US 205 ...**

The statist notion that governmental power should supersede parental authority in all cases because some parents abuse and neglect children is repugnant to American tradition." **Parham, 442 US, at 603**, [other citations omitted]. We have long held that there exists a "private realm of family life which the state cannot enter." **Prince v Massachusetts ...**

A natural parent who has demonstrated sufficient commitment to his or her children is thereafter entitled to raise the children free from undue state interference. As Justice White explained in his opinion of the Court in **Stanley v Illinois, 405 US 645 (1972)** [other cites omitted]:

"The court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' **Meyer v Nebraska, ...** 'basic civil rights of man,' **Skinner v Oklahoma, 316 US 535, 541 (1942)**, and 'rights far more precious ... than property rights,' **May v Anderson, 345 US 528, 533 (1953) ...** The integrity of the family unit has found protection in the **Due Process Clause of the Fourteenth Amendment, Meyer v Nebraska, supra**." [emphasis supplied]

The Court leaves no room for doubt as to the importance and protection of the rights of parents.

38

13. *H.L. v. Matheson,* **450 US 398, 410 (1991)** - In this case, the Supreme Court recognized the parents' right to know about their child seeking an abortion. The Court stated:

In addition, constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society.

**Ginsberg v. New York, 390 US 629 (1968)** ... We have recognized on numerous occasions that the relationship between the parent and the child is Constitutionally protected **(Wisconsin v. Yoder, Stanley v. Illinois, Meyer v. Nebraska)** ... "It is cardinal with us that the custody, care, and nurture of the child reside first in the parents, whose primary function and freedom includes preparation for obligations the state can neither supply, nor hinder." **[Quoting Prince v. Massachusetts, 321 US 158, 166, (1944)].** See also **Parham v. J.R.; Pierce v. Society of Sisters ...** We have recognized that parents have an important "guiding role" to play in the upbringing of their children, **Bellotti II, 443 US 633-639** ... which presumptively includes counseling them on important decisions.

This Court clearly upholds the parent's right to know in the area of minor children making medical decisions.


14. **Vernonia School District 47J v. Acton, 132 L.Ed.2d 564, 115 S.Ct. 2386 (1995)** - In Vernonia the Court strengthened parental rights by approaching the issue from a different point of view. They reasoned that children do not have many of the rights accorded citizens, and in lack thereof, parents and guardians possess and exercise those rights and authorities in the child's best interest:

Traditionally at common law, and still today, **"unemancipated"** minors lack some of the most fundamental rights of self-determination—including even the right of liberty in its narrow sense, i.e., the right to come and go at will. They are subject, even as to their physical freedom, to the control of their parents or guardians. See- **Am Jur 2d, Parent and Child § 10 (1987).**

15. **Moore v. East Cleveland** - The Supreme Court said in the 1977 case of that "the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in the Nation's history and tradition." Moore found privacy protection for an extended family's choice of living arrangements, striking down a housing ordinance that prohibited a grandmother from living together with her two grandsons. Writing for the Court, Justice Powell said, "The choice of relatives in this degree of kinship to live together may not lightly be denied by the state.

16. **Troxel v. Granville, 530 U.S. 57 (2000)** - In this case the United States Supreme Court issued a landmark opinion on parental liberty. The case involved a Washington State statute which provided that a "court may order visitation rights for any person when visitation may serve the best interests of the child, whether or not there has been any change of circumstances." Wash. Rev. Code 26.10.160(3). The U.S. Supreme Court ruled that the Washington statute "unconstitutionally interferes with the fundamental right of parents to rear their children." The Court went on to examine its treatment of parental rights in previous cases:

In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children Wisconsin v. Yoder, 406 U.S. 205, 232, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); Quilloin v. Walcott, 434 U.S. 246, 255, 54 L. Ed. 2d 511, 98 S. Ct. 549 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); Parham v. J. R., 442 U.S. 584, 602, 61 L. Ed. 2d 101, 99 S. Ct. 2493 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor

children. Our cases have consistently followed that course"); Santosky v. Kramer, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982) (discussing "the fundamental liberty interest of natural parents in the care, custody, and management of their child"); Glucksberg, supra, at 720 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right ... to direct the education and upbringing of one's children" (citing Meyer and Pierce)). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. [emphasis supplied]

## FIRST AMENDMENT FREE ASSOCIATION RIGHTS

The federal courts have repeatedly found that parent and child share an intimate and expressive relationship that is protected by the First Amendment concept of free association. In all cases where the state seeks to infringe upon these rights, **the state, Angela Mendives and her attorneys must bear the burden of proof to the level of strict scrutiny.**

Mr. Mendives and his four sons relationship is protected to the full extent afforded any First Amendment protection and is not be altered even in small measure without proper due process protections. Where the state may not limit a person's freedom to speak to only Thursday nights and every other weekend, the state may not limit the opportunity of father and child or mother and child to freely associate with one another equally.

Mr. Mendives' parental rights are more than just a substantive right derived from interpretation of the term liberty in the Due Process Clause. These rights are intimately bound up with our first and most sacred enumerated constitutional rights and cannot easily be watered

down or questioned by those who would derogate substantive rights arising from the Fourteenth Amendment. First Amendment rights have an extremely rich case history of incredibly strong protection by the Courts. Of particular interest to parents is that the concept of clear and present danger is a First Amendment concept that sets a considerable bar to state action when used to measure the level of harm that the state must prove. The trial court has by all means acted and operated completely away from these foundations.

The state is without justification nor does the state have authority to favor one constitutionally protected relationship over the other. The state is without justification to presume that where the parents are going through divorce that do not live together that equal shared time with each parent would not be in the child's best interests. **The child shares rights equally** to benefit from companionship with both parents equally. It is the reciprocal sharing that occurs through routine daily interaction and the fundamental importance of this exchange that sets the foundation for protection of this right. This foundation strongly implicates any argument of the state to suggest that depriving equal access or equal possession of a child is a permissible infringement of rights for it is the intimate companionship itself that creates that foundation. To remove Mr. Mendives from his homestead without any evidences is inflammatory to this case. Remove that intimate companionship, thus, the trial court harms the bond and the protected relationship.

Where this trial court intervenes in any form, it must have passed the **"Least Restrictive Means Test."** The trial court using a temporary agreement that created a situation of **parental alienation, abuse of process by a false protective order based on not only false allegations but unproven facts** through NO due process, NO Adjudication Hearing  placing Mr. Mendives in a financial chaos, moving him out of his homestead and "all these in the child best interest." States have said where the parents disagree the state must take over all decision making for the child. This assertion fails not only the smell test, but more significantly, it fails the **Least Restrictive Means Test.**

42

There are many alternatives available to the Trial Court that are less restrictive than taking over all best interests decisions or than infringing on Mr. Mendives and his four son's fundamental rights, liberty interests and property. Where the state "fails" to prove that equal shared parenting with clear orders and enforcement of those orders does not work, then the state has NOT done what is required to pass this test as the Court made clear in one of its most recent First Amendment cases. See - **McCullen v. Coakley, Supreme Court 2014.**

The Federal Appellate Courts are in unanimous agreement with the U.S. Supreme Court that parents and children share a **First Amendment right to free association that is strongly protected.** Why the trial court have diligently failed to protect Mr. Mendives' family? Individual cases show that even convicted sex offenders and less than perfect parents receive this protection. They show that the state MUST demonstrate harm to the child before it may intervene. One opinion says that absent immediate danger to the child the state lacks a compelling interest in intervening in a fit parent's rights. One of the courts makes clear in multiple opinions that violation of these rights opens the state up to federal suit **under 42 U.S.C. 1983.** They show that these rights apply to individual parents regardless of their marital status and that the child shares these rights with the parent and they show that the parent's decisions are preeminent.

Where the state infringes upon the rights of parents it also infringes upon the rights of the child. Surely, the state must carry a heavy burden of proof before it can deprive a child of fundamental rights based on nothing more than a state judge's opinion of that child's best interests.

The nature of this constitutional relationship and the protections that must be afforded to it have been made abundantly clear by the following Federal Courts:

**UNITED STATES SUPREME COURT:**

43

**Roberts v. United States Jaycees, 468 US 609 - Supreme Court 1984,** (The Court has long recognized that, because the **Bill of Rights** is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State... Without precisely identifying every consideration that may underlie this type of constitutional protection, it was noted that certain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State... Moreover, the constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others. Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty... The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family — marriage, ...; childbirth, ...; the raising and education of children, ...; and cohabitation with one's relatives, ... Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.)

**Caban v. Mohammed, 441 US 380 - Supreme Court 1979,** (The present case demonstrates that an unwed father may have a relationship with his children fully comparable to that of the mother... The effect of New York's classification is to discriminate against unwed fathers even when their identity is known and they have manifested a significant paternal interest in the child. The facts of this case illustrate the harshness of classifying unwed fathers as being invariably less qualified and entitled than mothers to exercise a concerned judgment as to the fate of their children. Section 111 both excludes some loving fathers from full participation in the decision

44

whether their children will be adopted and, at the same time, enables some alienated mothers arbitrarily to cut off the paternal rights of fathers.)

**Lawrence v. Texas, 539 US 558 - Supreme Court 2003, (In Planned Parenthood of Southeastern Pa. v. Casey, 505 U. S. 833 (1992),** the Court reaffirmed the substantive force of the liberty protected by the Due Process Clause. The Casey decision again confirmed that our laws and tradition afford constitutional protection to personal decisions relating to …, family relationships, child rearing, and education. Id., at 851. In explaining the respect the Constitution demands for the autonomy of the person in making these choices, we stated as follows: "These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State.")

**Planned Parenthood of Southeastern Pa. v. Casey, 505 US 833 - Supreme Court 1992**, (It is settled now, as it was when the Court heard arguments in Roe v. Wade, that the Constitution places limits on a State's right to interfere with a person's most basic decisions about family and parenthood, …Our law affords constitutional protection to personal decisions relating to …family relationships, child rearing, and education... Our precedents "have respected the private realm of family life which the state cannot enter." …The Constitution protects all individuals, male or female, married or unmarried, from the abuse of governmental power, even where that power is employed for the supposed benefit of a member of the individual's family… Throughout this century, this Court also has held that the fundamental right of privacy protects citizens against governmental intrusion in such intimate family matters as procreation, childrearing, marriage, and contraceptive choice.)

45

**Santosky v. Kramer, 455 US 745 - Supreme Court 1982,** (But until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship. Thus, at the fact finding, the interests of the child and his natural parents coincide to favor use of error-reducing procedures... The absence of dispute reflected this Court's historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment.)

## ELEVENTH CIRCUIT

**McCabe v. Sharrett, 12 F. 3d 1558 - Court of Appeals, 11th Circuit 1994,** (According to Supreme Court precedent, the United States Constitution accords special protection to two different forms of association, "intimate association" and "expressive association." ... Roberts teaches that the right of intimate association—the freedom to choose to enter into and maintain certain intimate human relationships—is protected from undue governmental intrusion as a fundamental aspect of personal liberty... At a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family — marriage, childbirth, the raising and education of children, and cohabitation with one's relatives. ... The right of expressive association —the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion—is protected by the First Amendment as a necessary corollary of the rights that the amendment protects by its terms... Both the intimate and the expressive association rights are considered fundamental... Therefore, a plaintiff like McCabe can obtain special protection for an asserted associational right if she can demonstrate either that the asserted association closely enough resembles a family relationship to be protected by the right to intimate association, or that the purpose of the association is to engage in activities independently protected by the First Amendment... Generally speaking, when a government action or regulation burdens fundamental constitutional rights, the action or regulation is

subjected to strict scrutiny and is therefore deemed to infringe those rights unless shown to be narrowly tailored to serve a compelling government interest...)

**Shahar v. Bowers, 70 F. 3d 1218 - Court of Appeals, 11th Circuit 1995**, (Intimate associations involve "choices to enter into and maintain certain intimate human relationships." ... Such choices "must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." Id. In Roberts, the Supreme Court enumerated several characteristics typical of relationships entitled to constitutional protection as intimate associations: "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." ... Family relationships, which "by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life," "exemplify" — but do not exhaust — this category of protected associations... This court has taken an expansive view of the right of intimate association under the First Amendment, protecting even dating relationships... We protect such associations because "the `ability independently to define one's identity that is central to any concept of liberty' cannot truly be exercised in a vacuum; we all depend on the `emotional enrichment from close ties with others.'")

**Touchston v. McDermott, 234 F. 3d 1133 - Court of Appeals, 11th Circuit 2000**, (The concept of "liberty," as interpreted by the United States Supreme Court, includes a right to freedom of association. ("It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the `liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech.")... As explained above, the right to freedom of association is guaranteed by the First Amendment and protected against state impairment by the Due Process Clause of the Fourteenth Amendment.)

47

## FIRST CIRCUIT

**Valdivieso Ortiz v. Burgos, 807 F. 2d 6 - Court of Appeals, 1st Circuit 1986,** (Those cases have held only that when the state seeks to change or affect the relationship of parent and child in furtherance of a legitimate state interest, such as in cases involving termination of parental rights, …determining paternity, …and deciding whether an unwed father may retain custody of his children after their mother's death, … a fourteenth amendment liberty interest is implicated and the state therefore must adhere to rigorous procedural safeguards.

**Manarite v. City of Springfield, 957 F. 2d 953 - Court of Appeals, 1st Circuit 1992,** (In Ortiz, this court reviewed the Supreme Court's precedents involving the familial liberty interest. These precedents fall generally into two categories. The first category of cases holds that the Substantive due process prevents governmental interference in "certain particularly private family decisions."... The second category holds that the substantive due process clause requires strict adherence to procedural protections whenever the "state seeks to change or affect the relationship of parent and child in furtherance of a legitimate state interest ...")

## SECOND CIRCUIT

**Duchesne v. Sugarman, 566 F. 2d 817 - Court of Appeals, 2nd Circuit 1977**, (It is beyond peradventure that "freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." … The existence of a "private realm of family life which the state cannot enter," … "has its source . . . not in state law, but in intrinsic human rights, as they have been understood in `this Nation's history and tradition.'… Here we are concerned with the most essential and basic aspect of familial privacy — the right of the family to remain together without the coercive interference of the awesome

48

power of the state. This right to the preservation of family integrity encompasses the reciprocal rights of both parent and children. It is the interest of the parent in the "companionship, care, custody and management of his or her children," and of the children in not being dislocated from the "emotional attachments that derive from the intimacy of daily association," with the parent, ... This mutual interest in an interdependent relationship has received consistent support in the cases of the Supreme Court... there can be no question that the liberty interest in family privacy extends to a mother and her natural offspring as are involved in this case. Nor can there be any question that appellants were deprived of their right to live together as a family by the refusal to return the children to the custody of the mother. Thus, we must determine whether this deprivation of the liberty interest in family privacy was accompanied by adequate process... In this situation, the state cannot constitutionally "sit back and wait" for the parent to institute judicial proceedings. It "cannot . . . [adopt] for itself an attitude of `if you don't like it, sue.'" ...The burden of initiating judicial review must be shouldered by the government. We deal here with an uneven situation in which the government has a far greater familiarity with the legal procedures available for testing its action. In such a case, the state cannot be allowed to take action depriving individuals of a most basic and essential liberty interest which those uneducated and uninformed in legal intricacies may allow to go unchallenged for a long period of time... The family has been described quite properly as "perhaps the most fundamental social institution of our society." ... Ms. Perez and her two children were deprived of their right to live together as a family without due process of law.)

**Patel v. Searles, 305 F. 3d 130 - Court of Appeals, 2nd Circuit 2002,** (The husband/wife and parent/child relationships are obviously among the most intimate, and defendants do not suggest otherwise. Moreover, even though plaintiff did not live with his father and siblings, we must assume those relationships, too, were of such an intimate nature as to warrant the highest level of constitutional protection... We agree with the district court that at least the general right to intimate association has been clearly established since 1984 when Roberts was decided... While

49

the clearest instance of the right to familial association is embodied in the decades worth of authority protecting parents' custodial rights, ... courts have not held, and defendants do not argue, that the constitutional protection for such relationships end when a child turns 18, ... ("[W]e are unpersuaded that a constitutional line based solely on the age of the child should be drawn. The Supreme Court's decisions protect more than the custody dimension of the parent-child relationship."); ... Because Roberts explicitly stated that constitutional protection extended to the most intimate relationships, and because we assume on this appeal that plaintiff's relationships were intimate family relationships, we hold that the relationships at issue implicate the clearly established right to intimate association.)

**Tenenbaum v. Williams, 193 F. 3d 581 - Court of Appeals, 2nd Circuit 1999,** ("Choices about marriage, family life, and the upbringing of children are among associational rights [the Supreme] Court has ranked as `of basic importance in our society,' . . . rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." ... Parents therefore have a constitutionally protected liberty interest in the care, custody and management of their children... As a general rule, therefore, before parents may be deprived of the care, custody or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them... At the same time, however, the State has a profound interest in the welfare of the child, particularly his or her being sheltered from abuse. In "`emergency' circumstances," ... a child may be taken into custody by a responsible State official without court authorization or parental consent. "Emergency circumstances mean circumstances in which the child is immediately threatened with harm." ... "[T]he mere `possibility' of danger" is not enough... If it were, officers would always be justified in seizing a child without a court order whenever there was suspicion that the child might have been abused. See id. The law thus seeks to strike a balance among the rights and interests of parents, children, and the State.)

**Wilkinson ex rel. Wilkinson v. Russell, 182 F. 3d 89 - Court of Appeals, 2nd Circuit 1999,** (It has long been settled in this Circuit "that a parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection." ...("It is established that parents have a fundamental, constitutionally protected liberty interest in the custody of their children."). In addition, nearly thirty years ago, the Supreme Court recognized that "[t]he integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment . . . the Equal Protection Clause of the Fourteenth Amendment . . . and the Ninth Amendment." ...("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents . . . ."). Moreover, the Vermont Supreme Court recognized this constitutional right to family integrity many years before defendant Adams ever commenced his allegedly faulty investigation... ("[T]he freedom of children and parents to relate to one another in the context of the family, free of governmental interference, is a basic liberty long established in our constitutional law.")... Although parents enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the "`compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'" ... This competing interest, though compelling, is not so compelling as to derogate a parent's constitutional rights completely. Case workers cannot be free to substantiate a claim of abuse, for instance, by ignoring overwhelming exculpatory information or by manufacturing false evidence.)

## THIRD CIRCUIT
**Gruenke v. Seip, 225 F. 3d 290 - Court of Appeals, 3rd Circuit 2000,** (The Gruenkes also argue that Seip violated their substantive due process right to be free from state interference with family relations. While acknowledging that "the Supreme Court has clearly recognized a fundamental liberty interest in familial integrity and privacy," the District Court held that the Gruenkes' claim that Seip violated Leah's right to familial privacy and Joan's right to influence

51

and guide her daughter during her pregnancy did not rise to the level of a constitutional violation, or, even if it did, the constitutional right in question was not clearly established... As such, the District Court granted Seip's motion for summary judgment, concluding that the Gruenkes' failure to establish the violation of a clearly established constitutional right on either basis meant that Seip was entitled to qualified immunity. Although we ultimately agree that Seip is entitled to qualified immunity, we disagree with the District Court's reasoning... The right of parents to raise their children without undue state interference is well established. As the Supreme Court remarked ... "[c]hoices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as of basic importance in our society, rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." ... the Court pointed out that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents..." ... Indeed, it is "`plain beyond the need for multiple citation' that a natural parent's `desire for and right to the companionship, care, custody, and management of his or her children' is an interest far more precious than any property right." ... In Troxel v. Granville, ... the Court reiterated that the parental interest in "the care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests recognized by this Court ." ... That case reaffirmed the validity of such long-standing precedents as ... where the Court said "the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." ... ("primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition," particularly in matters of "moral standards, religious beliefs, and elements of good citizenship")... As the Court said in Roberts v. United States Jaycees, ... Familial relationships are the quintessential "personal bonds" that "act as critical buffers between the individual and the power of the State."... We are, however, persuaded that there is sufficient evidence, coupled with such reasonable inferences, to establish an unconstitutional interference with familial relations.

**US v. Loy, 237 F. 3d 251 - Court of Appeals, 3rd Circuit 2001,** (Thus, convicted pedophiles may, quite legitimately, lose custody of their children or have restrictions placed on their parental rights. However, where there is insufficient evidence to support a finding that children are potentially in danger from their parents, the state's interest cannot be said to be "compelling," and thus interference in the family relationship is unconstitutional.)

**McComb v. Wambaugh, 934 F. 2d 474 - Court of Appeals, 3rd Circuit 1991,** (Generally speaking, absent compelling circumstances the state may not interfere with the parent-child relationship. Moore v. East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Indeed, unjustified intrusion into the family may subject the state to liability. See, e.g., K.H. v. Morgan, 914 F.2d 846, 853 (7th Cir.1990) ("State employees who withhold a child from her family run the risk of being sued by the family for infringing their liberty of familial association.").

**Lehman v. Lycoming County Children's Services Agency, 648 F. 2d 135 - Court of Appeals, 3rd Circuit 1981,** (It might thus not appear illogical that should the state break up this family unit, a parent would have standing to challenge the intrusion as an infringement of the parental interest, of the family's interests, and, on the children's behalf, of their interest in an intimate, ongoing association. But it is important to recognize that parents and children do not have identical interests. Clearly, the parental interest in the companionship, care and custody of the children is a strong one and is reciprocated by the child's equally weighty interest in the nurture, love and instruction of the parents.

**HALDERMAN, BY HALDERMAN v. Pennhurst St. Sch. & Hosp., 707 F. 2d 702 - Court of Appeals, 3rd Circuit 1983,** (The existence, source, and scope of the substantive parental constitutional right to make decisions relating to general family matters, without governmental

53

interference, has been the subject of continuing concern in constitutional adjudication. These cases have arisen in a variety of factual contexts. Regardless of the factual differences, however, the Supreme Court has consistently maintained that "freedom of personal choice in matters of ... family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."... The Court has also noted that "the Constitution protects the sanctity of the family precisely because the institution of family is deeply rooted in this Nation's history and tradition." ... Further, the Court has recognized that "the importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays" in promoting a way of life... These cases lead to the conclusion that the Constitution mandates a judicial obligation to respect, if not protect, parental authority in decisions relating to general family matters because of the importance of the parental role in family life. This parental role is "established beyond debate as an enduring American tradition," ... and recognized as "basic in the structure of our society," ... The Court, however, has made it equally clear that, while parental decision making is to be preferred in most circumstances, "the family itself is not beyond regulation in the public interest" and that in "[a]cting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor and in many other ways." ... Thus, the basic issue for the courts in parental right cases is to decide whether the state has demonstrated a sufficiently important interest to justify governmental interference with parental decision-making authority. This clearly requires a balancing of interests which the Court has carried out in a variety of circumstances. In so doing it has consistently applied a heavy presumption in favor of parental decisions... I read these cases, therefore, to establish that parents have a substantial constitutional right, as head of the family unit, to direct and control the upbringing and development of their minor children. If the parental decisions amount to abuse or neglect of the minor child then the parental right is no longer constitutionally protected, and the state, as parens patriae, may intervene to protect the child. Absent a showing of abuse or neglect, however, the parental right remains substantial and may be

54

subject to governmental interference only when such interference is supported by a significant governmental interest.)


## FOURTH CIRCUIT

**Hodge v. Jones, 31 F. 3d 157 - Court of Appeals, 4th Circuit 1994,** (Much like the foundational concept of individual privacy, ... the sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution and shielded by the Due Process Clause of the Fourteenth Amendment. ... ("The bonds between parent and child are, in a word, sacrosanct, and the relationship between parent and child inviolable except for the most compelling reasons."); ... The concept of familial privacy has been restricted by the Supreme Court to (1) thwarting governmental attempts to interfere with particularly intimate family decisions, and (2) voiding government actions that sever, alter, or otherwise affect the parent/child relationship. Likewise, the individual privacy cases have focused primarily on shielding two interests: "the individual interest in avoiding disclosure of personal matters, and ... the interest in independence in making certain kinds of important decisions." ... Following that lead, circuit courts have strictly construed actionable violations of the familial privacy right to encompass only those instances where state officials' actions were directly aimed at the parent-child relationship... implicated the "most essential and basic aspect of familial privacy — the right of the family to remain together without the coercive interference of the awesome power of the state," ... "drove a wedge into [a] family and threatened its very foundation," or "eroded the family's solidarity internally and impaired the family's ability to function,")

Rucker v. Harford County, Md., 946 F. 2d 278 - Court of Appeals, 4th Circuit 1991, (Some other courts have recognized such an independent constitutional right, variously locating it in the first amendment's guarantee of free association, ... and in the "substantive component" of the due process clause, ...)

# FIFTH CIRCUIT

**Wallace v. Texas Tech Univ., 80 F. 3d 1042 - Court of Appeals, 5th Circuit 1996,** (The specific types of intimate associations which have found protection in the First Amendment have been more intimate than our image of typical coach-player relationships. ... (listing cases affording constitutional protection to marriage, begetting and bearing children, child rearing and education, and living with relatives) (citations omitted).

**Familias Unidas v. Briscoe, 619 F. 2d 391 - Court of Appeals, 5th Circuit 1980**, (It is beyond question that "freedom of association for the purpose of advancing ideas and airing grievances" is a fundamental liberty protected from governmental intrusion by the First and Fourteenth Amendments... Moreover, privacy in that association — particularly with respect to groups championing unpopular causes — is a vital incident of the primary right. Indeed, "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.")

**Kipps v. Caillier, 205 F. 3d 203 - Court of Appeals, 5th Circuit 2000,** (According to Supreme Court precedent, the Constitution accords special protection to two different types of association, "intimate association" and "expressive association." ... In Roberts, the Court noted that the right to intimate association, the freedom to choose "to enter into and maintain certain intimate human relationships," is a "fundamental element of personal liberty." 468 U.S. at 617-18, 104 S.Ct. 3244... Supreme Court precedent with respect to intimate association can be synthesized as a continuum with "family relationships" at one end, receiving the most protection, and arms length relationships, like a business acquaintance, at the other end, "remote from the concerns giving rise to this constitutional protection."... Although it is clear that "family relationships" are subject to constitutional protection, the definitional boundaries that limit the types of associations that constitute "family relationships" are blurred. The case sub judice, however, does not deal with an association on the fringe of the definition for "family relationships." Indeed, the parent-

child relationship lies at the heart of protected familial associations. ... Our recognition of Kipps's constitutional right to familial association with his son (i.e., his right to preserve the integrity of that family relationship) does not take us to the limits that may be imposed on constitutionally protected family relationships.)

## SEVENTH CIRCUIT

**Brokaw v. Mercer County, (2000), U.S. Court of Appeals, 7th Circuit,** (Parents and children have a well-elaborated constitutional right to live together without governmental interference... Equally fundamental is the substantive due process right of a child to be raised and nurtured by his parents... Until the state proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of the natural relationship... We recognize that the forced separation of parent from child, even for a short time, represents a serious infringement upon both the parents' and child's rights... Thus, substantive due process provides the appropriate vehicle for evaluating the constitutionality of the nearly four-month government-forced separation of C.A. from his parents... The due process clause of the Fourteenth Amendment prohibits the government from interfering in the familial relationship unless the government adheres to the requirements of procedural and substantive due process... The Supreme Court has long recognized as a component of substantive due process the right to familial relations... ("Parents and children have a well-elaborated constitutional right to live together without governmental interference."); ... ("We recognize the constitutionally protected liberty interests that parents have in the custody, care and management of their children.")... The Due Process Clause "includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." ... These decisions recognize that the right of a man and woman to marry, and to bear and raise their children is the most fundamental of all rights — the foundation of not just this country, but of all civilization... Equally fundamental is the substantive due process right of a child to be raised and nurtured by his parents... ("We recognize that 1019*1019 the forced separation of parent from child, even for

57

a short time, represents a serious infringement upon both the parents' and child's rights.") ... ("a child's right to family integrity is concomitant to that of a parent"). Thus, substantive due process provides the appropriate vehicle for evaluating the constitutionality of the nearly four-month government-forced separation of C.A. from his parents. ... ("[I]t is evident that there was interference with plaintiffs' rights of familial association because L.B. was physically removed from her home and from her parents for a period of almost 18 hours, which included an overnight stay in a pre-arranged shelter home... ("The due process clause of the Fourteenth Amendment prohibits the government from interfering in the familial relationship unless the government adheres to the requirements of procedural and substantive due process.").

## NINTH CIRCUIT

**US v. Wolf Child, 699 F. 3d 1082 - Court of Appeals, 9th Circuit 2012,** (The fundamental liberty interest in having contact with one's children is equally, if not more, significant. "The substantive due process right to family integrity or to familial association is well established. A parent has a fundamental liberty interest in companionship with his or her child.")

**Smith v. City of Fontana, 818 F. 2d 1411 - Court of Appeals, 9th Circuit 1987,** (The children also plead that the defendants violated their personal "rights not to be deprived of the life of their father and not to be deprived of his love, comfort, and support...." Complaint... This claim raises the threshold question whether the children's interest in the continued companionship and society of their father is a cognizable liberty interest under the due process clause... Our court, however, has held that parents can challenge under section 1983 a state's severance of a parent-child relationship as interfering with their liberty interests in the companionship and society of their children... we held that when county officials removed a mentally ill boy from his mother's custody on the ground that she could not adequately care for him, the mother could bring a section 1983 action for damages to vindicate her "substantive familial rights that have long been considered the `basic civil rights of man.'" ... we held that parents who alleged that school

58

officials negligently allowed their son to commit suicide could maintain a section 1983 action to vindicate "their fundamental parental rights guaranteed by the Ninth Amendment ... and ... their right to association with their son guaranteed by the First Amendment." ... After examining a long line of Supreme Court cases stressing "the importance of familial bonds" and identifying the many times the Supreme Court has interpreted the due process clause to protect the interests of parents "in maintaining a relationship with their children," ... we concluded that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child." ... We now hold that this constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents. The companionship and nurturing interests of parent and child in maintaining a tight familial bond are reciprocal, and we see no reason to accord less constitutional value to the child-parent relationship than we accord to the parent-child relationship... We recognize that the Supreme Court cases on which Morrison and Kelson relied to define the substantive liberty interest in a parent-child relationship involved suits by parents of minor children. The state's interference with the parent-child relationship therefore threatened not only the parents' interest in the companionship of their children, but also the parents' constitutionally protected interest in raising their children... When, as in this case, a child claims constitutional protection for her relationship with a parent, there is no custodial interest implicated, but only a companionship interest. This distinction between the parent-child and the child-parent relationships does not, however, justify constitutional protection for one but not the other. We hold that a child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest. Our view finds support in Strandberg v. City of Helena, ... where parents brought a section 1983 claim against the state for negligently allowing their son to commit suicide in jail. The parents' interest in directing the upbringing of their son was not implicated because the son was twenty-two years old and no longer a minor; the parents therefore "had not been deprived of any constitutional right to parent... However, the parents were able to "claim a violation of their fourteenth amendment due process rights in the companionship and society of the decedent." ...

Thus, the familial relationship, and not the more narrow custodial interest of the parents, gave rise to the due process action... Our conclusion also finds compelling support in the legislative history of section 1983's precursor, the Ku Klux Klan Act of 1871. Representative Butler described the Act "as a remedy for wrongs, arsons, and murders done. This is what we offer to a man whose house has been burned, as a remedy; to the woman whose husband has been murdered, as a remedy; to the children whose father has been killed, as a remedy." Cong. Globe, 42d Cong., 1st Sess. 807 (1871) (emphasis added). Indeed, the "legislative history makes a clearer case for recovery to the child due to loss of support or loss of society and companionship of a parent ... [than for] the parent's rights [for recovery] vis-a-vis the loss of a child." Bell, 746 F.2d at 1244 (emphasis added). Both case law and legislative history thus lead us to the conclusion that Mr. Smith's adult and minor children had a cognizable liberty interest in their relationship with their father...)

**Kelson v. City of Springfield, 767 F. 2d 651 - Court of Appeals, 9th Circuit 1985,** (Duane and Eleanor Kelson (the Kelsons) appeal from the district court's dismissal of their complaint alleging a violation of 42 U.S.C. § 1983 and a pendent state cause of action for negligence arising out of the suicide of their fourteen year-old son, Brian Kelson. This appeal requires us to resolve the narrow question whether parents possess a constitutionally protected liberty interest in the companionship and society of their child, deprivation of which is actionable under section 1983. Because we conclude that a cognizable liberty interest does exist in the circumstances of this case, we reverse.)

**Wallis v. Spencer, 202 F. 3d 1126 - Court of Appeals, 9th Circuit 2000,** (Because the swing of every pendulum brings with it potential adverse consequences, it is important to emphasize that in the area of child abuse, as with the investigation and prosecution of all crimes, the state is constrained by the substantive and procedural guarantees of the Constitution. The fact that the suspected crime may be heinous—whether it involves children or adults—does not provide cause

for the state to ignore the rights of the accused or any other parties. Otherwise, serious injustices may result. In cases of alleged child abuse, governmental failure to abide by constitutional constraints may have deleterious long-term consequences for the child and, indeed, for the entire family. Ill-considered and improper governmental action may create significant injury where no problem of any kind previously existed... Parents and children have a well-elaborated constitutional right to live together without governmental interference. ... That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency... The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state... (holding that "[t]he government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents.").)

## FIRST AMENDMENT FREE ASSOCIATION RIGHTS CONCLUSION

No freeman shall be taken imprisoned, disseised, outlawed, banished, or in any way destroyed, nor will We proceed against or prosecute him, except by the lawful judgment of his peers or by the law of the land." "To no one will We sell, to no one will We deny or delay, right or justice." - **Carta Magna, (1215)**

**Texas First Amendment** – Congress shall make no law respecting an establishment of religion (1), or prohibiting the free exercise thereof; of abridging the freedom of speech (1), or of the press (1); or the right of the people peaceably to assemble (1), and to petition (1) the Government for a redress of grievances.

It is **beyond any doubt that these constitutional rights exist, that they are First Amendment Rights,** and that they apply to the states through the Fourteenth Amendment. In none of these cases nor in any case we have found has any federal appellate court stated that

61

these rights do not apply to single parents or that they may be waived, ignored, or obviated by the filing of divorce proceedings or any other type of custody proceeding. Due Process simply demands much more than the filing of a suit and holding a hearing where the state judge presumes authority to deny fundamental Rights, liberty interests and or any deprivation of property.

**Fourteenth Amendment (RATIFIED EFFECTIVE JULY 9, 1868) - Section 1**. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State where they reside. No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law ** **Palko v. Connecticut, 302 U.S. 319 (1937) (1); Adamson v. California, 332 U.S. 46 (1947) (1); Rochin v. California, 342 U.S. 165 (1952) (1); Griswold v Connecticut, 381 U.S. 479 (1965) (1); In re Winship, 397 U.S. 358 (1970) (1) & Ivan V. v. City of New York, 407 U.S. 203 (1972) (1)** (requirement of proof beyond a reasonable doubt of every fact necessary to constitute the crime charged) nor deny to any person within its jurisdiction the equal protection of the laws (1). (Sections 2,3,4,and 5 omitted)

## STATEMENT OF MATERIAL PROCEEDINGS AND FACTS

Roberto Carlos Mendives Sr. is the father of Roberto Carlos Mendives II, Markus Angelo Mendives, Gabriel Lazaro Mendives, and Ezequiel Frederick Mendives. On January 20th, 2015 under false allegations, abuse of process a false restraining orders was issued against Mr. Mendives. Later, under coercion and stress through temporary agreement placed under sole custody of Angela Rose Mendives (the Mother). On November 06h, 2015, under ex-parte hearing, Mr. Mendives was ordered to comply with a service plan, despite the fact that he has never been adjudicated to be unfit, not guilty of any domestic violence whatsoever, under the standard set forth in the Texas Family and Juvenile Code. Please note that, both, the restraining

orders and the protective order were ex-parte and there has never been any evidence of any allegations brought to the court by Angela Mendives throughout the entire case.

The trial Court ordered the removal of Roberto Carlos Mendives Sr. from his homestead on January 20th of 2015 based on the Domestic Violence's "Sworn Affidavit" of Angela Rose Mendives. The same day a temporary restraining orders and Order Setting Hearing (sealed) by Judge John D. Gabriel were issued against Roberto Carlos Mendives Sr. All allegations were denied by Roberto Carlos Mendives Sr. "If any statement, within any law, which is passed, is unconstitutional, the whole law is unconstitutional." See- **Marbury v. Madison: 5 US 137, 1803**

On February 24th of 2015, which was supposed to be the trial date to confront the allegations of Angela Rose Mendives but instead Attorney Velia J. Meza for Angela Rose Mendives and Melissa Ortiz attorney for Roberto Carlos Mendives went into the back office to discuss the case; coming in and out of the back office to ask Angela Mendives and Roberto Mendives questions then come up with an with an Agreement for Temporary Orders issued by Honorable John D. Gabriel. (Mr. Yoanis Valdes and Mr. Sergio I. Truque witnessed this behavior by the judge and attorneys – These two individuals are witness and would cooperate with testifying should the court needs to corroborate the truth of this facts pertaining back office.)

This "back of the office conversations" between judges and attorneys infringes the fundamental rights of unadjudicated parents without providing adequate process, and makes this case a "fraud", it is consequently unconstitutional under the Due Process Clause of the Fourteenth Amendment. Due process requires a specific adjudication of a parent's unfitness before the state can infringe that parent's constitutionally protected parent-child relationship.

Furthermore, according to the Bill of Rights, Article VII, "no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the

63

common law". Trying to forget the allegations to try to compel an agreement or temporary order by Judge John D. Gabriel is a violation of Roberto Mendives' Constitutional Rights of due Process. To attempt, to bring allegations of domestic violence and NO EVIDENCES is also abuse of process, is harassment, it is an Intentional Infliction of Emotional Distress, it is Negligence, Infliction of Emotional Distress, Fraudulent Misrepresentation (Deceit) that should be try in a jury trial.

I, Roberto Carlos Mendives Sr., not knowingly, confused and under stress and duress signed this agreement, not knowing what empowers me constitutionally. Although, I had an attorney I was not represented properly since the attorney did not explain what constitutional rights guarantees I have or what empowers me as biological father, what were the avenues to pursue. In fact, I was under the impression that there was a hearing at any moment and expected my attorney to question Angela Mendives on her allegations of domestic violence. I asked my attorney for equal parental time, and her response was (quoting) if we ask the judge for equal he may think that you want to get away from child support. This performance is deficient. Even on her sworn affidavit, Angela Mendives stated that I, Roberto Mendives wanted a 50/50 equal custody. Angela Mendives herself referenced of my equal custody demand in her Sworn Affidavit to the court, so, why this demand has been ignored. My attorney did not function as the counsel guaranteed by the Sixth Amendment. Her deficient performance unfairly caused confusion, prejudiced and placed a bias against my fundamental rights, liberty and property.

RIGHTS DO NOT COME IN DEGREES- "Although it is manifested that an unconstitutional provision in the statute is not cured because included in the same act with valid provisions and that there is no degree of constitutionality." (16Am Jur 2d., Sec. 260)

There is no negotiation between the sovereign and his subjects; there is not even an office holder to negotiate with until the Constitution creates the office. The same people, moreover,

64

authoritatively impose limits upon the respective state governments and declare in Article VI that all office holders, state and federal, "shall be bound by Oath or Affirmation, to support the U.S. Constitution." In other words, fundamental rights, liberty interest are not negotiable. Clearly, NO COURT should to strip an unadjudicated parent of their of their sovereign rights and Constitutional BIRTHRIGHT nor to KIDNAP THEIR OFF SPRINGS nor unequally share their fundamental right and liberty interest and get away with it. In addition, the trial court has failed the "required" making of unfitness findings record against un-adjudicated parents at dispositional hearings, and even if the trial court should have done they due diligent, the two-tiered system for adjudicating a parent's unfitness created by the court raises significant due process concerns because of the fundamental unfairness it would create. In this two-tiered system, some parents would receive the benefits of an adjudication trial. For these parents, the State would have to file a petition in which the allegations of neglect or abuse would be detailed. These parents would have a right to discovery and the ability to request a trial before a jury.

For un-adjudicated parents, whose unfitness would be determined at dispositional hearings, none of these safeguards would exist. Nothing would require the State to detail the allegations of unfitness in writing. The un-adjudicated parent would not have the right to a trial before a jury, nor would he have the right to discovery. No legal standard would govern the trial court's unfitness determination - since none is set forth in the dispositional statutes or court rules - nor is a standard of proof stated.

The Appeal Court should not intend to uphold such blatant abuse of the citizenry and extreme deprivation of fundamental rights, liberty interest, and property as well as other violation of this family's civil rights? The Appeal Court should immediately put a stop to this madness and hold those liable for all that this family has gone through since the inception of this case. This court should also dismiss all orders and redress for grievances so that the procedure obstructing justice, by refusing to allow hearing on emergency petitions and appeals with

65

complete indifference to the ongoing criminal abuse being enacted right in front of the higher courts and the world, with absolutely no protection, actively refusing to protect as the Court has taken an oath to uphold. The state of the manipulation and exploitation by the failure of the judges is an abomination of justice, and this particular scheme of the attorney having no evidences of domestic violence, fitness to proceed is particularly disgusting, as it is exploiting rules that were intended to apply to truly impaired the parent-child relationship.

The Fourteenth Amendment's promise of due process is a substantive component that provides heightened protection against governmental interference with fundamental rights and liberty interests, property including the right of parents to make decisions concerning the care, custody, and control of their children. A parent's right to control the custody and care of his or her children is not absolute because the state has a legitimate interest in protecting the children's moral, emotional, mental, and physical welfare, and in some circumstances neglectful parents may be separated from their children. The United States Constitution, however, recognizes a presumption that fit parents act in the best interests of their children and that there will normally be no reason for the state to insert itself into the private realm of the family to further question the ability of fit parents to make the best decisions concerning the rearing of their children. Due process demands that an individual be afforded minimal procedural protections before the state can burden a fundamental right, and the three-part balancing test of **Mathews v Eldridge, 424 US 319 (1976),** is applied to determine what process is due when the state seeks to curtail or infringe an individual right. The test requires consideration of three factors: (1) the private interest that the official action will affect, (2) the risk of an erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and (3) the state's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. In essence, the test balances the costs of certain procedural safeguards (in this case, an adjudication hearing) against the risks of not adopting those procedures.

66

## DUE PROCESS

The trial court failed to provide the 14th Amendment protections. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." **US Const, Am XIV, § 1.** "It is well established that parents have a significant interest in the companionship, care, custody, and management of their children," and "this interest has been characterized as an element of 'liberty' to be protected by due process." Indeed, "the liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." **Troxel v Granville, 530 US 57, 65; 120 S Ct 2054; 147 L Ed 2d 49 (2000) (opinion by O'Connor, J.).**And this interest "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." **Santosky v Kramer, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982).**

"Where procedural due process must be afforded because a 'liberty' or 'property' interest is within the Fourteenth Amendment's protection, there must be determined 'what process is due' in the particular context." Smith v Org of Foster Families for Equality & Reform, 431 US 816, 847; 97 S Ct 2094; 53 L Ed 2d 14 (1977). " "Due process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' " Mathews v Eldridge, 424 US 319, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976), quoting Cafeteria & Restaurant Workers Union v McElroy, 367 US 886, 895; 81 S Ct 1743; 6 L Ed 2d 1230 (1961). Instead, "due process is flexible and calls for such procedural protections as the particular situation demands.' " Smith, 431 US at 848, quoting Morrissey v Brewer, 408 US 471, 481; 92 S Ct 2593; 33 L Ed 2d 484 (1972). " 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation' .... Stanley v Illinois, 405 US 645, 650; 92 S Ct 1208; 31 L Ed 2d 551 (1972), quoting Cafeteria Workers, 367 US at 895. "It is

67

true that 'before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." "Smith, 431 US at 848, quoting Bd of Regents of State Colleges v Roth, 408 US 564, 570 n 7; 92 S Ct 2701; 33 L Ed 2d 548 (1972) (citation omitted). "But the hearing required is only one 'appropriate to the nature of the case.' " Smith, 431 US at 848, quoting Mullane v Central Hanover Bank & Trust Co, 339 US 306, 313; 70 S Ct 652; 94 L Ed 865 (1950). The following factors should generally be considered when determining "what process is due":

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Mathews, 424 US at 335.]

## IN THE CHILD BEST INTEREST AND THE DUE PROCESS

1. **PRIVATE INTEREST–** The first factor to be considered is "the private interest that will be affected by the official action." Id. "The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection." **Stanley, 405 US at 651.** "It is plain that the interest of a parent in the companionship, care, custody, and management of Mr. Mendives four  children 'comes to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' " Id., quoting Kovacs v Cooper, 336 US 77, 95; 69 S Ct 448; 93 L Ed 513 (1949) (Frankfurter, J., concurring) (alteration in original). "There is a presumption that fit parents act in the best interests of their children." Troxel, 530 US at 68 (opinion by O'Connor, J.). "Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be NO REASON for the State to inject itself into the

68

private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

**2. ERRONEOUS DEPRIVATION OF AN INTEREST-** The next factor to be considered is "the risk of an erroneous deprivation of such interest through the procedures used . . . ." **Mathews, 424 US at 335.** "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be condemned to suffer grievous loss." **Santosky, 455 US at 758** (citations and quotation marks omitted). "The degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decision-making process." **Mathews, 424 US at 341.** " 'The possible length of wrongful deprivation of . . . benefits [also] is an important factor in assessing the impact of official action on the private interests.' " Id. (citation omitted) (alteration in original).

With regard to this factor, it is important to remember that the issue to address in the instant case concerns the propriety of a parent of an abused or neglected child (a child whose other parent has already been adjudicated as unfit) being deprived of the adjudicative phase of a child-protective proceeding. Thus, not addressing a criminal proceeding, and not addressing a termination-of-parental-rights proceeding. "Child protective proceedings are not criminal proceedings."

"The purpose of child protective proceedings is the protection of the child . . . ." Id. "The juvenile code is intended to protect children from unfit homes rather than to punish their parents.

The degree of interference with the parent's rights over the child after a finding that jurisdiction exists is largely dependent on the circumstances. As this Court has recognized, "upon a finding of jurisdiction, the [family] court has several options, one of which is to return the children to

69

their parents. Not every adjudicative hearing results in removal of custody." Simply put, a finding of jurisdiction does not necessarily, or immediately, forecloses the parent's rights to his or her child. "Moreover, in order to permanently terminate respondents' parental rights, further hearings would be required, and the statutory elements for termination must be proven by clear and convincing evidence.

"The fairness and reliability of the existing . . . procedures" must also be considered. See- **Mathews, 424 US at 343.**

That being said, the procedures outlined by the Juvenile Code and the court rules protect a parent's due process rights. They permit the court to issue an order to take a child into custody when a judge or referee finds from the EVIDENCES reasonable grounds to believe that conditions or surroundings under which the child is found are such as would endanger the health, safety, or welfare of the child and that remaining in the home would be contrary to the welfare of the child." Once the child is taken into custody, the parent must be notified and advised "of the date, time, and place of the preliminary hearing," which is to be held within 24hours after the child has been taken into custody, and a petition is to be prepared and submitted to the court.

If the child is in protective custody when the petition is filed, the procedures afforded at the preliminary hearing provide due process to the respondent-parents. They are informed of the charges against them and the court may either release the child to the respondent parents or order alternative placement.

Before ordering alternative placement, "the court shall receive evidence, unless waived, to establish that the criteria for placement . . . are present.

70

The respondent shall be given an opportunity to cross-examine witnesses, subpoena witnesses, and to offer proof to counter the admitted evidence." Thus, the respondent-parents are given notice of the proceedings and an opportunity to be heard before the child can remain in protective custody.

For the court to continue the child in alternative placement and "exercise its full jurisdiction authority," it must hold an adjudicatory hearing at which the fact-finder determines whether the child comes within the provisions of Texas Family Code . . . Once jurisdiction is obtained, the case proceeds to disposition "to determine what measures the court will take with respect to a child properly within its jurisdiction and, when applicable, against any adult . . . ."

The essence of Mr. Mendives' argument on appeal is that the Child Best Interest **WITHOUT A DUE PROCESS** violates the non-adjudicated parent's due process rights by depriving him of custody of his four children without a determination that he is an unfit custodian, or by Angela Mendives and her attorneys avoiding the Adjudication Hearing or asking several time for a Notice To Reset the Adjudication Hearing regarding the case as a whole. Rapes and domestic violence allegations that Angela Mendives brought up in court, as would be established at the adjudicatory hearing; if the court should to ignore the allegations then is acting incompetent, not learned in the law. Mr. Mendives does not have to proof himself innocent; instead it is the responsibility of the Trial Court as well as Angela Mendives and her attorneys. Mr. Mendives has not seen his sons since November 1st, 2015 based on false allegations and false protective order which was the last time dropped off to the mother Angela Mendives.

The adjudicatory phase determines whether a child requires the protection of the court because he or she comes within the parameters of Texas Family Code and child protective services. If the child comes within the scope then the trial court acquires jurisdiction and "can act in its dispositional capacity." It is at the dispositional hearing that the court determines "what

71

measures it will take with respect to a child properly within its jurisdiction. It can issue a warning to the parents and dismiss the petition place the child in the home of a parent or a relative under court supervision, or commit the child to the child protective services for placement.– See **In re Sanders, (2014)**

Before the court determines what action to take, the child protective service MUST prepare a case service plan, and the court must "consider the case service plan and any written or oral information concerning the child from the child's parent, guardian, custodian, foster parent, child caring institution, relative with whom the child is placed, lawyer-guardian ad litem, attorney, or guardian ad litem; and any other evidence offered, including the appropriateness of parenting time, which information or evidence bears on the disposition."

If the child protective services recommends against placing the child with a parent, it must "report in writing what efforts were made to prevent removal, or to rectify conditions that caused removal, of the child from the home," and identify the likely harm to the child if separated from or returned to the parent.

The parent is **entitled to notice of the dispositional hearing**, and the parties are entitled to an opportunity "to examine and controvert" any reports offered to the court and to "cross-examine individuals making the reports when those individuals are reasonably available."

In general, the provisions procedures were not followed in this case. This general provision are taken together to satisfy the "requirements" of due process. The parent is entitled to notice of the dispositional hearing and an opportunity to be heard before the court makes its dispositional ruling.

When it is recommended that the child not be placed with a parent, the court must consider whether the child is likely to be harmed if placed with the parent, which would necessarily entail a determination regarding that parent's fitness as a custodial parent. Once the court determines that the child should not be placed with the parents, it may continue the child in alternative placement or return the child to the parents depending on the circumstances of the parents and the child, again considering whether the child is likely to be harmed if placed with the parent, which would necessarily entail a determination regarding that parent's fitness as a custodial parent.

Mr. Mendives, asked the court for several Adjudication Hearings daring the opposing party to find him unfit; to find him guilty of the allegations of rape and domestic violence, etc… but the opposing party asked for several "Notice to Reset the Adjudication Hearings" every single time, such legal pretense is an obstructing and delaying the trial court from a fair justice for Mr. Mendives and his four children. One cannot just bring allegations heinous crimes to the court and avoid bringing the evidence to the trail court in search of the finding of the facts to let the court do its dearest justice to this family.

Moreover, **Stanley v Illinois, Sanders – clarifies,** "The argument that the state is relieved of its initial … burden because … parents may have their parental rights restored" later is **Constitutionally infirm.** Further, the Court announced that "the possibility of a fix at the back end is not sufficient to justify a lack of process at the front end." Process does not get much more "front end" than the preliminary hearing. Quoting Stanley, the Sanders Court maintained, "This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone. Surely, in the case before us, if there is a delay between the doing and the undoing the un-adjudicated parent suffers from the deprivation of his children, and the children suffer from uncertainty and dislocation." Furthermore, the denial of process associated with the preliminary threshold hearing would definitely fail to withstand the balancing of interests outlined in

73

**Matthew v. Eldridge.** Therefore, the delay between removal and trial in cases where an un-adjudicated parent is deprived placement in the interim is **Constitutionally intolerable.**

There must be a preliminary hearing, not only for the probable cause determination but most importantly to address the constitutionally implicated issue of removal or denial of placement to the un-adjudicated parent's care.

The trial court should have consider and rejected the "procedures chosen," recognizing that parental unfitness must be proven before the state can interfere, or imposing any orders before interfering with Mr. Mendives substantive due process right to have care and custody of his four sons. This Court of Appeals findings that the trial court failing procedures are fraudulent, tyrannical, and that the trial court must give an un-adjudicated parent a full hearing at which the State must prove unfitness, proof of Angela Mendives' allegations prior to depriving Mr. Mendives of equal custody as well as the removing of his property which is separate property without just compensation.  As justice Kennedy recognizes, the burden of litigating a domestic relations proceeding can itself be "so disruptive of the parents-child relationship that the Constitutional rights of a custodial parent to make certain basic determination for the child's welfare become implicated." – See- **Troxel v. Granwille, (2000). The First Amendment liberty** interest are perhaps the most protected liberty interest Mr. Mendives and his four children have  The same level of Due Process protection needs to be extended to the rights of parents, in divorce, to fulfill their moral obligations to direct the moral, religious, and secular upbringing of their child.

Parental rights are NOT for any parents to have absolute control over the moral, religious or secular upbringing of the child. The right is for each parent to have **EQUAL** access to influence the child. The foundation for this is the child's Fundamental Liberty Interest in developing their own consciences as an individual. No other human, not even parents, has the right to absolute

74

control over another's consciences. Parents have primary control over a child's behavior, environment, and exposures in life, but NOT their thoughts and beliefs; although they are perhaps the strongest influencers of these. When the trial court denies parental rights and refuses to follow procedures, such as in this case, Mr. Mendives a fit parent is deprived of the ability to exercise his rights and duty to prepare their children for adulthood. The child is often left to pay the final price of being less prepared for life as an adult.

With this appeal, Mr. Mendives, asserts his constitutional rights and extensively clarifies that fundamental parental rights deserve the highest protection, thus, **STRICT SCRUTINY** level of Due Process Protection. Every divorce action by default, includes a free exercise issue that would required divorce court to apply **STRICT SCRUTINY** to its procedures and application of the law.

**The Court in Yoder** determined that if the parental right is tied to a **FIRST AMENDMENT** claim then it requires a heightened level of scrutiny: However read, the Court's holding in Pierce stands as character of the rights of parents to direct the religious upbringing of their children. And, when the interest of parenthood are combined with a free exercise claim of the nature revealed by this record, more than merely a "reasonable relation to some purpose within the competency of the STATE" is required to sustain the validity of the STATE's requirement under the FIRST AMENDMENT. To be sure, the power of the parent, even when linked to a free exercise claim, may be subject to limitation under Prince if it appears that parental decisions will jeopardize the health and safety of the child, or have potential for significant social burdens. See – **Wisconsin v. Yoder, (1972)**

This does not mean that a parent has to direct that upbringing personally by exercising their possession time to the full extent. What it means is that each parent direct who the child is exposed to, what they are exposed to, and under what circumstances the child is exposed to

75

certain things. So measuring a parent's right to have equal time with their child based on whether they have been exercising that time personally should not be the standard that a court uses to determined whether or not they should be protecting that parent's fundamental Liberties. A parent may feel that it is the best interest of the child to spend much of their possession time in the care of another family member. For that matter, one may choose to allow the child to spend more time with the other parent without giving up their right to equally decide the child best interest. This is an appropriate decision for the parent, **NOT THE STATE**. The State's only duty in the face of two **FIT PARENTS** is to ensure that fundamental Liberties are protected and that the natural division of 50/50 equal control is established and enforced by law.

An example of this type of Unconstitutional Intrusion – See- **In the Matter of J.S. &C., (1974),** a New Jersey appellate case where the father was politically active in gay man. The trial court specifically restricts this man from involving his children in any of his political activities, related to the gay movement. Under the First Amendment, this is no different, and no less vital an interest than the court restricting a parent from involving the child in religious activities. The appellate Court essentially upheld these restrictions. After citing most of the case here, the Appellate Court ruled, not on the best interest of the child, but on harm. The Divorce Court found that the father's homosexuality and that his First Amendment rights to share his political beliefs with his children were harmful to the children. This is nothing more than a government seeking to quash freedom of political speech because it disagrees with the content of speech. There is no way that this kind of unjustified interference with protected speech would be tolerated by the Supreme Court, if someone would just argue it that way.

....he was ordered not to permit any f his children to be exposed to or take in any activities or publicity concerning the homosexuality civil rights movement...

The parental rights of a homosexual, like those of heterosexual, are constitutional protected. Fundamental Rights of parents cannot be denied, limited or restricted on the basis of sexual

76

orientation, per se. The right of a parent, including a homosexual parent, to the companionship and care of his or her child, in so far as it is for the best interest of the child is a fundamental right protected by the First, Ninth and Fourteenth Amendment to the United States Constitution. That right is not to be restricted without a showing that the parent's activities in general may tend to impair the emotional or physical health of the child.

In the quotes that follow, Mr. Mendives shows how the quote above, is twisted by prejudice and bias to attack those bias focuses on. Nowhere, has the Supreme Court stated that parent's Fundamental Liberty Interest only exist if they are "In the child best Interest." They say that the parents decide what is in the best interest of the child, unless they are proven unfit or have placed the child in clear and present danger. This State Appellate Court has twisted the definition of "harm" for no other reason than to impose its own opinion over that of a fit parent, and to stop that fit parent from sharing his moral and political beliefs with his children. The Divorce Court forced its moral opinion on a fit parent most likely based on the judges' personal religious beliefs?

The Welfare of the child is the primary, paramount and controlling consideration in determining question of visitation and custody of a minor child. The legal rights and claims of either parent and the wishes and personal desires of said parent must yield, if opposed to what the court, in the discharged of its duty, regards the welfare of the child to be....

It is clear that the court may impose a limitation of defendant's visitation rights only if it determines that it will serve the best interest of the children.  See- **Santosky v. Kramer, (1982)**
...But until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship. Thus at the "fact-finding, the interests of the child and his natural parents coincide to favor use of error-reducing procedures.

77

Now, can this appellate court give the trial court the benefit of the doubt by calling this case an error or clear negligence and despotic procedures casing damages to this family when the trial court have judges and officers "learned" in the law?

The trial court acting irresponsibly and I, Mr. Mendives demands for Cestui Que Vie investigation for fraud. The trial court irresponsibly and incongruently permited and continuing permitting, and forced and imposes an un-adjudicated Mr. Mendives (and his four children) to be placed with other parent in absent evidence of unfitness. As mentioned above this is **"Constitutionally Intolerable"**

In all counts, this case is completely fraudulent - Unpreserved issues are reviewed for plain error that affects substantial rights. The entire case should be reversed if the Court finds that "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."

Moreover, the trial court failed to protect Mr. Mendives' four children liberty interest – See – **Croft v. Westmoreland, (1997), United States Court of Appeal, Third Circuit -** ...Nonetheless, we can discern no rational distinction which would entitle government to order parents from their homes and arbitrarily separate parents from their children; or to deprive children of their liberty in continued companionship with their parents.

This finding is reiterated by the Virginia State Supreme Court in 2013, where they find that parents have fundamental Liberty Interests in the care, custody, and control of their child. They also found that a child has liberty interest in establishing relationship with their parents.

Although our analysis in the case rests on Breit's Constitutionally protected rights as parent, we recognize that children also have liberty interest in establishing relationships with their parents. See- **LF v. Breit, (2013), Virginia State Supreme Court.**

Clearly, if a child has best interests in establishing and maintaining parent-child relationships with their parents then this case simply can NOT be in the child's best interest to have a fit parent's custody or possession time with the child interfered with the state absent of showing clear and present danger or unfitness.

The trial court has ignored by all means Mr. Mendives and his four sons relationship, ignoring completely that both the children's fundamental liberty interest is aligned from a Parental-Rights perspective and from a Child's Rights Perspective. This is a natural condition and the condition should be assumed at all times except in case of **unfitness or clear and present danger to the child.**

This trial court did not protect the strongly protected First Amendment...The State parens patrie interest do NOT trump the First Amendment rights of parents and children in divorce, because the Court has ruled that it must be presumed that fit parents act in their child best interest. Therefore, the this trial court's interest in the health and safety if the child is "otherwise served" by the parents of first resort. See- **Wisconsin v. Yoder, (1972) Also see Prince v. Massachussetts, (1944)**

When this trial court arbitrarily gives one parent more rights and possession time than the other parent, they violating the entire family fundamental rights and liberty interests, they are in effect deciding what moral and religious influences the children will carry with them for the remainder of their lives. From the very first second this trial court gives Mr. Mendives less than 50/50 possession time is clearly interference in one's parent's right to direct the moral and religious upbringing of a child without exercising any of the traditional safeguards put in place to limit a State's ability to interfere with the people in this Constitutionally protected area.

The trial court failed to come to term with the fundamental Liberties when a fit parent is ordered under false allegations restraining or protective orders, in doing so, when Judges know the "child is an extension of the parent", thus discriminating against Mr. Mendives.

The taking of a child from any parent and giving that child to any other individual, including the other parent on an unequal basis is nothing more that punishment for some perceived wrong done to society. The child for most parents is the most precious things in life, dearer than money or possessions, dearer even than life itself. Most parents would not hesitate to give their lives for their children. Taking the child is a worse punishment than death and should be treated with the same deference. This action should be viewed as punishment under the Eight Amendment proscription of cruel and unusual punishment. That Amendment does not restrict this proscription to criminal punishment, but applies it generally. Federal Law has considered removing a child from a parent a penalty great if not greater than criminal penalty.

**In the Indian Civil Welfare Act of 1978** - Congress **requires** "evidence beyond a reasonable doubt for terminations of Indian Parental Rights, reasoning that "the removal of a child is a penalty as great as, if not greater, than criminal penalty...See- **Santosky v. Kramer, (1982)**

A year plus later and no evidences and the false statements of Angela Mendives created an abuse of process for un-justified interference in the right of parenthood in this manner, the state allowed Angela Mendives the power to deprive Mr. Mendives and his four children of their own basic fundamental liberties. Mr. Mendives has not seen his four children since Sunday, November 1st of 2015 when I dropped them off to Angela Mendives.

As a result, the practice **must receive the strict scrutiny guaranteed by the Due Process Clause of the Fourteenth Amendment.** This is true regardless of whether the interference with the right is permanent or temporary, pendente lite. The Court has held that the deprivation of

80

fundamental liberty rights 'for even minimal periods of time, unquestionably constitutes irreparable injury.' See -**Elrod v. Burns, 96 S.Ct. 2673; 427 U.S. 347, (1976).**

Also See - **SANTOSKY v. KRAMER, 455 U.S. 745 (1982),** "The Family Court Judge in the present case expressly refused to terminate petitioners' parental rights on a "non-statutory, no-fault basis." App. 22-29. Nor is it clear that the State constitutionally could terminate a parent's rights without showing parental unfitness. See **Quilloin v. Walcott, 434 U.S. 246, 255 (1978).** "We have little doubt that the Due Process Clause would be offended `if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, **without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest,'"** quoting **Smith v. Organization of Foster Families, 431 U.S. 816, 862 -863 (1977)."**

Moreover, - See **SANTOSKY v. KRAMER, 455 U.S. 745 (1982),** "Any parens patriae interest in terminating the natural parents' rights arises only at the dispositional phase, after the parents have been **found unfit."**

Also – See **TROXEL V. GRANVILLE (99-138) 530 U.S. 57 (2000), 137 Wash. 2d 1, 969 P.2d 21, affirmed. "Justice O'Connor, joined by The Chief Justice, Justice Ginsburg, and Justice Breyer, concluded that 26.10.160(3),** as applied to Granville and her family, violates her due process right to make decisions concerning the care, custody, and control of her daughters. Pp. 5ù17." "(a) The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," **Washington v. Glucksberg, 521 U.S. 702, 720,** including parents' fundamental right to make decisions concerning the care, custody, and control of their children, see, e.g., **Stanley v. Illinois, 405 U.S. 645, 651. Pp. 5ù8."** "(b)".. broad statute effectively permits a court to disregard and overturn any decision by a fit custodial parent based

81

solely on the judge's determination of the child's best interest. A parent's estimation of the child's best interest is accorded no deference." (Arbitrary Classification at work)

**LEHR v. ROBERTSON, 463 U.S. 248 (1983), 463 U.S. 248**, "Where an father demonstrates a full commitment to the responsibilities of parenthood by "coming forward to participate in the rearing of his child, <u>his interest in personal contact with his child acquires substantial protection under the Due Process Clause</u>." **Caban v. Mohammed, 441 U.S. 380, 392."**

## ALL EVIDENCE UNDER THE INFORMATION OF FREEDOM ACT

On March 07th, 2016 at Honorable Judge Peter Sakai's 225th District Court Courtroom. Honorable Judge Peter Sakai requested Attorney Velia J. Meza to put the submit the Ex-Parte divorce decree rendered By Honorable Judge Karen Crouch on November 06th of 2015 by the end of March of 2015. The divorce decree has NOT been submitted to the court as of now the end of May of 2015 and the divorce decree has not seen the court.

In the same hearing, which is not on records- I, Mr. Mendives Sr. requested all evidences to Angela Mendives' attorney Velia J. Mesa (Bar Card# 24032740) right in front of Honorable Judge Peter Sakai, pursuant to **The Freedom of Information Act** with copies of all statements in Ex-Parte Hearing used to obtain Restraining Order and Protective Orders. Evidences which are completely absent from the record and heinous crimes allegations cannot be proven. Any suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment. See- **United States v. Bagley 473 U.S. 667 (1985); Also see- Brady v. Maryland, 373 U. S. 83.**

In Angela Mendives' Sworn Affidavit of January 20th, 2015 -   she had stated that she picked up Mr. Mendives' cell phone that was in the floor right beside the bed, she then placed the "key-

82

code" to enter the phone, search the for text messages apparently finding proof that adultery has occurred between Mr. Mendives with another female.

That being said, Mr. Mendives stated that adultery has not occurred. Angela Mendives provided to the trial court with pictures and text message that do not proof that adultery has occurred.

Moreover, in Angela Mendives' discovery she stated that although she has not proof nor evidences she still accuses Mr. Mendives of committing adultery with many women, although no evidences, or when adultery happened she is sure that adultery has happened.

Black's Law Dictionary at 52 (7th ed. 1999) defines adultery is "voluntary sexual intercourse of a married person with a person other than the offender's husband or wife"); **24 Am. Jur. 2d Divorce and Separation § 66 (1983); 27A C.J.S. Divorce § 60 (1986).**

Another example, **the court in the New Jersey case of W. v. W., 94 N.J. Super. 121, 226 A.2d 860 (Ch. Div. 1967)** adhered to this strict definition of adultery. In that case, the husband filed a complaint for divorce solely on the ground of adultery. The wife submitted expert testimony from her gynecologist and hospital records, however, that at the time of the alleged adultery, she was physically incapable of engaging in sexual intercourse. Rather, as a result of x-ray treatments for carcinoma of the cervix, her vagina was completely occluded and obliterated. The husband argued that "adultery" should be construed by the court to include "lascivious conduct, or ... the performance of unnatural sex acts . . ." 226 A.2d at 861. The court disagreed with the husband's position, holding, "Even actual proof of sexual conduct with a third person other than intercourse is not tantamount to adultery." **226 A.2d at 862. See also Anonymous v. Anonymous, 283 Ala. 374, 217 So.2d 240 (1968)** (holding that testimony of female witness in action for divorce that she had "sexual relations" with husband but that such term as used by her did not encompass sexual intercourse was not sufficient to prove adultery on part of husband).

83

Furthermore, Mr. Mendives demanded to see all records alleging DUE PROCESS PROTECTIONS FOR VIRDICT OR ORDER; **Coffin v. United States, 156 U.S. 432 (1895),** was an appellate case before the United States Supreme Court in 1895 which established the presumption of innocence of persons accused of crimes. See- **United States v. Ward 448 U.S. 242 (1980)**

**28 U.S. Code § 1782** - Assistance to foreign and international tribunals and to litigants before such tribunals - demands ALL Ex-Parte Affidavit alleging domestic violence and ALL EVIDENCES to corroborate such allegations.

Also, Mr. Mendives demanded our Constitutional right as Americans to oppose secrecy. Thus, UNSEALED court records IMMEDIATELY? – See- **United States v. Bagley 473 U.S. 667 (1985).** The U.S. Supreme Court's decisions make clear that a judge considering closing a judicial proceeding must follow certain procedures to ensure that secrecy will not infringe upon the public's **First Amendment rights. Press Enterprise Co. v. Superior Court, 478 U.S. 1 (1986); Gannett v. DePasquale, 443 U.S. 368 (1979); United States v. Kaczynski, 154 F.3d 930 (9th Cir. 1998); Grove Fresh Distributors, Inc. v. Everfresh Juice Co., 24 F.3d 893 (7th Cir. 1994).**

Moreover, requested has informative value, or potential for contribution to public understanding. Please note the decision in **Elizabeth Eudey v. Central Intelligence Agency, 478 F. Supp. 1175 1176 (D.C.D. 1979)** (even a single document has the potential for contributing to public understanding).

The trial court has completely ignored proving the allegations of heinous crimes when no U.S. Court should leave a criminal free if they assumption is that Mr. Mendives is guilty of committing a crime. See- **Santosky v. Kramer, 455 U.S. 745, (1982).** Today we hold that the

84

Due Process Clause of the Fourteenth Amendment demands more than this. Unfounded allegations does not make anyone guilty, at least not here in the United States of America so why this court is relying on unfounded allegations. Before a State may sever completely and irrevocably the rights of parents in their natural child, due process require that the State support its allegations by at least clear and convincing evidence.

**Constitutional Arguments to consider herein-**

1. First, what evidences has Angela Mendives accusing Mr. Mendives of adultery and, does the text message present an established relationship? Does the right to privacy extend to telephone booths and other public places? Is a physical intrusion "trying a key code" is necessary to constitute a search? If Angela Mendives had permission to enter Mr. Mendives' cell phone then the key code would not to be tried as the owner of the phone giving the key code to another person the key code would definitely work – she does not have to "try" a key code. There was a key code on the cell phone due to Mr. Mendives' occupation at the time due to carrying company secrets as well as for protection all the information such as bank accounts, credit cards, family picture, emails, etc... information that could be stolen an used for fraud or whatever other situation.

Angela Mendives in her Sworn Affidavit stated that she stumbled into something and did not know it was the phone which was placed on the floor by the bed, and that she "tried" the key-code to the phone to entering the phone while Mr. Mendives was "sleeping." This is clearly a violation of the 4th and 14th Amendment under "freedom from unreasonable search and seizure and "reasonable expectation of privacy."

See- **Katz v. United States, 389 U.S. 347 (1967),** is a United States Supreme Court case discussing the nature of the "right to privacy" and the legal definition of a "search". The Court's

85

ruling refined previous interpretations of the unreasonable search and seizure clause of the Fourth Amendment to count immaterial intrusion with technology as a search, overruling Olmstead v. United States and Goldman v. United States. Katz also extended Fourth Amendment protection to all areas where a person has a "reasonable expectation of privacy".

Facts- Charles Katz used a public pay phone booth to transmit illegal gambling wagers from Los Angeles to Miami and Boston. Unbeknownst to Katz, the FBI was recording his conversations via an electronic eavesdropping device attached to the exterior of the phone booth. Katz was convicted based on these recordings. He challenged his conviction, arguing that the recordings were obtained in violation of his Fourth Amendment rights. The Court of Appeals sided with the FBI because there was no physical intrusion into the phone booth itself.

Ruling - "The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment." – Justice Stewart

Regardless of the location, a conversation is protected from unreasonable search and seizure under the Fourth Amendment if it is made with a "reasonable expectation of privacy". Wiretapping counts as a search (physical intrusion is not necessary).

## FOURTEENTH AMENDMENT

**Section 1. Rights Guaranteed** - All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

That all persons born in the United States and not subject to any foreign power, excluding Indians not taxed, are hereby declared to be citizens of the United States; and such citizens, of every race and color, without regard to any previous condition of slavery or involuntary servitude . . . shall have the same right[s]. . . ."

## CITIZENS OF THE UNITED STATES OF AMERICA

In the Dred Scott Case, Chief Justice Taney for the Court ruled that United States citizenship was enjoyed by two classes of individuals: (1) white persons born in the United States as descendents of "persons, who were at the time of the adoption of the Constitution recognized as citizens in the several States and [who] became also citizens of this new political body," the United States of America, and (2) those who, having been "born outside the dominions of the United States," had migrated thereto and been naturalized therein. The States were competent, he continued, to confer state citizenship upon anyone in their midst, but they could not make the recipient of such status a citizen of the United States. The "Negro," or "African race," according to the Chief Justice, was ineligible to attain United States citizenship, either from a State or by virtue of birth in the United States, even as a free man descended from a Negro residing as a free man in one of the States at the date of ratification of the Constitution. Congress, **first in § 1 of the Civil Rights Act of 1866 and then in the first sentence of § 1 of the Fourteenth Amendment,** set aside the Dred Scott holding in a sentence "**declaratory of existing rights, and affirmative of existing law. . . .**"

While clearly establishing a national rule on national citizenship and settling a controversy of long standing with regard to the derivation of national citizenship, the Fourteenth Amendment did not obliterate the distinction between national and state citizenship, but rather preserved it The Court has accorded the first sentence of § 1 a construction in accordance with the congressional intentions, holding that a child born in the United States of Chinese parents who

87

themselves were ineligible to be naturalized is nevertheless a citizen of the United States entitled to all the rights and privileges of citizenship. Congress' intent in including the qualifying phrase "and subject to the jurisdiction thereof," was apparently to exclude from the reach of the language children born of diplomatic representatives of a foreign state and children born of alien enemies in hostile occupation, both recognized exceptions to the common-law rule of acquired citizenship by birth, as well as children of members of Indian tribes subject to tribal laws. The lower courts have generally held that the citizenship of the parents determines the citizenship of children born on vessels in United States territorial waters or on the high seas.

In **Afroyim v. Rusk,** a divided Court extended the force of this first sentence beyond prior holdings, ruling that it withdrew from the Government of the United States the power to expatriate United States citizens against their will for any reason. "[T]he Amendment can most reasonably be read as defining a citizenship which a citizen keeps unless he voluntarily relinquishes it. Once acquired, this Fourteenth Amendment citizenship was not to be shifted, canceled, or diluted at the will of the Federal Government, the States, or any other government unit. It is true that the chief interest of the people in giving permanence and security to citizenship in the Fourteenth Amendment was the desire to protect Negroes.

. . . This undeniable purpose of the Fourteenth Amendment to make citizenship of Negroes permanent and secure would be frustrated by holding that the Government can rob a citizen of his citizenship without his consent by simply proceeding to act under an implied general power to regulate foreign affairs or some other power generally granted." In a subsequent decision, however, the Court held that persons who were statutorily naturalized by being born abroad of at least one American parent could not claim the protection of the first sentence of § 1 and that Congress could therefore impose a reasonable and non-arbitrary condition subsequent upon their continued retention of United States citizenship. Between these two decisions there is a tension

88

which should call forth further litigation efforts to explore the meaning of the citizenship sentence of the Fourteenth Amendment.

Citizens of the United States within the meaning of this Amendment **must be natural** and not artificial persons; a corporate body is not a citizen of the United States.

## PRIVILEGES AND IMMUNITIES

Unique among constitutional provisions, the privileges and immunities clause of the Fourteenth Amendment enjoys the distinction of having been rendered a "practical nullity" by a single decision of the Supreme Court issued within five years after its ratification.

In the Slaughter-House Cases, a bare majority of the Court frustrated the aims of the most aggressive sponsors of this clause, to whom was attributed an intention to centralize "in the hands of the Federal Government large powers hitherto exercised by the States" with a view to enabling business to develop unimpeded by state interference. This expansive alteration of the federal system was to have been achieved by converting the rights of the citizens of each State as of the date of the adoption of the Fourteenth Amendment into privileges and immunities of United States citizenship and thereafter perpetuating this newly defined status quo through judicial condemnation of any state law challenged as "abridging" any one of the latter privileges. To have fostered such intentions, the Court declared, would have been "to transfer the security and protection of all the civil rights . . . to the Federal Government, . . . to bring within the power of Congress the entire domain of civil rights heretofore belonging exclusively to the States," and to "constitute this court a perpetual censor upon all legislation of the States, on the civil rights of their own citizens, with authority to nullify such as it did not approve as consistent with those rights, as they existed at the time of the adoption of this amendment. . . . [The effect of] so great a departure from the structure and spirit of our institutions . . . is to fetter and degrade the State governments by subjecting them to the control of Congress, in the exercise of powers heretofore universally conceded to them of the most ordinary and fundamental character. . . . We are convinced that no such results were intended by the Congress . . . , nor by the legislatures . . .

which ratified'' this amendment, and that the sole "pervading purpose" of this and the other War Amendments was "the freedom of the slave race."

Conformably to these conclusions, the Court advised the New Orleans butchers that the Louisiana statute, conferring on a single corporation a monopoly of the business of slaughtering cattle, abrogated no rights possessed by them as United States citizens; insofar as that law interfered with their claimed privilege of pursuing the lawful calling of butchering animals, the privilege thus terminated was merely one of "those which belonged to the citizens of the States as such." Privileges and immunities of state citizenship had been "left to the state governments for security and protection" and had not been placed by this clause "under the special care of the Federal Government." The only privileges which the Fourteenth Amendment protected against state encroachment were declared to be those "which owe their existence to the Federal Government, its National character, its Constitution, or its laws."

These privileges, however, had been available to United States citizens and protected from state interference by operation of federal supremacy even prior to the adoption of the Fourteenth Amendment.

The Slaughter-House Cases, therefore, reduced the privileges and immunities clause to a superfluous reiteration of a prohibition already operative against the states. Although the Court has expressed a reluctance to attempt a definitive enumeration of those privileges and immunities of United States citizens which are protected against state encroachment, it nevertheless felt obliged in the Slaughter-House Cases "to suggest some which owe their existence to the Federal Government, its National character, its Constitution, or its laws." Among those which it then identified were the right of access to the seat of Government and to the seaports, sub-treasuries, land officers, and courts of justice in the several States, the right to demand protection of the Federal Government on the high seas or abroad, the right of assembly, the privilege of habeas

90

corpus, the right to use the navigable waters of the United States, and rights secured by treaty. In Twining v. New Jersey, the Court recognized "among the rights and privileges" of national citizenship the right to pass freely from State to State, the right to petition Congress for a redress of grievances, the right to vote for national officers, the right to enter public lands, the right to be protected against violence while in the lawful custody of a United States marshal, and the right to inform the United States authorities of violation of its laws. Earlier, in a decision not mentioned in Twining, the Court had also acknowledged that the carrying on of interstate commerce is "a right which every citizen of the United States is entitled to exercise.

## FALSE STATEMENTS AND DUE PROCESS OF LAW

The Development of Substantive Due Process - Although many years after ratification the Court ventured the not very informative observation that the Fourteenth Amendment "operates to extend . . . the same protection against arbitrary state legislation, affecting life, liberty and property, as is offered by the **Fifth Amendment,**" and that "ordinarily if an act of Congress is valid under the **Fifth Amendment** it would be hard to say that a state law in like terms was void under the Fourteenth," the significance of the due process clause as a restraint on state action appears to have been grossly underestimated by litigants no less than by the Court in the years immediately following its adoption. From the outset of our constitutional history due process of law as it occurs in the **Fifth Amendment** had been recognized as a restraint upon government, but, with the conspicuous exception of the Dred Scott decision, only in the narrower sense that a legislature must provide "due process for the enforcement of law.' Thus, in the Slaughter-House Cases, in which the clause was invoked by a group of butchers challenging the validity of a Louisiana statute which conferred upon one corporation the exclusive privilege of butchering cattle in New Orleans, the Court declared that the prohibition against a deprivation of property "has been in the Constitution since the adoption of the Fifth Amendment, as a restraint upon the Federal power. It is also to be found in some forms of expression in the constitution of nearly all the States, as a restraint upon the power of the States. . . . We are not without judicial

interpretation, therefore, both State and National, of the meaning of this clause. And it is sufficient to say that under no construction of that provision that we have ever seen, or any that we deem admissible, can the restraint imposed by the State of Louisiana upon the exercise of their trade by the butchers of New Orleans be held to be a deprivation of property within the meaning of that provision.'' Four years later, in Munn v. Illinois, the Court again refused to interpret the due process clause as invalidating state legislation regulating the rates charged for the transportation and warehousing of grain. Rejecting contentions that such legislation effected an unconstitutional deprivation of property by preventing the owner from earning a reasonable compensation for its use and by transferring to the public an interest in a private enterprise, Chief Justice Waite emphasized that ''the great office of statutes is to remedy defects in the common law as they are developed.

. . . We know that this power [of rate regulation] may be abused; but that is no argument against its existence. For protection against abuses by legislatures the people must resort to the polls, not to the courts.'

Deploring such attempts, nullified consistently in the preceding cases, to convert the due process clause into a substantive restraint on the powers of the States, **Justice Miller in Davidson v. New Orleans,** obliquely counseled against a departure from the conventional application of the clause, albeit he acknowledged the difficulty of arriving at a precise, all-inclusive definition thereof. ''It is not a little remarkable,'' he observed, ''that while this provision has been in the Constitution of the United States, as a restraint upon the authority of the Federal government, for nearly a century, and while, during all that time, the manner in which the powers of that government have been exercised has been watched with jealousy, and subjected to the most rigid criticism in all its branches, this special limitation upon its powers has rarely been invoked in the judicial forum or the more enlarged theatre of public discussion. But while it has been part of the Constitution, as a restraint upon the power of the States, only a very few years, the docket of this

92

court is crowded with cases in which we are asked to hold that state courts and state legislatures have deprived their own citizens of life, liberty, or property without due process of law.

There is here abundant evidence that there exists some strange misconception of the scope of this provision as found in the Fourteenth Amendment. In fact, it would seem, from the character of many of the cases before us, and the arguments made in them, that the clause under consideration is looked upon as a means of bringing to the test of the decision of this court the abstract opinions of every unsuccessful litigant in a State court of the justice of the decision against him, and of the merits of the legislation on which such a decision may be founded. If, therefore, it were possible to define what it is for a State to deprive a person of life, liberty, or property without due process of law, in terms which would cover every exercise of power thus forbidden to the State, and exclude those which are not, no more useful construction could be furnished by this or any other court to any part of the fundamental of law.

Since the inception of this case, Angela Mendives and her attorneys have provided inflammatory statement s with NO evidences of the crimes allegations brought to the court. In her Sworn Affidavit – of January 20th, 2015 - She stated that our 9yrs old (G.L.M.) came home scared telling her that "he was afraid and was so happy to see her."

This is a false statement used by Angela Mendives brought to the court intentionally to influence court by making allegations of domestic violence. The night Mr. Mendives took his four sons for a car ride G.L.M he was sleeping during the ride by probably 90% of the time. See- Video Mendives Boys 3 oldest to find the truth. **18 U.S.C. § 1623** criminalizes making false declarations before the court or grand jury.

93

These allegations produced a restraining order to remove Mr. Mendives out of his homestead which is separate property as stated on **Cause Number 2006-CI-10679 – Final Decree of Divorce on November 15th, 2007.**

**Perjury** - charges in federal court involves (a) testimony made under oath, (b) that was false, (c) material to the proceeding, and (d) was made deliberately with knowledge that the information was false. 18 U.S.C. § 1621; 9th Cir. Model Crim. Jury Inst. No. 8.135 (2010).

The U.S. Supreme Court stated, "a witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." **United States v. Dunnigan, 507 U.S. 87, 94 (1993).** Persons who "procure another to commit perjury" are guilty of subornation of perjury. 18 U.S.C.§ 1622; 9th Cir. Model Crim. Jury Inst. No. 8.135 (2010). The same elements of perjury need to be proven beyond a reasonable doubt, in addition to proving that the defendant voluntarily and intentionally persuaded the witness to commit perjury and that the defendant acted with the intent that the witness would deceive the court or grand jury. Id. Corroboration is needed if the subornation charge stems from a § 1621 perjury, whereas no corroboration is needed for conduct stemming from false declarations before a grand jury or court (18 U.S.C. § 1623). Id. Section 2J1.3 of the U.S. Sentencing Guidelines ("U.S.S.G.") applies to perjury and subornation of perjury. U.S.S.G. § 3C1.1 enhances a federal sentence for "Obstructing or Impeding the Administration of Justice" in conjunction with other charged offenses.

**Office of Disciplinary Counsel v. Pierce, 732 A.2d 599 (Pa. 1999)** – Filing of false accusations against two district justices and district attorney; Respondent's allegations were either **knowingly**

**false or made without an objective reasonable belief that they were true; suspension for five years.**

The American Bar Association Rules of Professional Conduct ("Model Rules") and the state rules of professional conduct address the minimum standards lawyers must follow in order to avoid ethical problems. Lack of professionalism may reflect poorly on the image of lawyers, but often such conduct will not rise to an ethical rule violation. Courts are concerned about the **"lack of civility"** seen in the practice of law and several jurisdictions have enacted "civility rules." Yet, typically, a lawyer will not be disciplined for a lack of professionalism or civility. When the lawyer's behavior crosses the line and involves lack of candor to the trial court, disrupts trial proceedings or disrespects the rights of third persons, then a lawyer will be sanctioned, including perhaps losing her law license by the appropriate disciplining agency. Other negative consequences can also occur.

The U.S. Supreme Court defined it, in **Kungys v. United States**, as a statement that "has a natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed."(Internal quotation marks omitted). In United States Constitutional Law, false statements of fact are an exception from protection of free speech under the First Amendment. In United States law, a false statement of fact will not be exempt from some civil or criminal penalty, if a law has imposed one. It generally is recognized and well settled that perjury may be punishable as a contempt of court. See generally, 12 Am.Jur., Contempt, Section 17. In the divorce case of **Crute v. Crute, 86 Ga. App. 96, 97, 70 S.E.2d 727, 728 (1952),** the appellate court upheld the trial court's finding that the husband was in contempt of court for **"testifying falsely" and for "deliberately attempting to mislead the court and conceal from the court evidence in the case."** The appellate court correctly noted that "a witness who seeks to conceal the truth or to give evasive answers or to falsify or mislead the court is not acting respectfully to the court and his conduct is reprehensible," thus subjecting

the witness to the court's inherent power to punish for contempt. Id. Similarly, our Nevada Supreme Court has recognized that "the power of courts to punish for contempt and to maintain decency and dignity in their proceedings is inherent, and is as old as courts are old." See- **Lamb v. Lamb, 83 Nev. 425, 428, 433 P.2d 265 (1967).**


**Evidence and Presumptions**— the establishment of presumptions and rules respecting the burden of proof is clearly within the domain of the legislative branch of government. Nonetheless, the due process clause does impose limitations upon the power to provide for the deprivation of liberty or property by a standard of proof too lax to make reasonable assurance of accurate fact-finding. **Texas Constitution, Section 19. Due Course of Law.** - No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of law of the land; **Texas Constitution, Section 29. "Bill of Rights" Inviolate.** - To guard against transgressions of the high powers being delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provision shall be void.


The U.S. Constitution Seventh Amendment – clearly states that - "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, then according to the rules of the common law. Thus, ''the function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact-finding, is to 'instruct the fact-finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' '' Applying the formula it has worked out for determining what process is due in a particular situation, the Court has held that in a civil proceeding to commit an individual involuntarily to a state mental hospital

96

for an indefinite period, a standard at least as stringent as clear and convincing evidence is required. Because the interest of parents in retaining custody of their children is fundamental, the State may not terminate parental rights through reliance on a standard of preponderance of the evidence—the proof necessary to award money damages in an ordinary civil action—but must prove by clear and convincing evidence that the parents are unfit.

Unfitness of a parent may not simply be presumed because of some purported assumption about general characteristics, but must be established. – See- **Mathews v. Eldridge, 424 U.S. 319 (1976); Also See - Addington v. Texas, 441 U.S. 418 (1979). See - Santosky v. Kramer, 455 U.S. 745 (1982).** Four Justices dissented, arguing that considered as a whole the statutory scheme comported with due process. Id. at 770 (Justices Rehnquist, White, O'Connor, and Chief Justice Burger). Application of the traditional preponderance of the evidence standard is permissible in paternity actions. **Rivera v. Minnich, 483 U.S. 574 (1987). Stanley v. Illinois, 405 U.S. 645 (1972) (presumption that unwed fathers are unfit parents).**

As long as a presumption is not unreasonable and is not conclusive of the rights of the person against whom raised, however, it does not violate the due process clause. Legislative fiat may not take the place of fact, though, in the determination of issues involving life, liberty, or property, and a statute creating a presumption which is entirely arbitrary and which operates to deny a fair opportunity to repel it or to present facts pertinent to one's defense is void. On the other hand, if there is a rational connection between what is proved and what is inferred, legislation declaring that the proof of one fact or group of facts shall constitute prima facie evidence of a main or ultimate fact will be sustained. See- **Stanley v. Illinois,** the Court found invalid a construction of the state statute that presumed illegitimate fathers to be unfit parents and that prevented them from objecting to state ward-ship. Presumptions were voided in **Bailey v. Alabama, 219 U.S. 219 (1911)** anyone breaching personal services contract guilty of fraud.

**Nature of Allegations** – an un-adjudicated parent is entitled to a trial on his fitness before any custodial and dispositional orders affecting Mr. Mendives may be entered because this is the only trial standard under the juvenile code. Although jurisdiction may still be established through the adjudication of one parent, the petition allegations against the other, non-adjudicated parent must meet statutory jurisdictional muster. Consequently, not just any allegations against the second parent will do. There is no difference between the statutory adjudication standard for the second respondent parent and that for the first respondent parent. There is only one adjudication standard. The state must allege in its petition that each parent, for whom it seeks a dispositional order, has been abusive or neglectful, within the meanings, before the family court could enter a dispositional order that would control or affect his conduct.

The U.S Constitution makes it crystal clear that crimes allegations of domestic violence must be proven, an individual can NOT just come to court and accuse a person of heinous crimes or crimes of child abuse and neglect and not have any evidence presented t the court.

**"Only Facts"** which constitute offenses against the children at issue are legally cognizable. Angela Mendives allegations and there under must with evidence contain … the essential facts that constitute an offense against the family or child under the juvenile code." Under the juvenile code an "offense against a child" is defined as "an act or omission by a parent… asserted as grounds for bringing the child within the jurisdiction of the court pursuant to the juvenile code. "Child protective proceeding" means a proceeding concerning an offense against a child.

**Evidence Supporting Allegations -** what evidence against a second respondent parent can be used against that parent in his/her adjudication under the Texas Family Code because a trial is the hearing that mandates to determine an un-adjudicated parent's fitness prior to entry of dispositional orders requiring his/ her compliance, only legally admissible evidence is allowed.

No doubt the trial case is responsible for the fraud procedures and failing the U.S. Constitutional protections for Mr. Mendives and his four children. The attorneys in this case has been a accomplice of obstruction of justice filing unnecessary against an un-adjudicated Mr. Mendives to get them under the authority of the court.

However, the un-adjudicated parent may have been ordered to comply with services. Compliance with these services may have resulted in no proof as well as negative and false information given by Angela Mendives to the trial court about Mr. Mendives that they otherwise may not have discovered without the unlawful imposition of a dispositional order upon the un-adjudicated parent.

**Prosecutorial Misconduct** —when a conviction, judgment, orders is obtained by the presentation of testimony known to the prosecuting authorities to have been perjured due process is violated. The clause ''cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the **pretense of a trial** which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and/or jury by the presentation of testimony known to be perjured. Such a contrivance . . . is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.'' The quoted language was dictum in the case in which it was uttered, but the principle enunciated has been utilized to require state officials to controvert allegations of convicted persons that knowingly false testimony had been used to convict, and to upset convictions found to have been so procured. Extending the principle, the Court in Miller v. Pate upset a conviction obtained after the prosecution had represented to the jury that a pair of men's shorts found near the scene of a sex attack belonged to the defendant and that they were stained with blood; the defendant showed in a habeas corpus proceeding that no evidence connected him with the shorts and furthermore that the shorts were not in fact bloodstained, and that the prosecution had known these facts.

Furthermore, in **Brady v. Maryland,** the Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In that case, the prosecution had suppressed an extrajudicial confession of defendant's accomplice that he had actually committed the murder; the accomplice's confession could have influenced the jury's determination of punishment but not its judgment of guilt. But this beginning toward the development of criminal discovery was not carried forward, and the Court has waivered in its application of Brady.

**Proof, Burden of Proof, and Presumptions.**—The due process clauses of the Fifth and Fourteenth Amendments "protect the accused against conviction "except" upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

"The reasonable doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. See- **United States v. Argus**- where the court summarized and somewhat expanded the prosecutor's obligation to disclose to the defense exculpatory evidence in his possession, "even in the absence of a request", or upon a general request, by defendant. The obligation is expressed in a tripartite test of materiality of the exculpatory evidence in the context of the trial record.

**Fifth Amendment** -No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment (1) of a Grand Jury (1), (2) [Not selectively incorporated: **Hurtado v. California, 110 U.S. 516 (1884) (1); Albright v. Oliver, 510 U.S. 266 (1994)]**, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy (1) [Selectively incorporated: **Benton v. Maryland, 395 U.S.**

**784 (1969) (1)]** of life or limb; nor shall be compelled in any criminal case to be a witness against himself (1) [Selectively incorporated: **Malloy v. Hogan, 378 U.S. 1 (1964) (1)]**, nor be deprived of life, liberty, or property, without due process of law [ See **Hamdan v. Rumsfeld, 126 S. Ct. 2749 (2006)** (1)- curbing President Bush's effort to violate due process by using illegal military commissions to try non-citizens for acts of terrorism] (1); nor shall private property be taken for public use, **without just compensation.** – Mr. Mendives has been removed from his separate Homestead property since January 20th of 2015. The unproven and evidence-less crimes allegations of Angela Mendives were used for abused of process to remove Mr. Mendives from his homestead.

The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' '' In many past cases, this standard was assumed to be the required one, but because it was so widely accepted only recently has the Court had the opportunity to pronounce it guaranteed by due process. The presumption of innocence is valuable in assuring defendants a fair trial, and it operates to ensure that the jury considers the case solely on the evidence See- **In re Winship, 397 U.S. 358, 364 (1970).** Id. at 363 (quoting **Coffin v. United States, 156 U.S. 432, 453 (1895)). Justice Harlan's Winship concurrence, id. at 368,** proceeded on the basis that inasmuch as there is likelihood of error in any system of reconstructing past events, the error of convicting the innocent should be reduced to the greatest extent possible through the use of the reasonable doubt standard.

## DECLARATORY JUDGMENT, RELIEF AND DISCLOSURES

101

Mr. Mendives sui juris, invoke all mine and my four (4) children constitutional protections, invoke the jurisdiction of the This court under the following Amendments - 1st, 2nd, 4th, 5th, 6th, 7th, 8th, 9th, 13th, 14th (Due Process).

DEMANDS A DECLARATORY JUDGEMENT, IMMEDIATE RELIEF AND DISCLOSURES; DEMANDS A PARENTAL ADUJUCATION HEARING UNDER A COMPELLING INTEREST; DEMAND THE COURT APPEAL TO HOLD THE STATE OF TEXAS COURT ACCOUNTABLE to ANSWER UNITED STATES CONSTITUTIONAL QUESTIONS IN THIS CASE BEFORE US; and I, Roberto Carlos Mendives Sr., sui juris will appeal FOR ALL AND ANY obstruction of Justice". PRAY FOR RELIEF, and CONSTITUTIONAL REDRESS OF GRIEVANCES and DUE PROCESS OF LAW.

## THE PARTIES

1) I, Roberto Carlos Mendives Sr. Sui Juris, A innocent man, is now and at all times relevant to this Complaint a resident of San Antonio, County of Bexar, and State of Texas. Roberto Carlos Mendives Sui Juris is the father of four (4) minors children subject to the continuing jurisdiction of the 224tth Judicial District Court of Bexar County, State of Texas as a result of a Suit Affecting the Parent-Child Relationship (SAPCR herein) incident to a divorce action, Tex. Fam. Code Title 5.

2) All seven (8) judges in their official capacity, The Honorable Judges in this case, are now and at all times relevant to this Complaint the presiding judge over the 224th Judicial District Court of Bexar County in the State of Texas. Listed as followed-

1. JUDGE: JOHN D. GABRIEL, JR., 131st Civil District Court, Bexar County Courthouse, 100 Dolorosa, 4th Floor, San Antonio, TX 78205

2. JUDGE: RENEE A YANTA, 150th Civil District Court, Bexar County Courthouse, 100 Dolorosa, 2nd Floor, Room 2.23, San Antonio, TX 78205

102

3. JUDGE: KAREN H. POZZA, 407th Civil District Court, Bexar County Courthouse, 100 Dolorosa, 4th Floor, San Antonio, TX 78205

4. JUDGE: GLORIA SALDANA, 438th Civil District Court, Bexar County Courthouse, 100 Dolorosa, 4th Floor, San Antonio, TX 78205

5. JUDGE: KAREN CROUCH, County Court 10 (Basement), Bexar County Courthouse, 100 Dolorosa, Basement, Suite B. 29 San Antonio, TX 78205

6. JUDGE DICK ALCALA, Address as stated on –

http://www.mediate.com/AlcalaMediations/101 Wild Stallion, San Antonio, Texas 782121

7. JUDGE LARRY NOLL, 408th Civil District Court, Bexar County Courthouse, 100 Dolorosa, 3rd Floor, San Antonio, TX 78205

8. JUDGE PETER SAKAI, 100 Dolorosa # 210, San Antonio, TX 78205

## VENUE

1) These complaints are brought to this court because Roberto Carlos Mendives Sr., sui juris' rights in the state court are uncertain as reflected in the state statutes. Therefore it has become necessary as a supplemental remedy to bring this complaint to this Court "to vindicate Federal Constitutional rights because, according to Congress in 1871, state courts could not protect Fourteenth Amendment rights because of their "prejudice, passion, neglect, [and] intolerance." (See section 1983 Litigation, Federal Judicial Center 2 (1998).

2) Roberto Carlos Mendives brings this request to this Court as opposed to a state court because of: (1) unconstitutional state laws"; (2) to seek "a remedy where state law was inadequate"; and (3) to seek "a federal remedy where the state remedy, though adequate in theory, was not available in practice."; and (4) The Texas Family Code invests unconstitutional authority in state judicial actors and asking those state judicial actors themselves to give up power they have so freely exercised for such a long time is contrary to reason, See **Neder v. United States, 527 US 1, 1198.Ct. 1827, 144 L. Ed. 2d 32 (Supreme Court 1999), (...they (we)**

103

are officers of the Government, and hence proper objects of that healthy suspicion of the power of government which possessed the Framers and is embodied in the Constitution.) This case is directed at state statutes and state judicial actors who have exchanged their impartiality for government action but freely take on the executive role of child advocate and are tasked to make all their decisions in favor of the government opinion.

It is also necessary to bring these issues before this court because fundamental rights openly acknowledged by the U.S. Supreme Court are being systematically denied by the trial court ((Affecting the parent child relationship reference to SAPCR)) judge John D. Gabriel and Karen Crouch. These judges needs to be asked what constitutional standards is to be applied when the state agency attempts to interfered with a parent's rights to direct the upbringing of his or her children.

      3) The Standard of review as "compelling state interest" and narrow tailoring. Is based on Fundamental Rights, which comprised those expressed and implied protection of personal liberty recognized in, both, the Federal and The State Constitutions. As written, it would apply to state agencies but judges are not within classification under Texas Law. Just as Mr. Mendives asserts that:

3.1) Fundamental Rights are personal and individual rights; not attached to the marriage.

3.2) The 14th Amendment limit States actions against parents'

3.3) The 1st Amendment rights apply in the parent-child decision making context; and

3.4) Parental decision rights regarding child rearing are privacy rights.

      The Compelling state interest and narrow tailoring to all limitation on fundamental rights not just any deprivation or termination. Either parent should not assert, legislation that attempts to infringe on these rights unless narrowly express on valid state interest. The trial court was bias in applying temporary orders failing to apply their own standards attesting the claim that Angela

104

Mendives bear the burden of proof in challenging the state action against parental rights. The trial court asserted no legitimate State interest compelling or otherwise.

4) This shifting of burden in this case is a clear violation of procedural due process on a wholesale scale. As a parent I have no clue how to proof false statements and the violation of due process other than having the trial court become accountable for asking for evidence from Angela Mendives and her attorneys whom longer than one year has not being able to produce any evidence of domestic violence. Also, these attorneys are inadequate to the task or afraid of judicial retribution. For whatever reason, it seems every judge and attorney in the trial court perpetuate the idea that if Angela Mendives brings allegations of domestic violence with no evidence then Mr. Mendives must proof himself innocent (question that was asked to Judge Karen Crouch), and that is a false idea where if someone brings accusations without evidence to the court and then the accused must proof himself innocent.  The additional harm to Mr. Mendives and his children from this error alone is immeasurable.  For as the Supreme Court said in **Troxel v. Grainville, 530 US 75 (Supreme Court 2000)** ' The burden of litigating a domestic relations proceeding can be itself so disruptive for the parent-child relationship that the Constitutional rights of a custodial parent to make certain basic determination for the child's welfare become implicated" When this burden is compounded by the State shifting the proof to parents, parents and children suffer impermissibly.

5)  The Compelling State interest standard requires that the state "show" a legitimate interest that is necessary. The narrow tailoring standard requires that the state "show" its statutes to be precisely drawn. This shifting of the burden of proof to the state is well-established. See, **Mccutcheon v. Federal Election Com'n, 134 S.Ct.1452 (Supreme Court 2014),** ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."), See also **Burson v. Freeman, 504 US 217, 228 (Supreme Court 1992),** **(...Tennessee unquestionably bears the heavy burden...Tennessee must shoulder the burden**

of demonstrating that its restrictions on political speech are no broader than necessary...),
**San Antonio Independent School Dist. v. Rodriguez, 411US 116, 17 (Supreme Court 1973),**
**(strict scrutiny means that the State's system is not entitled to the usual presumption of**
**validity)**

6) An interesting twist in Texas law is that the definition of state agencies explicitly excludes judicial actors. The judiciary has rejected these standards in the SAPCR context; indicating by their actions that federal constitutional boundaries do not apply to them in SAPCR. This nullifies that that state agencies must bring all family law issues before family law courts. This is precisely why Mr. Mendives and many other parents in the same situations are forced to go to such pains to cover all details that are clearly already well-settled and ask this court to directly and specifically declare to all in this case that the federal constitution applies in this case in SAPCR in any the specific ways requested.

7) Mr. Mendives have further desire for declaratory specificity and injunctive relief in if judges are bound to protect and preserve the U.S. Constitutional Rights as well as the Texas Constitutional Rights then why they violate the Texas Family. Code § 15 3.009(d) stating. The trial Court judges can for no reason override a statute if it prevented him from doing his job? Or is it that judges only do this to afford themselves the ability to abuse their power rather than apply the protective constitutional balancing tests to protect all parties and their children from inflammatory court reactions and fundamental errors. The statute that Judges John D. Gabriel and Karen Crouch violated in this case read as follows: "In a jury trial, the court ..........a party is entitled to a jury verdict."

All judges in this case have been told by Mr. Mendives in his motions that this case pertain to fundamental rights and liberty interest. Mr. Mendives were told very clearly in a manner that prohibits legal challenge that Mr. Mendives was being punished for protected 1st

106

**Amendment** activity. This is why Mr. Mendives believes that without an injunction Angela Mendives and her attorney will continue to violate the Constitution irrespective of this Court's orders causing irreparable loss to Mr. Mendives fundamental rights and liberty interest with his four sons.

It is incongruent why of the many judges in this court the only judge that can hear this case is Judge Crouch, whom had no idea if there is any evidence of domestic violence or not, what has happened in this case. Judge Crouch stumbled into this case for the first time on November 06th of 2015 and completely ignored procedure and all the protections of the U.S. Constitution.

8) The utter contempt with which the appellate courts in Texas treat the federal constitution and the rights of fit parents when a parent's rights conflict with another parent is wonderfully summed up by the **State's 14th District Appellate Court, quoting In re C.A.M.M., 243 SW 3d 211, 216, 217 (Tex. App. -Houston 2002),** ("On one hand, 'the interest of parents in the care, custody, and control of their children' has been described as 'perhaps the oldest of the fundamental liberty interests' recognized by the United States Supreme Court... On the other hand, it is the public policy of this State to resolve conservatorship disputes in a manner that provides a safe, stable, and nonviolent environment for the child.") In balancing the fundamental constitutional rights of parents to their children the Court in C.A.M.M. says "[a]ny right of the parent must yield to that primary consideration [of the child's best interest]" As to the fundamental rights of parents over the state's opinion of a child's best interest, the court says, "In any dispute as to the custody of a child, the prime considerations are the welfare and best interests of the child and although the legal and natural claim of the parents to custody should never be disregarded as an influential factor ... such right must yield where the child's welfare requires that its custody be given to others. To this State Court our fundamental constitutional rights are merely, **"an**

107

**influential factor**." When Texas Appellate Court Judges sworn to uphold and defend the United States Constitution speak of their constitutional duty they say "It is not the Court's task to choose between competing policies addressed by legislative drafting." and 'We recognize that the ramifications of the modification statutes can be far-reaching and troubling, but any changes to the statutory scheme must come from the Legislature." Here, where the Court recognizes the constitutional issues, it declared that it is powerless to apply federal constitutional protections over a state statute.

9)      If there were any doubt before, Obergefell has slammed the door shut on this idea that the Legislature can violate the Constitution and that judges are powerless to prevent it, see, **Obergefell v. Hodges (Supreme Court 2015)** (Of course, the Constitution contemplates that democracy is the appropriate course for change, **so long as that process does not abridge fundamental rights.)** For example, we have shown that judges are only acting in a manner to abuse their power in the family courts. When Judge Bailey failed to follow the statute that prohibited him from speaking with the children subject to jury trial, he violated a statute that protected Plaintiffs and their children properly. And when Judge John D. Gabriel and Judge Karen Crouch follows the best interest statutes and all of the other statutes that completely ignore that each parent and child are a fundamentally protected individual family unit with individually protected parent-child relationships, they are abusing their power and acting outside of their prescribed authority that is limited by the Constitution of the United States.

10)      Justice Frost, (concurring), in **In re C.A.M.M. supra at 224**, explains the effect of the Texas Family Code, "Under the Texas Family Code, a trial court is authorized to deprive a fit parent of the exclusive right to parent his own child and instead place fundamental parental rights in the hands of non-parents, to the exclusion of the fit parent. Though the result the court reaches today is correct under existing law, this case raises serious questions about the fundamental rights of fit parents to make decisions concerning the care, custody, and

108

control of their own children." He goes on to say, "our lawmakers have chosen to deprive fit parents of the parental presumption, effectively placing them on par with non-parents in a contest over conservatorship of the parents' children." We are bringing this complaint to the federal court because this same problem applies when the courts are resolving complaints between two natural parents. Every SAPCR case raises serious questions about the fundamental rights of both fit parents to be treated equally concerning the care, custody, and control of their own children without interference or infringement beyond was is least restrictive and within the proper boundaries of the Constitution.

11) In Texas, where state courts blatantly reject their oath to uphold the federal constitution notwithstanding any state statutes to the contrary and the Legislature is intent on treating one class of parents as if they have no federal rights at all, Plaintiffs have no recourse but to seek constitutional protection from the federal courts.

## II INTRODUCTION

1) Mr. Mendives, as mentioned before comes Sui Juris, I am not an attorney but the U.S. Constitution is written in simple language for all Americans; I ask that this court please keep an open mind while reading through this brief, most of our argument is well supported by cases and authorities while a couple of issues we argue are novel arguments. Although lengthy, this is timely and necessary for justice to prevail and necessary for the exercise of Mr. Mendives and his four sons fundamental rights.

Although the specific questions are many, the entire issue can be summed up in one simple argument. Who decides what is in the Mendives children's best interests? Will it be us the fit parents or will it be a judge who thinks it is the government's right to decide for us, both, fit parents? All other questions are simply details regarding how the result of this question is to be implemented.

109

2)	These complaints are brought primarily against Texas Family Code Title 5 Subtitle B SUITS AFFECTING THE PARENT CHILD-RELATIONSHIP, (suits affecting the parent child relationship referenced herein as SAPCR), particularly those sections addressing conflict of rights between fit parents, primarily chapters 153 and 154. Other statutes are referenced or challenged where they implicate SAPCR. State initiated action to terminate parental rights is also within this subtitle under chapter 161.However; the State remains relatively constitutionally compliant when acting within this chapter.

3)	This case seeks to serve two distinct purposes. The first seven complaints seek to remove uncertainty and clarify basic constitutional principles and rights applicable to individual parent-child relationships in family law proceedings. The last three complaints seek to show the public policy of Texas and certain statutes in the Texas Family Code to be unconstitutional.

4)	For a very long time Texas and the other 49 States have defended their unconstitutional power to destroy families with obfuscation, misdirection and outright lies. This has worked very well as a means of protecting their power. However, **the basis of parental and family rights** has shifted gradually over the years creating serious constitutional implications that have not been reflected in family law codes or State judicial practices. Mr. Mendives seeks in these complaints to systematically clarify key issues and demonstrate the appropriate due process and equal protection standards that must be applied in the trial court and SAPCR context. This clarification will remove the uncertainty about what rights Mr. Mendives' and his four children have in the trial court and SAPCR context. It will protect Mr. Mendives' children from uncertainty and being further involved in unnecessary litigation. It will protect ALL parties from unnecessary, expensive, stressful, time consuming burdens, and allow the parties to simplify and resolve issues without being forced into lengthy litigation. It protects parents and children from being exposed to the stress-related disorders and social problems

110

caused from intense prolonged attacks on core fundamental rights that every American citizen has been raised to believe are protected by their government. This clarification will make it more difficult for the State to improperly deprive Mr. Mendives and their children of fundamental rights, will make it easier for Mendives to receive a constitutionally fair hearing or any requested modifications, will resolve the need to litigate over issues that the court did not have authority to address, will lessen the financial burden on all parties including the State by prohibiting unnecessary and burdensome discovery and investigations, will reduce high-conflict litigation and eliminate the burden placed on children and will reduce the involvement of children in the litigation. This action could strengthen marriages by eliminating divorce enticements, could possibly eliminate the need for many State judges, and will reduce the constitutionally significant errors and deprivations that have been destroying Mr. Mendives 'family as well and non-traditional families that have become common practice in SAPCR. This action would prevent court-induced parental alienation, would prevent causing more broken parents and broken children. Many parents subject to this abusive litigation develop disabilities due to emotional illnesses related to the intensity and duration of the litigation. Many children are caused permanent damage many of whom act out in many destructive ways that harm not only themselves and their family but also society. A declaration on these issues by this court can prevent this damage and destruction. A declaration on these issues will remove the uncertainty and fear for Mr. Mendives and will eliminate litigation for inflammatory purposes and allow Mr. Mendives to seek redress for proper legal issues.

5) All constitutional rights addressed within this brief are argued as limitations on the State imposed through the Fourteenth Amendment's Due Process and Equal Protection Clauses.

6)The Texas Family Code does two specific things that Plaintiffs assert are unconstitutional 1) it authorizes a State judge to ignore that fundamental rights exist for each parent individually

free from the other parent and free from the marital relationship, and it authorizes a State judge to infringe fundamental rights of parents and their children based on nothing more than that judge's opinion, 2) it authorizes a judge to seize future :financial earnings of one parent and order one parent to pay child- support to the other parent or a third party at anytime for any reason thereby imposing criminal liability upon that parent if they do not or cannot follow the child-support order.

7) This relief is sought on behalf of Mr. Mendives' four minor children and all parents and all minor children in Texas.

8) The State of Texas once a proud and independent nation, chose of its own free will and accord to adopt the federal constitution and join the union as a state of that union giving up a degree of sovereignty in that bargain. Unhappy with the political process set out in that constitution, the State of Texas entered into open armed rebellion against the union and lost. Following that loss, it fought bitterly against the principles in our federal constitution by persecuting people it once enslaved. The result was several amendments to that constitution. One of those amendments is our **Fourteenth Amendment which declares very clearly that states may no longer violate the federal rights of the people of these United States.** Today the trial court continues to deny Mr. Mendives the fact that the Fourteenth Amendment prohibits it from infringing the federal rights of Mr. Mendives and his children and other similarly situated parents and their children when the other parent is in disagreement with them and files a temporary order even-worse files a SAPCR. Mr. Mendives and his four sons are citizens of these United States and claim protection of the federal constitution over the actions of the State of Texas which proceed as if the Fourteenth Amendment were never ratified. Mr. Mendives ask this Court to consider the degree of insolence and disrespect the State of Texas and Angela Mendives display to the federal constitution and the people of the United States when this Court crafts its response to these complaints. Texas has made very clear that nothing

less than direct, precise, and commanding language will dissuade it from utterly disregarding its commitments under our federal constitution.

9) The Texas 8th District Appellate Court demonstrates exactly why this Court must be precise and direct if it wants its opinion to be followed in Texas, see Bates v. Tesar, 81 SW 3d 411, 436 (Tex: 8th Dist. 2002), (We are cautious to note that in each of these cases, the issue was far removed from a dispute between the parents of a child. Glucksberg presented a challenge to Washington's assisted suicide law. Flores determined that procedures implemented by the Immigration & Naturalization Service did not deprive juvenile aliens of procedural due process. Meyer involved the criminal prosecution of a teacher who taught a student in German rather than in English. Pierce addressed Oregon's compulsory education law requiring children to attend public school through the eighth grade. Prince considered a challenge by a Jehovah's Witness to Massachusetts' child labor laws. Santosky established the parameters of a termination of the parental-child relationship by a state agency. And Troxel, of course, involved a suit for grandparent access.) These cases set out clear constitutional principles that Texas courts simply do not want to recognize or apply. Therefore, they apply torturous legal reasoning and logic to reach the predetermined outcome they desire, which is absolutely no limitation on State power in SAPCR.

10) This trial Court operated on numerous presumptions based on customs and laws that have been invalidated by the Supreme Court: 1) The presumption that parental rights spring from the marriage allowing the state to invade the private family realm when parents divorce is no longer valid. 2) The presumption that fit parents and their children can be discriminated against because of the marital status of the child's parents is no longer valid. 3) The presumption that the existence of a general parental duty to care for a child grants the state authority to order one parent to pay a specific sum without proving the parent has failed to care for their child directly is actually contrary to Supreme Court opinion. 4) The

113

presumption that family law is immune to **constitutional scrutiny** by the federal judiciary has been invalidated. 5) The presumption that when the rights of parents are in conflict that they lose all rights subject to this trial court's opinion has never been validated by any federal precedent and directly contradicts an overwhelming body of precedent showing that the trial court MUST protect rights and attempt to balance rights when they are in conflict. 6) The presumption that "the best interest of the child" doctrine authorizes the state to violate the fundamental rights of parent and/or child is directly invalidated by multiple Supreme Court opinions.

11)     Mr. Mendives will show that federal constitutional protections apply to fit parents and their children regardless of the marital status of the child's parents and that the State bears the **burden of proof under strict scrutiny constitutional review before it may infringe these rights by the trial court, and even in SAPCR.** Mr. Mendives will further show that "the best interest of the child" doctrine fails to provide the state with even a legitimate state interest much less a compelling interest in the face of an objecting fit parent. Mr. Mendives will show that the Texas Family Code and the Public Policy of Texas are facially unconstitutional, unconstitutional as generally applied as they violate constitutional principles, **and fail to provide adequate due process or equal protection of the law.** Mr. Mendives will show that the Texas Family Code and the Public Policy of Texas is overbroad and that it quells significant areas of protected speech. In doing so it deprives children of the depth and quality of education, and the necessary contact with each parent for their healthy development that they have a right to receive from both fit parents. Mr. Mendives will show that the Texas Family Code and the Public Policy of Texas actually fail to meet their stated goals and actually produce an opposite effect that of alienating children from the lives and protection of parents and the child's extended family members.

12)     The questions in this suit are very simple although deeply clouded by profound personal and institutionalized bias and prejudice against parents who choose family structures disfavored

114

by the state and by prevailing religious attitudes of society. The arguments in these claims are all intimately bound up with one another and build upon one another. Arguments, although organized by each individual complaint, are intended to apply and cross reference to all other complaints as appropriate. If Angela Mendives object, Mr. Mendives seek leave to file a longer brief that fully articulates all arguments to their complete extent and to repeat arguments in each complaint as necessary.

## III. ARGUMENT

**COMPLIANT I:**

1) Even though the Supreme Court, the 5th Circuit, and the 10th Circuit have clearly said that family law codes are subject to review by the federal judiciary where the supremacy of the federal constitution or federal laws are in question, the State continues to resist the idea that it is restricted by the 14th Amendment in SAPCR and has been getting away with avoiding this by claiming that family law is a state issue only. The State resisted, in this case, by attempting to preclude Plaintiffs from presenting their case in this federal court by claiming sovereign immunity. Complaint I simply seeks a definitive statement that the 14th Amendment restricts what the State may do in SAPCR. It seeks a clear statement reiterating the words of the 5th Circuit that it is unreasonable for any state judge to believe otherwise. It also seeks a clear statement that this concept is well-established. Parents need to know that they can be certain that their rights and their children's rights will be protected when parents are in conflict with the other parent. Children need to know that they will continue to have two equal parents after

115

their parents separate or if their parents never marry. Children need to know that they will continue to be protected by each of their parents and that their parents will continue to be empowered by the federal constitution with authority to protect their own children from unreasonable intrusions into their private lives by the State. Complaint I asks 4 simple questions:

CI-1:   Is the power of the State of Texas to regulate marriage and family relationships in the   context of SAPCR limited by the commands of the Fourteenth Amendment?

CI-2:   Do Plaintiffs specifically and litigants generally in a SAPCR have the right to assert federal   constitutional protections for themselves and their children in Texas District Courts   specifically in SAPCR proceedings?

CI-3:   Are CI-1 and CI-2 sufficiently well-established to support federal suit under 42 U.S.C. 1983  and/or 42 U.S.C. 1985?

CI-4:   Is it reasonable for any Texas State Court Judge to believe otherwise?

**FEDERAL CONSTITUTION APPLIES TO FAMILY LAW:**

2) It is sufficiently well established that the constitution applies to the Texas Family Code and civil cases generally, see Loving v. Virginia, 388 US 1, 7 (Supreme Court 1967), (the State does not contend in its argument before this Court that its powers to regulate marriage are unlimited notwithstanding the commands of the Fourteenth Amendment. Nor could it do so ...), Gates v. Texas Dept. of Protective & Reg

116

<u>Services</u>, 537 F. 3d 421 (5th Circuit 2008), (the Texas Family Code's requirement ... is not a license to ignore the Fourth Amendment, and it is **unreasonable** for the defendants **to think otherwise**...)(*emphasis by Plaintiffs*). See <u>Delaware v. Prouse</u>, 440 US 662 (Supreme Court 1979), (..."if the government intrudes . . . the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards.") <u>*Troxel*</u> *supra* is both a civil case and a family law case to which the Supreme Court applied constitutional protections finding best interest overreach to be unconstitutionally overbroad. If there were any measure of doubt left, <u>Obergefell</u>, supra has made it absolutely certain that the Legislature may not violate the constitution even in family law, "Of course, the Constitution contemplates that democracy is the appropriate course for change, so long as that process does not abridge fundamental rights."

**RIGHTS ARE WELL-ESTABLISHED AND CONCOMITANT:**

117

3) Plaintiffs assert that parents and children have certain fundamental rights that are sufficiently well established to be remedial under 42 U.S.C. § 1983 against state actors, even those with limited immunity, see Bowen v. Gilliard, 483 US 614 (Supreme Court 1987), (...a fundamental interest, of course, in sustaining a relationship with their father, whose absence from the household does not diminish the protection that must be afforded this parent-child relationship.), Wooley v. City of Baton Rouge, 211 F. 3d 923 925 (5th Circuit 2000), (a child's right to family integrity is concomitant to that of a parent...we define...with reference to his mother's rights... That the Constitution protects family relationships and a parent's right... is well-established.), Egle v. Egle, 715 F. 2d 1019 (5th Circuit 1983), (As indicated, a valid reason (the preservation of the children's right to maintain relationships with their father and his right to maintain parental relationships with them) existed for this change.), Lee v. City of Los Angeles, 250 F. 3d 685 (9th Circuit 2001), (It is well established that a parent has a "fundamental liberty interest" in "the companionship and society of his or her child" and that "[t]he

118

state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. § ]1983."), <u>Wise</u> supra at 1338, <u>Morris v. Dearborne</u>, 181 F. 3d 671 (5th Circuit 1999), (The constitutional right to family integrity was well established in 1992).

Among these well-established rights are a 1st Amendment right to family association, a 4th Amendment possessory interest in the fundamental right to possession of a minor child, a 4th Amendment right to be free from unreasonable searches, a 14th Amendment liberty interest in the care, custody, and control of a minor child, and a penumbral privacy right protecting the family unit consisting of a single parent and their child from unwarranted government interference in their private lives. All but the liberty interest have well-established jurisprudence establishing the precise contours of enhanced scrutiny that must be applied in each context. Justice Thomas, writing in concurrence, in <u>Troxel</u>, supra at 80, says that he would apply strict scrutiny to the liberty interests.

4) It is therefore well-established that Plaintiff's have a right to sue under 42

119

USC 1983 and is well stated in <u>Monroe v. Pape</u>, 365 US 167, 180 (Supreme Court 1961)

(It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.) Plaintiffs need to have certainty that these rights will be recognized and protected properly so that they can request modifications of narrow and specific items without loss of fundamental rights and irreversible damage to our families.

JUDGES AFFIRMATIVE DUTY:

5)      State court judges have an affirmative duty to ensure procedural safeguards sufficient to protect these fundamental interests at strict scrutiny irrespective of any state law to the contrary (specifically Texas Family Code § 153.002 & Texas Family Code § 153.072); see <u>U.S. Const.</u> Art. VI, <u>ex parte Young</u>, 209 US 176, 177

120

petitioners had state authority to deprive persons of liberty, the Constitution imposed on them the State's concomitant duty to see that no deprivation occurs without adequate procedural protections.)

6) The State of Texas asserts otherwise, See, <u>Leonard v. Lane</u>, 821 SW 2d 277 (Tex. App. –Houston 1991), (The court has the right to act in the best interest of the child, notwithstanding any agreements of the parties.) See also, <u>In re CCJ</u>, 244 SW 3d 919 (Tex. App. –Dallas, 5th Dist. 2008), (The trial court retains broad discretion in crafting the rights and duties of each conservator so as to effectuate the best interest of the child.) See also, <u>Hill v. Hill</u>, 819 SW 2d 572 (Tex. App.–Dallas, 5th Dist. 1991), (... the courts must be able to order an effective increase in the payments without regard to any "contracts" between the parties... they cannot agree to prohibit the intervention of the courts required by the Family Code...) See also <u>Moreno v. Perez</u>, 363 SW 3d 739 (Tex App. –Houston 2011), ("[A] severe restriction or limitation, even one that amounts to a

121

denial of access, is permissible if it is in the best interest of the child."). See also <u>London</u>

<u>v. London</u>, 94, SW 3d 150 (Tex. App. –Houston 2002), (There is no limitation on the

manner in which the court may assign those rights.)

## PROTECTION FROM STATE ACTION:

7)      The state asserts from the ruling in <u>Troxel</u>, supra, that the 14th

Amendment protects parents in SAPCR against infringement of fundamental rights by

the state when grandparents initiate that action, but they are not protected when other

parties or another fit parent initiate the state action. This is a fundamentally flawed

analysis of the 14th Amendment for that amendment does not protect people from the

actions of grandparents but from the actions of States such as Texas. It is, in fact, the

Texas Family Code and the actions of State Court Judges pursuant to that Code which

the 14th Amendment protects parents from. The 5th Circuit says that it is "unreasonable"

for judges to think otherwise, see <u>Gates</u>, supra at 421. That the States are specifically

122

limited by the 14th Amendment was well established before the time of Casey, supra at

849, (It is settled now, as it was when the Court heard arguments in Roe v. Wade, that

the Constitution places limits on a State's right to interfere with a person's most basic

decisions about family and parenthood.)

## REQUIREMENT OF STATE COURTS TO HEAR CONSTITUTIONAL QUESTIONS

8)      It is well established that state courts are authorized to hear federal

constitutional questions. In fact, United States Supreme Court appellate jurisdiction

over state cases is dependent upon the federal constitutional questions being asserted in

state courts. See 28 U.S. Code § 1257 - State courts; certiorari, New York ex rel. Bryant v.

Zimmerman, 278 U.S. 63, 67 (1928); See also Bankers Life & Casualty Co. v. Crenshaw,

486 U.S. 71, 77 (1988); Webb v. Webb, 451 U.S. 493, 501 (1981). The same rule applies

on habeas corpus petitions. E.g., Picard v. Connor, 404 U.S. 270 (1972). If Texas District

Courts deny parties the right to raise federal constitutional questions they would be

123

further depriving the parties of federal constitutional rights.

9) Article VI of the United States Constitution contains the phrase, "and the judges in every state shall be bound thereby, anything in the Constitution or laws of any Sate to the contrary notwithstanding." This clause comes just before the paragraph setting a requirement that all State judges take an oath to support the federal constitution. Plaintiffs are certain that many Texas state judges will disagree, but this clause requires all state judges to abide by the federal constitution and to place the federal constitution above any state law that is contrary to it. Paraphrasing Chief Justice John Marshall's words in Marbury v. Madison, 5 US 137, 179 (Supreme Court 1803), it would be a crime to require a State judge to take such an oath and then to deny him/her the means of adhering to it. Any State court judge sworn to office under Article VI must be allowed to assert constitutional supremacy over any state statute and concomitantly, any litigant before a State court judge must be allowed to assert that constitution's

124

protection before their judge. While a state court judge may choose to disagree with Justice Marshall and not perform his/her duty to override a void state statute, that judge is not free to deny any litigant his/her procedural due process right to assert constitutional protections and to preserve those protections for appeal.

## COMPLAINT I DECLARATION:

10) At this point the case is very clear for establishing the following declaration:

> In light of <u>Marbury v. Madison</u>, 5 US 137, 179 (Supreme Court 1803), <u>Loving v. Virginia</u>, 388 US 1, 7 (Supreme Court 1967), <u>Troxel v. Granville</u>, 530 US 57, (Supreme Court 2000), <u>Obergegell v. Hodges</u>, (Supreme Court 2015), <u>Wise v. Bravo</u>, 666 F. 2d 1328 (10th Circuit 1981), and <u>Gates v. Texas Dept. of Protective & Reg. Services</u>, 537 F. 3d 404 (5th Circuit 2008) it is well-established that the power of the State of Texas to regulate marriage and family relationships in the context of SAPCR is limited by the commands of the Fourteenth Amendment; that litigants in a SAPCR have the right to assert federal constitutional protections for themselves and their children in Texas District Courts specifically in SAPCR proceedings; and that it us unreasonable for any state judge to believe othewise.

## COMPLAINT II:

1) Family law has grown from an Ecclesiastical and Common Law tradition in England and its core principles were established during a time where, even in

125

America, many laws were directly based on religious traditions. During this time, up until the early 1970's, rights of parents to their children and children to their parents were based on the marital status of the child's parents. Bastard children often had no rights to their fathers and their fathers had no rights to them. The Supreme Court, in a series of cases, found such infringement of fundamental relationship rights to be offensive to our constitution. In another line of cases, the Supreme Court has consistently protected the rights of parent and child in non-traditional family units, including single parent and child family units. The protected family unit is more than just the nuclear family as the State would have us believe. The equal protection concept that family relationship rights may not be infringed based on marital status, if not well-established by those cases, was certainly well-established by Obergefell. The Texas Family Code has no less than three statutes with the phrase "no discrimination based on marital status" emblazoned in their titles. The application of this principle in SAPCR

falls incredibly short of the constitutional mark though. The Texas Family Code is predicated on the precept that the only family protected by the federal constitution is the State's preferred nuclear family and when the marriage between parents dissolves or was never established that family rights of parent and child can be removed at the whim of a State Judge.

2) Plaintiffs' seek to clearly establish that their rights as parents are individual rights initiating with the biological connection between parent and child and receiving full constitutional recognition and protection upon the establishment of the parent-child relationship. These rights have no relation to the marital status of the parents nor to any changes to the marital status of the parents. The State may not invade these rights without adhering to all constitutional protections afforded these rights, irrespective of the marital status of the parents or of changes in the parent's marital status. The State may not create the class of "conservator" to categorize fit

parents in a manner that provides them lesser constitutional protections than married

fit parents. Complaint II asks five simple questions:

CII-1:  Are parental rights individual fundamental rights that attach to each parent individually notwithstanding the material status of the children's parents?

CII-2:  Does the Equal Protection Clause provide that Plaintiffs as fit parents may not be deprived of parental rights based on their marital status or on changes in their marital status?

CII-3:  Must classifications that serve to infringe the fundamental rights of a class of person survive strict scrutiny review?

CII-4:  Are CII-1, CII-2, and CII-3 sufficiently well-established to support federal suit under 42 U.S.C. 1983 and/or 42 U.S.C. 1985?

CII-5:  Is it reasonable for any Texas State Court Judge to believe otherwise?

## RIGHTS ARE INDIVIDUAL:

3) The Supreme Court is crystal clear that the rights in questions are in fact the right of the individuals, See Casey supra 851(emphasis provided)

> *Our law affords constitutional protection to **personal decisions** relating to marriage, procreation, contraception, **family relationships**, **child rearing**, and education... Our cases recognize "the right of the **individual, married or single**, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." ... Our precedents "have respected the private realm of family life which the state cannot enter." ... These matters, involving the most intimate and personal choices **a person** may make in a lifetime, choices central to **personal dignity** and **autonomy**, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define **one's own** concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of **personhood** were they formed under compulsion of the State...*

128

*This conclusion rests upon the basic nature of marriage and the nature of our Constitution:* **"[T]he marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup.** *If the right of privacy means anything, it is the* **right of the individual, married or single,** *to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child...* **The Constitution protects individuals,** *men and women alike, from unjustified state interference,* **even when that interference is enacted into law for the benefit of their spouses.**

## RIGHTS NOT BASED ON MARRIAGE:

4)      For much of our history, parental rights were based upon a marriage between a child's parents. Both the parents and the children were routinely treated as second class citizens without relationship rights to one another for most of that history. In the late 1960's and early 1970's the United States Supreme Court, through a series of cases often referred to as the bastardy cases, declared such classifications to be invidious, see Parham v. Hughes, 441 US 347, 352 (Supreme Court 1979), (...it is unjust and ineffective for society to express its condemnation ... by punishing the illegitimate child who is in no way responsible for his situation and is unable to change it.), See also, **New Jersey Welfare Rights Organization v. Cahill, 411 US 619 (Supreme Court 1973) Weber v Aetna Casualty & Surety Co., 406 US 164 (Supreme Curt 1972), Richardson v. Davis, 409 US 1069 (Supreme Court 1972), Levy v. Lousiana. 391 US 68 (Supreme Court 1968).** The sum of these cases is that the State may not discriminate based on marital status

129

and may not punish the child for acts of the parents, e.g. divorce. This is reflected in the Titles of several Tex. Fam. Code statutes "NO DISCRIMINATION BASED ON MARITAL STATUS" but the content of the Family Code is still designed to discriminate against single and divorced parents and their children by putting them through studies and investigations, and requiring each parent to prove that he/she is the better parent, and then choosing which parent the court perceives to be the better or best parent between the two.

5) In SAPCR the State deprives children of fundamental liberties without proper due process or equal protection based on the perceived sins of the child's parents. The simple act of divorcing one's spouse (a private choice regarding marriage) condemns the child and the other parent to State deprivation in SAPCR (Texas Family Code § 6.406) wherein the default statutory action is to deprive the child of equal rights to both parents and to override the best interest determinations of both fit parents, striping the child of parental protection from unwarranted government interference in their personal lives from both parents. Discrimination based on non-traditional or non- preferred family structures is invidious, see Lehr v. Robertson, 463 US 248, 256 (Supreme Court 1983), (The intangible fibers that connect parent and child have infinite variety. They are woven throughout the fabric of our society, providing it with strength, beauty, and flexibility. It is self-evident that they are sufficiently vital to merit constitutional protection in appropriate cases. ...When **an unwed father** demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," ...his interest in personal contact with his child acquires

130

**substantial protection under the Due Process Clause...** We have held that these statutes may not constitutionally be applied in that class of cases where the mother and father are in fact similarly situated with regard to their relationship with the child.)(Emphasis by Plaintiffs) See also, **Gomez v. Perez, 409 US 535, 538 (Supreme Court 1973),** (We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child **simply because its natural father has not married its mother.**)(Emphasis by Plaintiffs) See also, Stanley v. Illinois, 405 US 645, 651(Supreme Court 1972), (Nor has the law refused to recognize those **family relationships un-legitimized by a marriage ceremony... children cannot be denied the right of other children.**

...It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children comes to this court with a momentum for respect...It follows that denying such a hearing to Stanley and those like him while granting it to other Illinois parents is inescapably contrary to the Equal Protection Clause.) (Emphasis by Plaintiffs) See also, Eisenstaedt v. Baird, 405 US 438, 453 (Supreme Court 1972), (... whatever the rights of the individual ...maybe, the rights must be the same **for the unmarried and the married alike...** If the right of privacy means anything, it is the **right of the individual, married or single,** to be free from unwarranted governmental intrusions.) .)(Emphasis by Plaintiffs) See also, Meyer v. Nebraska, 262 US 390, 399 (Supreme Court 1923), **(Without doubt,** it denotes not merely freedom from bodily restraint, but also the right of the **individual...** to marry, establish a home and bring up children ...and generally to enjoy those privileges long recognized at

common law as essential to the orderly pursuit of happiness by free men...) Mr. Mendives was never given an Adjudication hearing or a hearing regarding to be free from unwarranted governmental intrusions. Any challenge to the court regarding the court's authority to issue child support, rights of each individual Mr. Mendives and his children.

6)      The effect of this historic invidious classification of single and divorced parents, permeates the Texas Family Law Code and can be seen in the invidious presumptions it makes in favor of state action against divorcing or single parents. It is now unconstitutional to create two unequal classes of parent or two unequal classes of child based solely on the marital status of the child's parents. The Texas Family Code reflects this in some of its titles (Texas Family Code § 153.003) but denies it completely in the practical effect of its detailed statutes. Every statute that seems to respect the rights of individuals has some caveat somewhere in the details to the effect that the judge can overrule that right if in his/her sole "opinion" it is "in the best interest of the child."


7)      Some statutes such as **Tex. Fam. Code § 153.003** have the words "NO DISCRIMINATION BASED ON SEX OR MARITAL STATUS "in their title but then go on to authorize the loss of fundamental rights to one parent or the other, who are only in SAPCR because of their marital status. Some statutes such as § 160.202 have "NO DISCRIMINATION BASED ON MARITAL STATUS" in their title but then go on to assert its application in a manner that specifically excludes children of divorce from its protection.

6) Our judicial understanding of the constitutional protections for families is evolving as are the limitations the Court imposes on the state's ability to regulate the

132

family, see Casey supra at 897, (Only one generation has passed since this Court observed that 0woman is still regarded as the center of home and family life,11 with attendant "special responsibilities "that precluded full and independent legal status under the Constitution...These views, of course, are no longer consistent with our understanding of the family, the individual, or the Constitution.) See also Obergefell, supra invalidating discrimination against gay marriage by states. Likewise, the Texas Family Code is based on views that are no longer consistent with our understanding of the family, the individual, or the Constitution.

## SCRUTINY UNDER EQUAL PROTECTION:

7) When a State statute such as Texas Family Code § 153.005 creates a classification such as "conservator" and a statute such as § 153.072 authorizes the state to impinge upon a fundamental liberty based on that classification those statutes are subject to strict scrutiny, see Qutb v. Strauss, 11 F. 3d 488, 492 (5th Circuit 1993), (Under the Equal Protection analysis ... If a classification ...impinges upon a "fundamental right," the ordinance is subject to strict scrutiny ...Under the strict scrutiny standard, we accord the classification no presumption of constitutionality... Instead, we ask whether the classification promotes a compelling governmental interest and, if so, whether the ordinance is narrowly tailored such that there are no less Substantive due process.

## ELEMENTS OF STRICT SCRUTINY:

8) Even a casual reading of State appellate opinions regarding child custody

133

and best interest will show that the State often if not in every single instance, either ignores the standard of constitutional review completely or stops with a mere best interest finding. No consideration is given to narrow tailoring or to least restrictive means.

8) It is helpful to numerically list the key elements of strict scrutiny to articulate exactly what is required of state appellate courts: 1) the burden of proof shifts to the State, 2) the State must show that it has a legitimate interest in intervening, 3) that interest must be shown to be compelling which means it must be shown to be necessary, 4) the authorizing statutes must be shown to be narrowly tailored to effect no more rights than are necessary, and 5) the actions the courts take must be shown to be the least restrictive means of achieving the legitimate State interest. Plaintiffs assert that the State cannot muster even a showing of a legitimate compelling state interest in SAPCR in the face of an objecting fit parent much less demonstrate that § 153.002 and § 153.072 are narrowly drawn to effect only those rights that are necessary to achieve a legitimate state interest. Finally, even if the State met those bars, it has never ever seriously attempted to prove that equal parenting and equal protection of parental rights would not achieve the state's purported interests. Without having attempted other less restrictive means the State simply may not award unequal custody or possession time. See McCullen v. Coakley, 134 S. Ct. 2518, 2539 (Supreme Court 2014), (In short,

134

the Commonwealth has not shown that it seriously undertook to address the problem with less intrusive tools readily available to it. Nor has it shown that it considered different methods that other jurisdictions have found effective.)

## BEST INTEREST NOT COMPELLING:

9)     Many State courts assert that the best interest of a child is a compelling state interest. However, a core component of a compelling interest that often gets lost is that there must be a necessity for state action. This was made clear in the Korematsu argument which gave rise to the very concept of compelling interest. Where there exists a constitutional presumption that parents act in their child's best interest, that children are not mere creatures of the state, and that parents are the primary caretakers of their own children, the State "lacks even a legitimate governmental interest" (Troxel at 80) in invading those private decisions without some further showing. What this means is that even though a state may care deeply about a child's "best interests", that caring alone is insufficient cause to invade the private family realm. The State has a burden to show more than its mere opinion. State policy alone is insufficient to overcome fundamental rights.

10)     States often assert that because parents may disagree on some particular issue that the State has authority to make all best interest decisions and deny any rights

135

it chooses. This is akin to the State saying that because two land owners have a property dispute the land now becomes property of the State and the State can do as it likes with the property. Like an impetuous child, the state asserts that because it may do one minor thing, it must be allowed to do everything it desires. However, this argument ignores the necessary component of Compelling Interest. State action is legitimate only if it is shown to be "necessary." The trigger for State action cannot be the mere filing of a SAPCR petition; it must be the showing on the record of a **compelling state interest that justifies State action in the first instance. Absent such a showing the State is nothing more than a powerful bully forcing its will on those it has power over.**

11) If parents are in conflict over which school a child should attend, it is necessary to resolve that conflict. The child can only physically go to one school. It is not necessary, however, to sweep away all other parental decisions and rights for the State to resolve a singular issue. This narrow necessity creates a narrow legitimacy for State action not carte blanche.

12) Conflicts often occur over how much time a child will spend with each parent and the nature of that time. States make assumptions that children's time can't be divided equally between parents. However, assumptions are not sufficient under least restrictive means. The State carries the burden of proving that the least restrictive means of equal possession time would not achieve the States interest. Mr. Mendives seeks a possession schedule with his children that is exactly equal. The child spends every other day and every other weekend with his father or mother. The children has always been safe and well protected. Our children have always excelled in school and are actively

136

involved in sports and all with dreams of playing college sports like their father. As a former high school teacher, I experienced complaints from the children, as children often will, about the schedules even living in separate households or in the same home, but it has had no ill effects on these children's physical or mental health nor has it had any negative effects on their success in life.

On the contrary, life is not perfect and for the most part children would excels because it is both parents equally and knows both of parents love them and support them. Ronald has proven that equal parenting works and has been proving it since 2007. State has indeed tried equal parenting in this case and has proven it to be a resounding success.

13) The Supreme Court in **Reno, supra at 304 and 305** explains very clearly and in significant detail why acting in a child's best interest simply isn't necessary nor is it a constitutional imperative. Without that necessity, the State lacks any compelling interest. In SAPCR the State lacks both a legitimate interest and a necessity for action For taking over all best interest determinations. The State's only legitimate interest in SAPCR is in protecting the rights of those parents who enter SAPCR with natural or previously established parental rights; in balancing those rights against the desire for state action; and in resolving only those narrow conflicts where the State shows a necessity to act.

14) Plaintiffs assert that the best interest of our respective children is in having their fundamental constitutional rights to love, live with, and benefit directly from each fit parent equally protected from unwarranted, biased, and unconstitutional intrusion

137

by the State. Plaintiffs also assert that since the only basis the State has to support any intrusion in Plaintiffs' private lives is the SAPCR that was compelled upon Plaintiffs as a result of their divorces (change in marital status); the State lacks even a legitimate interest in asserting any authority over Plaintiffs' children's fundamental rights. Our children simply cannot be punished for the sins of their parents nor can they be punished for the decisions their parents make regarding marriage to their other parent or to anyone else Plaintiffs choose. See Reno, supra at 304, "the child's fundamental rights must not be impaired". This means that the child should not lose either fit parent or lose equal time with either fit parent.

15) In light of Monroe, supra at 180 it is well established that the State is unlikely to respect the Fourteenth Amendment unless parents are able to protect these rights in a federal forum.

## COMPLAINT VI DECLARATION:

16) At this point the case is very clear for establishing the following declaration:

**In light of Troxel v. Granville, 530 US 57 (Supreme Court 2000), Planned Parenthood of Southerneastern Pa. v. Casey, 505 US. 833 (Supreme Court 1992), and several First Amendment Free Association cases it is well established that the Fourteenth Amendment prohibits state court judges form making best interest determinations for a child in the face of objections by either fit parent even in SAPCR as a privacy right except where the state has shown a compelling state interest and a necessity to act, where statutes that authorize action are narrowly tailored, and where the actions taken is the least restrictive means possible achieve the state legitimate purpose.**

138

COMPLAINT VII:

1) The State of Texas in most cases denies parents any opportunity to have a pre-deprivation hearing where the parent can object to the State's authority to infringe their fundamental rights and the fundamental rights of their child. State Judges routinely use their "unlimited" "best interest" power to block such hearings and such objections often admonishing attorneys behind closed doors that they will not entertain constitutional challenges to their authority. The State's authority to deprive a parent and/or child of any and all rights is presumptive in § 153.002 and § 153.072 and due process is kept to an absolute minimum, well below constitutional standards, in SAPCR. Claims and allegations are treated like unwritten charges and are entertained against parents that are proffered for the first time in open court. These charges are used as justification to deprive parent and child of fundamental rights and parents are not reasonably permitted to object to these ambush charges nor are they protected from them. This complaint asks 6 simple questions:

CVII-1: Does Procedural Due Process under the Fourteenth Amendment demand a pre-deprivation hearing where a parent can object to state authority to act before the

139

state may deprive, infringe, limit, or burden that parent's fundamental rights or the fundamental rights of the child in SAPCR?

CVII-2: Does Procedural Due Process under the Fourteenth Amendment demand that parents be served with a written list of questions and time to respond before a court entertains charges against a parent that may be used to infringe fundamental rights?

CVII-3: Where parental rights may be in conflict Does Procedural Due Process under the Fourteenth Amendment demand that the parents be afforded a hearing where all private interests involved must be weighed against the asserted necessity for state action?

CVII-4: Where the State performs a balancing test where fundamental rights of parent and child are at stake, Does Procedural Due Process under the Fourteenth Amendment demand that the State carry the burden of proof for its proposed action?

CVII-5: Is the right to be served with charges and to be provided time to respond well-established?

CVII-6: Is the right to a constitutional balancing test before the State may issue orders concerning fundamental rights in conflict well-established?

## RIGHT TO EVIDENTIARY HEARING

2) The Family Code provides that parents receive service of a SAPCR action but does not allow a hearing on the merits of state action or an opportunity for parents to object to state action. SAPCR actions are almost exclusively against parents choosing or subjected to the choosing by the other parent of non-traditional family structures and is written in a way that targets that classification of parent almost exclusively. The Texas

140

Family Code provides only for "broad best interest inquires" and dispositional hearings that presume state authority without any necessity of showing constitutionally permissible justifications for state action.

3)      At the time our constitution was founded, children were considered a special class of property and parental property rights to their children and the work product of their children were well-established. While, over time, our basis for understanding of parental rights has shifted, the minimum standard of constitutional protection provided at the time the constitution was ratified cannot be undone without specific opinion of the Supreme Court. Where even temporary deprivations of property demand pre-deprivation hearings, any deprivation of the parent's fundamental interests in their own child, "a right more precious than property", also demands a pre-deprivation hearing and all requisite property right protections at a minimum.

4)      The State makes certain presumptions to justify its actions but where the burden of proof falls on the State, the State must prove its presumptions. If the State believes that there can be only one primary parent, then the State must prove its assertion. If the State believes that unequal custody or possession time is necessary, it just prove its assertion. If the State believes that one parent has a duty to pay the other parent child-support, it must prove that assertion. If the State seeks to impose other duties or limitations on either parent, it must prove the necessity to do so. Not only must it prove this but it must prove that it has tried less drastic means to achieve the State's interests and that those means have failed. All of this requires a hearing.

141

5)     If the 4th Amendment applies in a SAPCR then the State must provide a pre-deprivation hearing before taking the wages of a parent. In that hearing, the State must prove that the taking it proposes is reasonable. The State may not presume reasonableness but must establish it on a fact specific basis in every case. Further, if the right and duty to care for one's own child is a personal right and duty attaching to the individual, the parent has a right to argue in a proper hearing that the State must prove that he/she has failed to support their child to a minimum standard equally applicable to all parents before the State can claim a legitimate interest in taking a parent's wages. It is impossible for the State to meet any of its burden of proof without holding a hearing where a parent can rebut, through presentation of evidence and cross examination, the state's claims.

6)     The Supreme Court has been abundantly clear on these issues, see Mathews v. Eldridge, 424 US 319, 333 (Supreme Court 1976), (The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society."), Cleveland Bd. of Ed. v. Loudermill, 470 US 532, 536 (Supreme Court 1985), (The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.)

7)     Mr. Mendives has suffered stigmas and hardships equivalent to and even worse than a criminal conviction. Mr. Mendives has been has been alienated from her children on multiple occasions for constitutionally significant periods of time while the courts agreed on "Notice to Reset" Adjudication Hearings and continued on malicious ex-parte hearings causing the deprivations of possession time with my four sons. This time lost with my four sons has been

142

forever lost, and damaged due to being separated. My four sons suffered tremendous damage to the parent-child relationships and the relationships have been forever changed with no way to get time back, missed birthdays, missed milestones, and missed daily interactions in the children's' lives. This also effected the children's stability and security, trust, and respect with the children regarding Mr. Mendives. I have been in the lives of my sons since day ONE. If the trial court would have follow the protections of our U.S. Constitution, then the trial court would not have had this kind of significant impact in the relationship of the children, and the injuries suffered by the parents of loss of income, and emotional trauma, if the courts had protected all of the parents' and all of the children's fundamental rights. Far from protecting our children, the State through the judges in this case, actively directly and indirectly through their bailiffs and other third parties damaged our children leaving them forever changed about the lack of knowledge and authority that Mr. Mendives had at the inception of this case. The trial court has left my children wondering where is their father. My four sons are changed by the indiscipline of the trial court. My children are forever scared. These State judges do this while hiding behind absolute immunity from the consequences of their horrific actions.

What right does a state judge have in calling fit parents' names in open court simply because that parent is fighting desperately to protect their rights and the rights of her children? Something is desperately wrong with a system that forces parents to battle over custody and possession of their children because their rights are not protected. Something is

143

desperately wrong with state judges who place moral judgment on parents who fight for their rights. We do not have moral or religious courts in America outside of family court. We have constitutional courts of law and equity. State judges have no business passing moral judgments on fit parents who have done nothing illegal or even remotely harmful to their children especially when those judges are knowingly and willfully violating federal constitutional rights. It is this unconstitutional system and those who perpetuate it that is morally irreprehensible and that needs to be forever abolished. It is the unconstitutional "morality" court established to punish divorce and childrearing outside of marriage and titled SAPCR that must be forever abolished.

## RIGHT TO A BALANCING TEST:

9)      What is commonly referred to as the Eldridge Test is a test that state courts must provide on a fact specific individualized basis. At least one Texas appellate court case has commented that the Legislature has conducted such a test and that the court has no business countering that decision but that is insufficient. This is a consciously flawed view of federal court precedent in this area demanding fact specific individualized balancing. The test must be individualized and fact specific. It is the judge's specific constitutional duty to provide this level of procedural due process individualized for every parent and child in his/her court. The 5th Circuit says in Wooley, supra at 924, that "Jordan undeniably is entitled to stay with his mother without governmental interference..." and "The right to family integrity must be balanced

144

against the state's interest in protecting the health, safety, and welfare of children." Note that the federal appellate court did NOT say "best interest."

10) This balancing can only be done through an evidentiary hearing where the parties are afforded an opportunity to present evidence against the state's interests and to assert that in the face of a constitutional parental presumption and the requirement of strict scrutiny, the state bears the burden of proving that the state's interest is both legitimate and necessary before it may act. Absent such a hearing on the record, the state lacks a legitimate interest and legitimate authority to act. No balancing test performed by the Legislature can provide the opportunity for parents to present individualized evidence and cross examination which due process demands.

11)     Where charges are made that a parent has failed in some required duty or is unfit and that parent's action or inaction will result in the loss of fundamental rights, the proceeding is a punishment proceeding invoking quasi-criminal protections, see Cummings v. Missouri, 71 US 277 322 (Supreme Court 1867), (Any deprivation or suspension of any of these rights for past conduct is punishment, and can be in no otherwise defined.) In such a proceeding, due process demands that the complaints against a parent be consolidated to writing and served upon the parent and the parent must be given time to respond. To the extent that the outcome of a proceeding will classify an individual in a manner that makes them subject to criminal punishment such as failure to pay child-support ordered, that proceeding takes on quasi-criminal

implications.

**COMPLAINT VII DECLARATION:**

12) At this point the case is very clear for establishing the following declaration:

*In light of Cummings v. Missouri, 71 US 277 322 (Supreme Court 1867), ex parte Young, 209 US 176, 177 (Supreme Court 1908), Cleveland Bd. of Ed. v. Loudermill, 470 US 532, 536 (Supreme Court 1985), Zinermon v. Burch, 494 US 135 (Supreme Court 1990), Troxel v. Granville, 530 US 57 (Supreme Court 2000), it is well-established that the Fourteenth Amendment prohibits state court judges from limiting the fundamental rights of parents or child, even in SAPCR, without providing an evidentiary hearing where the parent has been properly served with written charges or where a parent can assert their legal and constitutional rights and their child's legal and constitutional rights in a hearing designed to balance all private interests involved against the asserted need for state action to infringe those rights and where the state bears the burden of proof.*

**COMPLAINT VIII:**

1) The State asserts that it has authority to deprive parents of their property rights without any Fourth Amendment restraint simply by labelling the taking as a duty to pay child-support. There is no statutory requirement to hold a pre-deprivation hearing or to prove that a parent has failed in any way to meet the minimum standard of care for their child in the Family Code. There is no written standard or even any

146

pretense of guidance as to what a proper minimum standard of care is. The State presumes that simply because a parent has a general duty to care for their child, that the State is empowered to arbitrarily deprive that parent of their property and give it to someone else to care for the child without any showing of any kind whatsoever. In so doing they completely deny that parent any right to care for their own child directly or to directly perform their duty of care. We all have general duties to perform jury duty, to vote, and to defend our country, yet the State can't simply implement the specifics of those duties in any arbitrary manner it chooses absent due process.

2)      This deprivation has direct and profound impacts on the parent-child relationship and forever alters the parent's base of authority for exercising their constitutional right of control over their child. This becomes particularly acute as the child becomes more independent as a teenager, and access to financing of the child's activities is one of the last levers of control a fit parent has to protect their child. Taking away this authority actually endangers children. It doesn't in any way protect them.

Further, a parent's decision to support a child beyond the minimum necessary standard is an exercise of a protected privacy right that goes directly to the depth and quality of the parent-child relationship protected by the 1st Amendment at strict scrutiny.

3)      Tex. Fam. Code § 154.001 simply authorizes a judge to deprive a parent of their property and alter protected relationship structures with no restraint on that action whatsoever. The only challenge allowed by statute is to the amount to be seized

147

not the authority to seize in the first instance. Assuming that the State submits to Fourth Amendment authority at all, it improperly presumes the "reasonableness" of this action because the Supreme Court has found that presumption of 4th Amendment reasonableness is unacceptable.

4)      This statute amounts to a license to steal and in executing this theft, the state is paid by the Federal Government with payments from Title IV D of the Social Security Act in direct proportion to the amount of child-support it takes from parents. The State has a financial incentive to ignore the Fourth Amendment and the State ignores the 4th Amendment completely and utterly.

5)   Further, the imposition of child-support as a specific duty without Due Process restraint creates a class of parent who is now subject to felony prosecution for failure to pay. The state creates a separate class of parent who is now subject to be jailed, not for failing to meet the minimum standard of care as all parents are, but for failing to meet the "best" standard of care for their child as arbitrarily set by the highest income that parent has ever earned. The parent can now be jailed for losing his/her job and parents are jailed by the thousands across this country simply because they cannot afford to pay. While the statutes allow for alteration based on need, alteration itself requires thousands of dollars in attorney's fee and is often rejected out of hand making the exercise a roll of the dice for those already in financial distress. Those parents who are unable to pay, normally fathers are labeled "dead-beat

148

fathers" and their pictures are posted on the Internet by authorities in a direct attempt to shame and stigmatize them.

It is telling how there is no recognized concept of deadbeat mothers. Mothers who can't pay more often receive government assistance while fathers go to jail. These so called deadbeats are rounded up and hassled often immediately prior to holidays interrupting family events and the social stigma and damage to relationships can be devastating. It is no mere coincidence that the male suicide rate far exceeds the female suicide rate in this country.

6) The imposition of child-support has quasi-criminal overtones as it subjects one parent to different standards for felony charges of under Texas Penal Code § 25.05 and should implicate additional criminal or at least quasi-criminal protections. It creates **two classes of parent to which felony penalties may attach and creates special conditions for which one of the parents may be prosecuted with a felony without providing any type of due process** allowing a parent to challenge this imposition and without any burden of any kind for the state to show anything to support such an order. The judge can arbitrarily pick one parent to be subject to these felony implications.

7) Parents have natural rights and duties to support their children and since equal

149

rights for the sexes became the law, those rights must be equal between parents.

When the State orders that one parent is required to pay the other parent, the State

creates two classes of parent. One parent has a duty to pay and if they can't pay are

subject to jail and in some cases felony criminal prosecution. The other parent who also

has a natural duty to pay is provided with state and federal benefits if they are unable to

pay. One class of parent gets benefits and the other class of parents gets jail based on

their ability to earn. This classification is created without any pretext of due process or

equal protection of the law at all. Where prior to equal rights for the sexes, child-support

applied only to the father had a semi-legitimate basis, post equal rights the imposition of

child-support is an arbitrary affair with no legitimate basis in legal theory nor does the

State even attempt to justify a basis for ordering specific child-support. This Complaint

asks 4 simple questions:

CVIII-1: Is Tex. Fam. Code § 154.001 unconstitutional on its face and as generally applied
   where it provides unrestrained discretion to a trial court judge to deprive a parent
   of property rights without appropriate 4th Amendment protections and/or
   creates an invidious classification of parent?

CVIII-2: Does Tex. Fam. Code § 154.001 create a class of parent that is denied
   constitutional protections and benefits afforded other fit parents and held to
   standards not applied to other fit parents?

CVIII-3: Does the imposition of child-support obligations though Tex. Fam. Code §
   154.001 implicate criminal or quasi-criminal punishments and protections?

CVIII-4: Does Tex. Fam. Code § 154.001 fail to provide any or all of the host of

constitutionally required protections enumerated in the complaint?

## CHILD SUPPORT FACIALLY UNCONSTITUTIONAL

8) The Supreme Court says "A 'seizure' ... occurs when there is some meaningful interference with an individual's possessory interests..." See Jacobsen, supra at 113. Parents have a possessory interest in their income implicating 4th Amendment protections. A blanket rule of "reasonableness" under the 4th Amendment is simply (Supreme Court 1996), (Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances... emphasizing the fact-specific nature of the reasonableness inquiry...) Any possession order issued in a SAPCR court specifying when two parents may have possession of their child implicates 4th Amendment protections. The State can provide no justification for avoiding these specific requirements even in SAPCR. Where enhanced scrutiny demands least restrictive means, any possession order where one parent receive less than 50% possession would without specific justification violate this test. For thi reason the Standard possession order issued as the default in most SAPCR cases fails the least restrictive means test.

9) **Texas Family Code §154.001** creates a statutory scheme that makes the seizure of a parent's property and the means of paying subject to the arbitrary will of a state court judge. The scheme fails to provide any pre-deprivation hearing where the parent can rebut the presumption that the state may impose child support at all or to demonstrate that the parent cares for the child personally and directly in excess of minimum reasonable standards. Due process requires the state to establish the grounds for the seizure (not just the amount of the seizure) as reasonable under some recognized standard of evidence and allow a party at risk to challenge those grounds in a hearing. While children have a right to support at the minimum

reasonable standard of care applicable to all children, the parent has a superior fundamental right to provide that care directly to the child as a function of the protected relationship and as a key element of that relationship, see Troxel, supra at 65.See also, Santosky, supra at 787. Further, Troxel, supra at 68 would seem to say that so long as a parent adequately cares for their child an invasion of privacy in the form of taking property used for that child is an improper invasion of a privacy right.


QUASI-CRIMINAL OVERTONES:

10)     The imposition of a duty to pay, enforceable through contempt or by felony under Tex. Pen. Code § 25.05 or federal codes (e.g. 18 U.S. Code § 228(c)(1)(2) ) that imprisonment, creates quasi-criminal overtones and necessitates additional procedural protections, see Little v. Streater, 452 US 1, 10 (Supreme Court 1981), (The nature of paternity proceedings ... also bears heavily on appellant's due process claim. Although the State characterizes such proceedings as "civil," ... they have "quasicriminal" overtones. ... if a putative father "is found guilty, the court shall order him to stand charged with the support and maintenance of such child" ... and his subsequent failure to comply with the court's support order is punishable by Imprisonment...) where it deprives a parents of the Texas Constitution Article 16, Sec. 28 right to be free from wage garnishment, without adequate procedure, the Federal Due Process clause is implicated, see, Logan v. Zimmerman Brush Co., 455 US 432 (Supreme Court 1982). Where it creates a class of parent who must support a child to more than a

minimum reasonable standard of care, it creates an invidious classification of parent and constitutional protections are implicated.

FIRST AMENDMENT:

11) Where the imposition of a specific child-support duty implicates many aspects of the parent-child relationship and specifically infringes on the quality and duration of communication, teaching, and learning that can occur within the relationship, Tex. Fam. Code § 154.001 is overbroad.

COMPLAINT VIII DECLARATION:

12) At this point the case is very clear for establishing the following declaration and the additional requested declarations found in Complaint VIII:

Texas Family Code 154.001 is unconstitutional on its face and as general applied as it provides unrestrained discretion to a trial court judge to deprive a parent of property rights without appropriate protection and creates a class of parent subject to quasi criminal and criminal sanctions without appropriate procedural safeguards or even the minimum requirement of an evidentiary deprivation hearing. – See - **Santosky v. Kramer, (1982)**

1) The Public Policy of the State is that in SAPCR a judge can make best interest determinations for a child that infringe fundamental rights of parent and child over the objections of one or both fit parents simply because one of those parents filed a petition and the other was compelled to appear and respond. This policy is evident in the Family Code Statutes and articulated by State Appellate Court opinions. The State denies the constitutional parental presumption articulated in Troxel in multiple

153

situations including modifications and when two fit parents are in a SAPCR. The policy shifts the burden of proof onto fit parents in the text of the statute where it states that parents must show an ability to act in a child's best interest. The text of the statutes and opinion from the State Supreme Court find that the best interest of a child as expressed by the opinion of a single state judge supersedes federal constitutional protections of fundamental rights. Where the best interest of a child decision comes down to a mere difference of opinion between a fit parent and a state judge, the State asserts that the judge's opinion prevails in all cases. The statutes lack any of the due process protections required under narrow tailoring.

2)      The State routinely applies strict scrutiny protections where the State directly seeks to terminate parental rights in termination proceedings but then fails to apply any discernable standard of constitutional review when the state acts to infringe the rights of parent and child at the behest of a third party. Attorneys often explain as an excuse for constitutional rights not applying even 15 years after Troxel that "because a third party is asking the judge to assert state power that it isn't actually state power being asserted". However, this was the exact situation in Troxel and the Constitution prevailed.

3)     The State goes far beyond its authority to set minimum generally applicable health, safety, and welfare standards for children and implements a "maximum" or "best" standard to parents involved in SAPCR The State creates conditions where parents are forced to either

154

quietly give up fundamental rights or to fight the other parent in a no rules environment where the goal is to emotionally manipulate the judge into believing you are the better parent deserving of more rights than the other parent. The child in every instance loses fundamental rights to one of their parents under the standard possession order.

4)    Finally, parents are denied any chance of a fair hearing as Public Policy demands that the judge give up their impartial status and to rule only on the child's best interest. Parents are forced into life altering hearings before a biased judge who is statutorily mandated to act as what appears to be the child's advocate but what actually is the State's advocate. The party who prevails in every single SAPCR case, mandated by statute, is the State. The State always wins because the state statute mandates a ruling in favor of the State's opinion in every case as determined by a state bureaucrat who just happens to wear a judge' s robes. By giving the state judge authority to determine the State's opinion, the Legislature has ensured that the State's opinion will always prevail and that challenges to this authority will never be overturned in a state court. This complaint asks one question:

CIX-1: Does the Public Policy of Texas as expressed through statutes 153.001, 153.002, and 153.072 individually or collectively and as articulated through State Appellate Court opinion violate the Federal Constitution for any or all of the reasons expressed?

OPINION OF FIT PARENTS IRRELEVANT:

5) Notwithstanding clearly established family rights, state appellate courts in

155

Texas assert that a state judge can replace a fit parent's determination of their child's best interest with the state's opinion just because § 153.002 and § 153.072 say they can, see Leonard, supra at 277, (The court has the right to act in the best interest of the child, notwithstanding any agreements of the parties.), Lenz, supra at 18, (Of course, the child's best interest trumps that of either parent...)

6) The Supreme Court says in Troxel, supra at 68, (there is a presumption that fit parents act in the best interests of their children.) Justice Thomas says the state lacks even a legitimate interest in determining best interest over the objections of a fit parent, see Troxel, supra at 80. The Texas Supreme Court says In re MS, 115 SW 3d 547 (Tex. Supreme Court 2003), (the Family Code's entire statutory scheme for protecting children's welfare focuses on the child's best interest.) If the child's best interest is the entire basis of the Texas Family Code and Texas must presume in any constitutional analysis that fit parents act in their children's best interest, then the State of Texas lacks even a legitimate interest in making a best interest determination over the objections of a fit parent. Where the Texas Family Code grants judges authority to do so without any limitations whatsoever, it significantly infringes family rights.

STATE IMPERMISSIBLY SHIFTS BURDEN:

7) Five years after the Court in Troxel clearly articulated the constitutional presumption that fit parents must be presumed to make best interest determinations for

156

their children and that a state judge can't simply substitute their opinion for that of a fit parent notwithstanding any state statute to the contrary, state courts in Texas still contend that "a constitutional analysis must begin with a presumption of the statute's validity", see In re J.R.D., 169 SW 3d 743 (Tex. App. –Austin, 3rd Dist. 2005). The State also asserted in its REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS page 6 issue B., that "[A]nalysis of the constitutionality of a statute begins with a presumption of validity... the Palmers' have not met their burden of demonstrating that... provisions... are unconstitutional... The constitutional challenges that they assert have been analyzed by numerous Texas courts and found to be constitutional."(see footnotes in motion for state case citations) Further, Tex. Fam. Code § 153.001(a)(1) places the burden of proof upon fit parents. As Plaintiffs have shown, these are matters of fundamental constitutional importance and there is no question that the State bears the full burden of proof in these matters and in all constitutional analysis. The State's own pleadings provide ipso facto proof of the unconstitutional burden shifting.

8)     Further, this constitutional presumption is denied to parents in a modification proceeding, which is what Plaintiffs' are now subject to, making the original custody determination an absolute termination of a fundamental constitutional presumption, see In re VLK, 24 SW 3d 342, 343 (Tex. 2000), see In re C.A.M.M, 243 SW 3d 224, 225 (Tex. App. –Houston 2007), (...our lawmakers have chosen to deprive fit parents of the parental presumption. The Texas Family Code allows non-parents tc usurp fundamental parental rights from a fit parent.)(Justice Concurring) Here, a Texas appellate court asserts the constitutional violations more plainly than Plaintiffs ever could while at the same time abdicating his constitutional responsibility to correct the error.

BEST INTEREST A PROTECTED CONSTITUTIONAL CHOICE:

9) The right of parents to make best interest determinations for their children is a protected privacy right just as much as it is a policy decision for the federal government. Just as the federal government cannot be held to the overbroad standard of

158

best interest and can only be held to a minimum standard of care, parents cannot be

held to this overbroad standard. If a child had a constitutional right to their best

interest, the state and federal governments would be required to provide for the child's

best interest when exercising their *parens patriae* authority regardless of expense.

Likewise, the decision of a parent to merely comply with minimum standards of care or

to go beyond the minimum is a fundamental privacy right for each parent which may

not be punished by the State through the application of a sweepingly broad best interest

standard regarding custody, Reno, supra at 304, 305, (Minimum standards must be

met, and the child's fundamental rights must not be impaired; but the decision to go

beyond those requirements...is a policy judgment rather than a constitutional

imperative.) Fundamental parental rights are stronger than the state's "best interest"

policy and must be protected over that State policy. Where the best interest standard is

too burdensome for the federal government and trial court, it is certainly an undue burden

on the fundamental rights of parents and child.

159

## RIGHT TO STABILITY:

10) The State asserts that children have a "right to stability" although this right has never been stated by the Supreme Court. See In re C.A.M.M., supra at 216, 217:

*...the child's interest in stability prevails over the parent's right to primary possession... (noting that modification suits raise policy concerns like stability not present in original custody determinations). Thus, when statutory requirements are met, the parent's right to primary possession must yield to the child's right to a safe, stable home... "[a]ny right of the parent must yield to that primary consideration [of the child's best interest]"); ("In any dispute as to the custody of a child, the prime considerations are the welfare and best interests of the child and although the legal and natural claim of the parents to custody should never be disregarded as an influential factor ... such right must yield where the child's welfare requires that its custody be given to others.")*

The State uses this supposed right of stability to destroy constitutionally protected parent-child family relationships. In effect, it uses the "right of stability" to destroy stability, to destabilize the child's life, and to destroy existing stable protected relationships. The State is in error in asserting this right in this manner. If the child has a "right to stability" of any kind, it is the right of stability in their individual established natural family relationships and the right of their parents to protect these relationships

160

from unwarranted government interference. When parents exercise a protected right to dissolve the marital relationship between themselves and to dissolve the "nuclear family" preferred by the State, they are NOT choosing to dissolve the parent-child relationship. The State may NOT preface the destruction of constitutionally protected individual parent-child relationships upon the dissolution of its preferred "nuclear family" model by arbitrarily creating rights. It would be absurdly ironic if it were not so plainly self-serving that the same state courts that claim they lack any power to make law or to overturn state statutes, actually make up out of whole cloth a stability right that allows them to continue in their extraconstitutional authority to deprive well-established federal rights. As proof to the statement that absolute power corrupts absolutely, here unlimited power leads state judges to violate their own misguided principles in order to maintain their personal unlimited power.

FUNDAMENTAL RIGHTS CHILDREN DO NOT HAVE:

161

11)     The judiciary in the State of Texas confuses issues when comparing the fundamental rights of parents against the state's determination of a child's best interest. These private interests are far from equal. Children simply do NOT have a fundamental right to their best interest, see <u>Reno</u>, supra at 304, 305. Children do not have a fundamental constitutional right to a "stable" home. A child's parents can move them as often as they want and can place them in the temporary care of others as they see fit. Children do not even have a fundamental constitutional right to a safe home beyond certain minimum standards related to public safety that are equally applicable to everyone. While children do have a right to be free from certain types of harm, there are other harms from which the state may not protect a child, see <u>Palmore v. Sidoti</u>, 466 US 434 (Supreme Court 1984). The state may not protect a child from a parent's decision to enter an interracial marriage, nor may it protect a child from a parent's decision to terminate that marriage, <u>id</u>. While providing the absolute best for children may be a universal dream, the State may not enforce its opinion of absolute best by violating a fundamental right of a parent or of the child.

12)     Children do have a fundamental right to stability of the family association with each fit parent that is equal in measure. Nothing less than clear and present danger

of harm to a child "sufficient to implicate the state's interest" or a competing

fundamental interest is sufficient to justify infringing that 1st Amendment right, see In re

J.R.D., Supra at 925. Where the state weighs its "opinion" of a child's best interest alone,

against a fundamental right of a parent or child, "best interest" must fall, see Yick Wo v.

Hopkins, 118 US 370 (Supreme Court 1886), (... the essence of slavery itself.) Anything

less would carve out a special set of constitutional rules applicable only when children

are involved and overturn over 200 years of constitutional precedent. The federal

appellate courts have resoundingly condemned such ideas, see Gates, supra at 421.

Where Tex. Fam. Code § 153.002 places the state's desires and aspirations for a child's

best interests over the fundamental rights of parent and child to family association it

overreaches and is overbroad.

**PENALTY FOR EXERCISE OF A RIGHT:**

13)     It is well-established that people have the private right to make persona

decisions regarding marriage and this right has been protected against many kinds of

state action. In Shapiro v. Thompson, 394 US 618, 634 (Supreme Court 1969) the Court

makes clear that "appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional." When parents divorce, at least one of those parents is exercising a fundamental right. Texas Family Code Statute 6.406 titled MANDATORY JOINDER OF SUIT AFFECTING PARENT-CHILD RELATIONSHIP mandates that when a parent files suit for divorce they must also file a SAPCR where their rights as a parent are subject to lesser protection than is provided for married parents. The SAPCR results in classification of parents as either "conservators" whose parental rights are now subject to nothing more than a single judge's opinion or one parent may be classified as a non-custodial parent whose rights are severely diminished. These classifications are imposed based solely on a change in the marital status of a child's parents which is an invidious classification to predicate state action.

14) The State penalizes those parents who choose to dissolve their marriage and live in a family structure that the State disapproves of. The State also penalizes the completely innocent parent who did not want the divorce but who is powerless to

prevent the divorce in the face of their spouse exercising a fundamental right and in the face of state laws that allow a single spouse to force dissolution of the marriage. The State has failed to show any pressing public necessity for penalizing rights based on marital status alone.

**STATE MAY NOT VIOLATE CHILD'S RIGHTS:**

15)

The State acting in its *parens patriae* capacity may NOT violate the child's constitutional rights, see <u>Reno</u>, supra at 304, 305, (...the state in the exercise of its parens patriae authority... Minimum standards must be met, and the child's fundamental rights must not be impaired...) Children have a concomitant right to family association equally with each of their fit parents and a right to be cared for personally by each parent and to have that parent's values instilled in them through daily care,

165

custody, and control, see Wooley, supra at 923. Where the state limits these rights based on nothing more than its opinion of the child's best interest, it impermissibly infringes those rights. Not only is it impermissible, but absent sufficient supporting facts on the record showing otherwise, it is absolutely contrary to that child's best interest as it violates the child's fundamental rights.

**TERMINATION OR INFRINGEMENT:**

16)     The state by protecting parental rights in termination cases and ignoring them in non-termination SAPCR asserts that where rights are not completely terminated they are not constitutionally protected, Moreno v. Perez, 363 SW 3d 739 (Tex App. –Houston 2011), ("[A] severe restriction or limitation, even one that amounts to a denial of access, is permissible if it is in the best interest of the child."). The 5th Circuit calls the validity of such an assertion "questionable" where it came up as an indirect issue in Kipps v. Caillier, 205 F. 3d 205 (5th Circuit 2000), (Defendants assert that in order to have an actionable claim based on familial association there must be a permanent and involuntary separation between parent and child...Notwithstanding the questionable validity of this position...) The Supreme Court clearly tells us the state is

166

wrong, see Streater, supra at 13, (Just as the termination of such bonds demands procedural fairness... so too does their imposition.) See also Lee, supra at 685. See also Troxel, supra at 75, (the burden of litigating a domestic relations proceeding can itself be "so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated.")

**CUSTODY AND POSSESSION SCHEME UNCONSTITUTIONAL:**

18) The scheme for custody and possession of minor children found in Tex. Fam. Code Tit. 5 Chapter 151 is based on the entirely false presumption that the State of Texas has authority to grant natural parents something they already have by natural right, fundamental parental rights. At no point in time, does the state have authority to grant these rights to natural parents. Instead, the state has an affirmative duty to provide procedural protections for these rights at strict scrutiny from the moment the relationship is established. In a SAPCR between parents, the state provides essentially no procedural protections at all. The Court skips adjudication and moves directly to a "broad best interest inquiry" which itself is an impermissible "exploratory" search into

167

family privacy where the state lacks even a legitimate interest in invading. It then

imposes the State's opinion of what is best over any and all constitutional objections by

parents.


COMPLAINT IX DECLARATION:

19) At this point the case is very clear for establishing the following

declaration and the additional requested declarations found in Complaint IX:

*The public policy of Texas that allows a state court judge to infringe, limit, or unduly burden fundamental rights of parent or child based solely on a state judge's determination of a child's best interest is unconstitutional; there is a constitutional presumption that parents are fit and that fit parents act in the best interests of their children; the public policy of Texas which authorizes a state judge to deny this parental presumption in a modification proceeding is unconstitutional; Texas Family Code § 153.001(a)(1) impermissibly shifts the burden of proof onto fit parents and contravenes the parental presumption and is unconstitutional; Texas Family Code § 153.002 places state policy above the constitutional rights of parent and child and is unconstitutional; Texas Family Code § 153.072 and the Texas Family Code generally fails to provide sufficient procedural protection for fundamental rights and is unconstitutional; the public policy of Texas that provides for strict scrutiny protections of fundamental rights in termination proceedings but not in other SAPCR proceedings is unconstitutional; while the state may set minimum generally applicable health, safety, and welfare standards for children, a state policy that mandate a "best interest" standard which compels fit parents to battle over who is the better parent and punishes the perceived lesser fit parent with infringement of fundamental rights is unconstitutional; and Tex. Fam. Code § 153.002 denies parents the opportunity for a fair hearing on their constitutional rights before an impartial judge.*

**COMPLAINT X:**

1) The Texas Family Code and the unrestrained authority granted to State Judges to deprive multiple fundamental rights of parent and child based on nothing more substantial than a state judge's unqualified opinion has a chilling effect on the communication expressed in the parent-child relationship, in the attorney-client relationship, in the ability of parents to petition for their federal constitutional rights in a state district court, and of their attorney's willingness to plead for protection of parental rights in state district court. Using best interest determinations, State Judges

169

have an unlimited authority to punish those attorneys who cross them and those parents who annoy them or who have beliefs that annoy them.

2)    Where a state judge has the ability through statute to rule against an attorney in every single SAPCR case brought before them, based on nothing more substantial than that judge's opinion, that judge has near complete control over the arguments (speech) any attorney is willing to present on behalf of their client. Attorneys routinely advise their client not to do anything that would anger their judge because of their full knowledge that anger is all it takes for a judge to infringe fundamental rights with impunity. Attorneys are not willing to risk their livelihoods to challenge a judge's authority. They know that most clients could not afford to fight through a state system that has already predetermined that the federal constitution doesn't apply in SAPCR. These attorneys are unwilling to risk their careers on the extremely unlikely chance that the United States Supreme Court might actually hear a case they appealed through the State system. Parents and children are without adequate remedy for protection of their fundamental rights in SAPCR and are systematically denied a fair forum for presenting their rights in SAPCR

**OVERBREADTH AND VAGUENESS:**

170

Where a state statute seeks to infringe a fundamental right under the 1st amendment, there must be shown a necessary and compelling state interest to justify that infringement. Nothing in the Texas Family Code identifies a necessary compelling state interest to which its statutes should be narrowly tailored. Where a statute has to be narrowly drawn to address a necessary compelling state interest, it can only be narrowly tailored if it in some way identifies what that interest is. The State bears the burden of showing this interest and where it fails to show this interest, its statutes are vague because parents do not have any guidance on how to avoid loss of parental rights. The best interest of a child is itself a term much too vague to define and the judge's opinion of what that best interest may be is certainly impossible for any parent to predict.

7)      Contrasting Tex. Fam. Code 161 titled TERMINATION OF THE PARENT- CHILD RELATIONSHIP with Tex. Fam. Code 153 titled CONSERVATORSHIP, POSSESSION, AND ACCESS, we see that § 161 lists numerous relatively specific acts that a parent must commit in addition to an infringement being in a child's best interest before the State may directly infringe the rights of a parent. Whereas, § 153, applying when a third party asks the State to infringe the rights of a parent, requires only a written finding of a child's best interest to infringe fundamental rights. In § 161 the State can easily argue that its statute is narrowly drawn. However, it is difficult to imagine how § 153 could possibly be more broadly worded or to grant more unrestrained power to a single individual. One need only ask, what specific provision of § 153.002 and § 153.072 or any other statute limits the Court in any specific way at all in which fundamental rights it may infringe of parent or child? The court asserts authority to deny the right of free speech based on the content of that speech alone, presumably based on "best interest." In no other area of law is there more

171

clarity about what a judge may not do than in prior restraints on free speech and yet "best interest" seems to be used as a magical incantation sweeping away any such foolish limitations on judicial power. Certainly Judge Bailey and Judge Barnes had no qualms ordering prior restraints on free speech against anyone filing a SAPCR in a non-fact- specific blanket order. Plaintiffs will, of course, be subject to this clearly unconstitutional order the moment they file for modification following these proceedings.

8)   Texas Fam. Code § 153.001 is vague in that it requires a parent to guess at what their particular judge's opinion of a child's best interest is. There is no standard for parents to reference. Their judge's opinion can differ radically from another judge's opinion. Something as simple as a change in the presiding judge can have profound effects upon fundamental rights. Roberts, supra tells us at 629 that "a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Tex. Fam. Code § 153.001 requires a parent to show "the ability to act in the best interest of the child." SAPCR proceedings are predicated on the fact that parents and the state do not agree on what the child's best interests are thereby making it impossible for any parent to prove that they are acting in the child's best interest. This unprovable standard makes § 153.001 vague.


9) Tex. Fam. Code § 153.002 is under inclusive in that it includes only parents who are subject to a SAPCR Whatever state interest it is seeking to promote, it excludes all parents and children not subject to a SAPCR One group of parents have their constitutional parental presumption protected, the other group does not. Almost anybody can file a SAPCR against a parent for almost any reason.

10)   Texas Fam. Code § 153.002 and § 153.072 are over inclusive in that they do

172

not in any way limit the fundamental rights that may be limited or infringed under the scheme. A state court judge can at any time limit any fundamental right simply by making a written finding that doing so is in the best interest of the child. This requirement is vague in that it doesn't require the judge to identify the compelling interest being served or any of the criteria that would make it necessary. Nor does it provide any requirement that the limits on fundamental rights must be done in the least restrictive means possible. The statute authorizes a broad and nearly unlimited power in the hands of a single individual and provides no limitation beyond that the single individual must convert their opinion to a written finding of fact. It provides no standard or guidance by which a parent may protect themselves from such a judgment. It can be used to prohibit a mother from swimming nude in her own secluded pool on her own property, a clear expression of individuality protected by the 1st Amendment.

Further, the State places no restrictions on the relationships that may be infringed nor the manner in which relationships can be infringed. See Moreno, supra at 739, (The trial court has broad discretion in fashioning restrictions on a parent's possession and access that are in the best interest of the children, including forbidding unrelated people from living or staying overnight at the parent's home during visitation ....affirming order enjoining "both parties, while in possession of the child, from permitting persons of the opposite sex with whom they have or might have an intimate or dating relationship from remaining overnight in the same residence or lodging"... affirming order requiring that father's male roommate "be absent during the time of the father's possession of the children"...Indeed, although rarely warranted, the court can deny a parent access all together. ...severe restriction or limitation, even one that amounts to a denial of access, is permissible if it is in the best interest of the child...).

## THE TROXEL STANDARD:

Troxel was a family law case where the award of "visitation" against the objections of a fit parent based solely on a best interest standard was found to be overbroad without even determining the applicable degree of judicial scrutiny nor any mention of the 1st Amendment. In the immediate case, the State is infringing 1st Amendment family association rights through deprivations of custody and possession, which are far more precious than the imposition of a mere "visitation" award in Troxel and these rights are clearly protected by strict scrutiny. Compare the following factual statement regarding Texas SAPCR actions with the Court's statements in <u>Troxel</u>, Supra at 67.

*The Washington nonparental visitation statute is breathtakingly broad... "[a]ny person may petition the court for visitation rights at any time, " and the court may grant such visitation rights whenever "visitation may serve the best interest of the child. " ... That language effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review. Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. Section ... contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by*

## LEGITIMATE INTEREST:

The State fails completely to provide either a legitimate or a compelling interest for its actions. The best interest of a child in the face of an objecting fit parent clearly isn't a compelling state interest. While the state has an interest in the safety and welfare of children, it may not pursue this interest by subjecting one class of parents to an absurdly impossible standard that has no relation whatsoever to the safety or welfare of children. This policy is making children of single and divorced parents second-class children who are not entitled to the equal access and association of both of their fit and loving parents. By constitutional presumption parents are fit and act in their child's best interest. This means that children are safe when in the care of their fit parents. Choosing to be single or choosing to divorce, being fundamental decisions regarding marriage, simply cannot provide a legitimate state interest to invade the parent-child relationship. Being sued by the other parent or a third party, likewise, cannot provide a legitimate state interest. Without a legitimate state interest, the State is simply without authority to act and any statute authorizing broad action absent a compelling state interest is invalid and overbroad.

## DECLARATORY JUDGMENT CONCLUSION

1) Individual parents and their children have a concomitant 1ˢᵗ Amendment family association right that has been deemed a privacy right that is "fundamental to our way of life" and therefore is protected under strict scrutiny. Where the State of Texas fails to provide on the record a showing consistent with strict scrutiny procedural protection of this right, the State of Texas lacks legitimate authority to interfere with, infringe, or unduly burden this right, notwithstanding any Texas State statute to the contrary, and notwithstanding who asks the state to interfere with these rights.

2)      The "best interests of the child" under Tex. Fam. Code § 153.002 & Tex. Fam. Code §153.072 cannot be used as a "magical incantation" to relieve the State of Texas of proper constitutional constraints on its actions, nor of its affirmative duty to apply procedural safeguards in SAPCR actions consistent with the concomitant well-established and "virtually unconditional" right of free association under the 1ˢᵗ Amendment. See Wooley, supra at 921, (We recognized in ... the "most essential basic aspect of familial privacy—the right of the family to remain together without the coercive interference of the awesome power of the state... the concept obviously

embraces relationships other than those that make up the archetypical nuclear family...), see Shapiro, supra at 643.

3) The State of Texas simply cannot violate 1st Amendment rights of family association simply because a litigant requests for the State to do so in a pleading, even if that litigant is another parent, nor may it do so simply to further the state's dreams, aspirations, or desires for a child's best interests. The Texas Family Code fails utterly to provide any predicate for state action to deprive either fit parent of their preexisting equal fundamental rights to their children. Fundamental rights are and must be much stronger than what Texas proposes, even where the State's desire to protect children from the routine pain of everyday life is strongly felt. Texas' traditions of violating these rights in this context go back beyond the ratification of the 14th Amendment and even beyond the founding of the state. These longstanding traditions are, and must always be, subject to strict constitutional scrutiny.

4) Plaintiffs' Request proper procedural protections for Plaintiffs' fundamental parental rights, the fundamental rights of Plaintiffs' children, and that Plaintiffs and Plaintiffs' children not be treated as second-class parents and second-class children based on Plaintiffs' private constitutionally protected right to form non- traditional family structures and associations.

5) Plaintiffs request that this court establish oversight on the Texas family courts until the courts have sufficiently implemented the constitutional protections

177

required. Just as the States ignored issues of racial segregation in the schools until federal courts forced them to integrate, these State courts will continue to violate the constitution in SAPCR until a federal court imposes specific oversight upon them.

6)      Plaintiffs request that parents in SAPCR be informed on the record of their fundamental constitutional rights and that they do not have to waive them, much like a Miranda warning is used today.

7)      Plaintiffs leave this Court with the simple question we opened this brief with. Who decides what is in our children's best interests? Will it be us the fit parents or will it be a socialist bureaucrat who thinks it is the government's right to decide for us?


## DECLARATORY JUDGMENT PRAYER

1. Appellant Mr. Mendives, pray that these complaints in all things be granted, that this court provide all relief requested and provide all further relief available.

2. Plaintiffs pray for legal fees and costs of court associated with these complaints against the State of Texas and the opposing party and attorneys whom relied on negligence bringing to the court false statements without evidence. Sanctions is a MUST for delaying and suborning perjury. There was not need for false statements, obstruction of justice with several notice to reset adjudication. The main victims here in this case has been the four boys whom beside their father been deprived of their fundamental rights, liberty interest and property. Mr. Mendives has been in the lives of each one of these children from before these children were brought into this world by natural birth.

## APPELLANT'S BRIEF CONCLUSION

Mr. Mendives and his four sons' fundamental rights do not depend on my marital status or a change in my marital status. Where divorce statutes create two unequal classes of parent or two unequal classes of child they violate the Fourteenth Amendment's Equal Protection Clause. Where the divorce court asserts child custody jurisdiction solely on the basis of a divorce between parents, the court fails the constitutional test of showing a **"compelling state interest"** that is "necessary" to achieve a permissible state policy. States are simply NOT authorized under our Constitution to create two unequal classes of people in this manner particularly where the rights being deprived are fundamental rights regardless of what any state law or state divorce court judge might say to the contrary. The United States Supreme Court made clear in **Troxel v. Granville, 530 US 57 - Supreme Court 2000,** that parent's rights are fundamental: In light of this extensive precedent, it cannot now be doubted that the **Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.**
Divorce between parents provides no basis, rational or compelling, for state jurisdiction over child custody because the rights of parents do not and cannot depend on marriage. For hundreds of years we had Bastardy laws that said children who were born out of wedlock were not deserving of the same rights as children born of a marriage nor were the parents entitled to the same rights to their bastard children. This is why the term bastard is such a derogatory term. In the 1970s the United States Supreme Court said that laws creating two unequal classes of children or two unequal classes of parents based on nothing more than the marital status of the parents are unconstitutional as they violate the principle of equal protection of the law.

There are an additional series of parental rights cases which demonstrate that parental rights are individual rights that do not depend on marriage at all. Therefore, marriage simply is NOT the basis for parental rights or for the child's rights to the parents.

By this same principle, divorce custody laws that create one set of children who get access to both parents and one set of children who do not based only on their parent's marital status are laws that improperly create two unequal classes of children.

In **Griswold v. Connecticut, 381 US 479 – Supreme Court 1965**, the Court said that a state's laws **MUST BE NECESSARY** to achieving a permissible state policy. Simply, an un-adjudicated parent means access immediately his or her children. Thus, the trial court, and those learned in the law, have completely disregarded that the issue for most Americans is fairness: the equal protection clause of the 14th Amendment should be used to protect the liberty of one class of individuals for good reasons when that action may infringe on the liberty of another.

This case has been dragged for more than a year now, in so happening, violating the rights of this family. Mr. Mendives respectfully demands and requests immediately dismiss the protective order and put a stop to ex-parte motions where **"NO domestic violence evidences"** are brought to court in avoidance to corroborate the accusations. These false allegations are inflicting damages to my professional relationships due to my occupation. Attached is a video the Mendives' Children regarding danger and violence and whatever allegations Angela Mendives has stated in this case. See Attached Verbatim Flashdrive

As Americans, liberty is also our right to be honest, to think and speak without hypocrisy. That being said, I believe that no parent should come to the trial court and be taken advantage of outrageous motions, unproven lies and for the trial court ignore the U.S. Constitution protections and boundaries that make Americans the land of the brave. Taking advantage of someone in a state of vulnerable and emotional stress situation as in a divorce because parents may not be learned on the law as those in the court is one of the most repugnant attacks to a human being. So it is repugnant if a surgical doctor tells some that he/she needs surgical intervention or procedures when in fact there is neither a need for surgery nor there is evidence of such needed surgery. No Parent or a child should go through the pain this family have endured since the beginning of this case nor the trial court should the pain and destructive court patterns and objectives to ruin the parent-child bond.

180

...Legislated statutes enforced upon the people in the name of law is a fraud. It has no authority and is without mercy. Justice without mercy is Godless, and therefore repugnant to our United States Constitution. Lawmakers were given authority by the people to legislate codes, rules, regulations, and statutes which are policies, procedures, and "law" to control the behavior of bureaucrats, elected and appointed officials, municipalities and agencies, but were never given authority to control the behavior of the people—as we read in a US Supreme court decision: "All laws, rules and practices which **are repugnant to the Constitution are null and void." (Marbury -v-Madison, 5th US (2 Cranch) 137, 174, 176, 1803).**

"An unconstitutional act is not law; it confers no right; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed." **Norton vs Shelby County118 US 425 p.442.** "The general rule is that an unconstitutional statute, though having the form and the name of law, **is in reality no law, but is wholly void, and** ineffective for any purpose; since unconstitutionality dates from the time of its enactment, and not merely from the date of the decision so branding it. No one is bound to obey an unconstitutional law and no courts are bound to enforce it."**16th American Jurisprudence 2d, Section 177, late 2nd, Section 256**

Mr. Mendives demands this court to make the trial court accountable and responsible for not only this case but for the many more similar cases to come. The trial court, Angela Mendives and her attorney are responsible for any/all deprivation of rights due to inflammatory statements. There is no evidence of domestic violence, and this is why it is impossible for the opposing party to provide evidences of domestic violence or of any heinous crimes alleged by Angela Mendives false statements. Instead, the opposing party chooses to **"ignore" the request for ALL EVIDENCE under the Freedom of Information Act (FOIA).** The mere allegations of crimes do not make an act true! These false allegations should not be ignored and I demand that these false allegations are reviewed.

Moreover, Mr. Mendives demands to this court that the "In the child's best Interest" it is not used violate the substantive due process and equal protection rights of un-adjudicated parents. This Court should hold that absent an adjudication finding of unfitness, a court cannot use any order of judgment, nor dispositional authority to infringe upon the rights of an un-adjudicated parent.

According to the Fourteenth Amendment of the U.S. Constitution, this trial court's completely disregarded Mr. Mendives Motions for Adjudication Hearing, for Deprivation of Fundamental Rights, Liberty Interests. Worse over, Angela Mendives' allegations of heinous crimes have impaired the court to render the proper decision. That being said, the trial court is also responsible for violating the constitutional rights of un-adjudicated parents, the "In the Child Best Interest" has practical effects on the well being of children involved in child Divorce proceedings. The State shares an interest in children remaining in the care of fit parents. See- **Stanley, supra at 652** "The State registers no gain towards its declared goals when it separates children from the custody of fit parents."

The trial courts separated the children of this divorce from Mr. Mendives, presumptively a fit parent without first actually determining whether that Mr. Mendives was unfit as defined in the Juvenile Code.

The court failed arbitrarily to protect this family from erroneously taken custody from their parents and placed unnecessarily in sole custody of Angela Mendives, violating completely the U.S. Constitutional Guarantees of un-adjudicated parents.

This court is also liable to acting in conjunction with attorneys Velia J. Mesa and Anthony Daniel 'Tony Bancroft" Bancroft for obstruction of justice in attempting to hide the truth from the records when asking several times for "Notice to Reset" even against Mr. Mendives and, subsequently continuing to deprive Mr. Mendives and his four sons of fundamental Rights and liberty interests, and property.

In addition, the trial courts imposed service plans on un-adjudicated parents without ever determining whether a parent is actually unfit to care for the child. Thus, parents are ordered to comply with a litany of costly services - despite the absence of a factual predicate justifying the need for a particular service. A parent's future ability to regain custody of his child then hinges on complying with a service plan that has no connection to particularized judicial findings of that parent's unfitness.

**In re Sanders, 2014** - The Supreme Court rejected the argument and held that the **Constitution requires,** as a matter of due process, that the father have a "hearing on his fitness as a parent before his children [are] taken from him." **Id. at 649.** The Court found that the State's interest in **"presuming" the unfitness of all unmarried fathers and efficiently disposing of their rights did not outweigh the constitutional interests of the father.** The Court stated:

Procedure by **"presumption"** is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand. Id. at 656-657.

The Court made clear that **"infringing"** upon a parent's right to custody of his children is strictly forbidden under the Constitution absent a judicial determination of parental unfitness.

Relying, **Stanley v Illinois, Sanders clarified**, "The argument that the state is relieved of its initial ... burden because ... parents may have their parental rights restored" later is **Constitutionally infirm.** Further, the Court announced that "the possibility of a fix at the back end is not sufficient to justify a lack of process at the front end."Process does not get much more "front end" than the preliminary hearing. Quoting Stanley, the Sanders Court maintained, **"This Court has not . . .** embraced the general proposition that a wrong may be done if it can be undone. Surely, in the case before us, if there is a delay between the doing and the undoing

the un-adjudicated parent suffers from the deprivation of his children, and the children suffer from uncertainty and dislocation." Furthermore, **the denial of process associated with the preliminary threshold hearing would definitely fail to withstand the balancing of interests outlined in Matthew v. Eldridge.** Therefore, **the delay between removal and trial in cases where an un-adjudicated parent is deprived placement in the interim is "constitutionally intolerable."** There must be a preliminary hearing, not only for the probable cause determination under 2(b), but most importantly to address the constitutionally implicated issue of removal or denial of placement to the un-adjudicated parent's care.

Last, this case concerns the timeless struggle between depriving Mr. Mendives and his four children of fundamental rights, liberty interest and government power. Do Texans live under a presumption of liberty or a presumption of restraint? The Texas Constitution confers power— but even more critically, it constrains power. What *are* the outer-boundary limits on government actions that trample Texans' Constitutional Rights to earn an honest living for themselves and their families?

Mr. Mendives fundamental parental rights and my child's fundamental rights cannot depend on my marital status or a change in my marital status. Where divorce statutes create two unequal classes of parent or two unequal classes of child they violate the Fourteenth Amendment's Equal Protection Clause. Where the divorce court asserts child custody jurisdiction solely on the basis of a divorce between parents, the court fails the constitutional test of showing a "compelling state interest" that is "necessary" to achieve a permissible state policy.

Instead, the trial court has try to condition this case that "heinous crimes" are not important to proof by completely ignoring the allegations and the needs to prove those allegations. In doing so, with the belief, that parental rights are dependent on marriage, driving a fundamental bias and prejudice against Mr. Mendives and his four children. that is clearly evident in every state's family law code. This trial court has treated Mr. Mendives differently than married parents and then ask if it would be justified to treat unadjudicated parents or married parents under equal protection clause.

184

The trial court has irresponsibly, failed to protect and preserve U.S. Constitutional Rights of Mr. Mendives and his four children by assuming their U.S. Constitutional Rights away

First Amendment of the U.S. Constitution has been completely ignored by this trial court and their judges. The U.S. Supreme Court has consistently protected parental rights, including it among those rights deemed fundamental. As a fundamental right, parental liberty is to be protected by the highest standard of review: the compelling interest test.

As can be seen from the cases described above, parental rights have reached their highest level of protection in over 75 years. The Court decisively confirmed these rights in the recent case of **Troxel v. Granville,** which should serve to maintain and protect parental rights for many years to come.

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of this 185 pages Appellant's Brief - IN THE COURT OF APPEALS FOR THE STATE OF TEXAS FOURTH JUDICIAL DISTRICT CADENA-REEVES JUSTICE CENTER was sent to Angela Mendives to her attorney Velia J. Meza at, Attorney at Law PC Office at 4819 San Pedro Ave, San Antonio, TX 78212 on May 09th of 2016.

Respectfully Submitted
On this the 09th day of May, 2016.

By: _____
Roberto Carlos Mendives Sr.  Sui Juris
8802 Cinnamon Creek Dr. # 609
San Antonio, TX 78240
(210) 767-0277

robertomendives@rocketmail.com